UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
SHARRON SELLICK,

                   Plaintiff,

            v.

CONSOLIDATED EDISON COMPANY OF
NEW YORK, INC.

                 Defendant.
------------------------------------------------------------X

Index No. 15-cv-9082

**COMPLAINT AND
DEMAND FOR JURY TRIAL**

       Plaintiff Sharron Sellick, by and through her attorneys, Cuti Hecker Wang LLP,

for her Complaint alleges as follows:

## INTRODUCTION

      1.     Sharron Sellick has worked tirelessly as a dedicated Con Edison employee for

over 15 years, doing her utmost to contribute and progress up through the Company in the "non-

traditional" area of fieldwork.  Working in the field is physically arduous and dangerous; there

are very few women who choose the work.  But Ms. Sellick has been recognized repeatedly as a

model employee and leader, including by being selected by Con Edison as a spokesperson on

several occasions throughout her career.

      2.     When she was first recruited to the Company, Con Edison stressed that it wanted

more women in the field and would ensure support for women doing non-traditional work.  But

at nearly every step along the way, Con Edison has failed her: Ms. Sellick was forced to fend for

herself without the help from her colleagues or supervisors that is routinely provided to male

employees at Con Edison.  Ms. Sellick has nonetheless forged her path at Con Edison and done

remarkably well considering the mistreatment she has experienced and continues to experience

on a regular basis.

3.      As both a victim and a union representative, Ms. Sellick repeatedly tried to bring the rampant sex discrimination and mistreatment to Con Edison's attention.  She reported misconduct to everyone she could – union leaders, managers, Con Edison's Human Resources department, Con Edison's Ombudsman, Con Edison's Equal Employment Opportunity Affairs office – because she was told, and believed, that doing so would result in positive change for her and other women at Con Edison.  She was sorely mistaken.

4.      Instead, Ms. Sellick became a target and an outcast, now not only for being a woman at Con Edison doing non-traditional fieldwork, but for daring to complain.  The widespread discrimination and retaliation resulted not only in the unlawful denial of repeated promotions for Ms. Sellick – promotions which were awarded to men with less experience – but also in the form of an offensive and pervasive hostile work environment.

5.      In 2007, Ms. Sellick sought help from the federal agency tasked with investigating discrimination and retaliation claims, the Equal Employment Opportunity Commission ("EEOC").  The day after her EEOC charge was reported in the *Daily News*, Ms. Sellick was told that the article had been faxed throughout Con Edison early that morning, making it clear to her that she was being identified throughout the Company as a complainer and someone to be kept isolated.  Ms. Sellick's male colleagues ostracized her, subjected her to near constant vulgar and sexually explicit comments, and have made it clear she is not to be trusted.

6.      Con Edison has done nothing to remedy the hostile working environment that Ms. Sellick is forced to endure, even *after* the EEOC found that Ms. Sellick's (and many others') discrimination and retaliation charges had probable cause in 2011, and even *after* Con Edison itself announced in September 2015 that it had reached a systemic agreement with the EEOC and New York's Attorney General, purportedly to address the rampant sex discrimination for women

working in the field.  As recently as a few weeks ago, in October 2015, a humiliating and demeaning photograph – depicting a woman being ridden like an animal – was posted on the wall near Ms. Sellick's desk.  Nothing has changed.  The sex discrimination and retaliation for women who work in the field has not diminished.

7.      It has now been over half a century since Congress passed Title VII, with the goal of eliminating unlawful discrimination in the workplace.  Con Edison frequently highlights how diverse its workforce is, and touts its female management – nearly all of whom are women who work in offices or who have advanced through more traditional work.  But for Ms. Sellick and other women working in the field at Con Edison, the pervasive misogyny does not end.  Con Edison's conduct is unlawful.  It is offensive.  And it must be remedied.

**JURISDICTION AND VENUE**

8.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343, and 1367 and pursuant to 42 U.S.C. § 3613.

9.      Venue is properly lodged in this District pursuant to 28 U.S.C. §§ 1391(b)(1) and (b)(2).

**JURY DEMAND**

10.      Plaintiff hereby demands a trial by jury.

**PARTIES**

11.      Plaintiff Sharron Sellick is a woman residing in New York, New York.  At all relevant times, Plaintiff has been employed by Consolidated Edison Company of New York, Inc.

12.      Defendant Consolidated Edison Company of New York, Inc. ("Con Edison," the "Company," or "Defendant") is a New York Corporation headquartered at 4 Irving Place, New York, New York 10003.

<u>**FACTUAL ALLEGATIONS**</u>

**Ms. Sellick's Performance and Qualifications**

13.     Ms. Sellick was hired by Con Edison in January 2000 as a General Utility Worker ("GUW") in what is now known as the Construction Services Department.  She obtained the title of Mechanic B in 2001 and qualified as Mechanic A in 2004.  She has served as a shop steward for her union, Local 1-2 of the Utility Workers Union of America, from 2001 through the present.

14.     Throughout her 15 years as a Con Edison employee, she has been an exemplary employee.  She has received only excellent performance evaluations, both formally and informally.  In fact, she received an overall rating of "Superior" – the highest rating available – on at least three evaluations: in October 2006, in March 2007, and in June 2007.  Notably, those evaluations each immediately preceded a discriminatory and/or retaliatory denial of promotion, *see infra*.

15.     In addition, Ms. Sellick also won an "Excellence Award" in recognition of her professionalism and work ethic in working on an environmental cleanup project with an outside company.  She received rave reviews from that outside company as well.

16.     Ms. Sellick has been featured on Con Edison's website as "[one] of the remarkable women who have chosen to pursue careers at Con Edison in 'nontraditional' fields.'"  The website has touted her "heroic efforts at Ground Zero," where Ms. Sellick participated in the company's restoration efforts in Lower Manhattan in the wake of the attacks of 9/11.

17.     Ms. Sellick has appeared in several promotional Con Edison videos and print marketing photographs.  Con Edison told her that they had chosen her because of her leadership and communication skills.

**Con Edison Favors Men Over Women in the Field**

18.     Ms. Sellick's accomplishments are all the more exceptional because of the barriers that have been erected by Con Edison for any woman who chooses to work in the field. From her earliest days of working in the field at Con Edison, Ms. Sellick has had to fight for herself, without Company support.  On her first day of work, her assigned partner told her that no one wanted to work with her and that he had been "stuck" with her.  Within the first year, a supervisor asked her to his office inside a trailer, locked the door, and started trying to kiss and touch her – she barely escaped.  The following years were just more of the same: isolation, no support, and frequent and regular lewd and offensive comments.

19.     Con Edison promotes, condones, and affirmatively encourages a misogynistic culture that ensures that men in the field are fully and actively supported – through basic facilities (such as restrooms and changing rooms); through training; by being told when new and better opportunities are available; by being informed what questions will be asked on tests and in interviews; and by otherwise being assisted and supported in advancement – while females in the field are routinely denigrated and isolated, and are purposefully kept uninformed about opportunities for training, advancement, or promotion.  As a result, women like Ms. Sellick must constantly work twice as hard and prove themselves even more capable than the men, and are *still* denied opportunities for training, advancement, and a normal, supportive work atmosphere.

**Con Edison Repeatedly Denied Ms. Sellick the Opportunity to Advance Within the Company**

*First Line Supervisor – October 2004*

20.     In October 2004, Ms. Sellick applied for the position of First Line Supervisor of A and B Mechanics.  Ms. Sellick understood that both A Mechanics and B Mechanics were eligible for promotion to the Supervisor position.

21.     Instead of promoting her, Con Edison promoted three men, one of whom had no prior experience as a mechanic (the job held by those he would be supervising).  In contrast, Ms. Sellick had four years as a Con Edison mechanic.

22.     Ms. Sellick sought to understand the reason for her denial, and discovered that a written policy had been applied incorrectly to her case but that, ultimately, management retains full discretion to decide whether to apply the written policy.

23.     Ms. Sellick was denied the promotion for discriminatory reasons, based on her sex.

24.     Upon information and belief, Ms. Sellick was as or more qualified than the three men who were promoted to Supervisor.

*First Line Supervisor – January 2007*

25.     In early January 2007, two years after making title to become an A Mechanic and being specifically encouraged to seek a management promotion, Ms. Sellick again applied to become a First Line Supervisor.

26.     She was selected for an initial phone interview with Project Manager Chris Janusz and, oddly, a field operations planner (Anthony Carucci) who was not even in the department anymore.  Janusz and Carucci are friends.

27.     Although Ms. Sellick performed well in the interview, she was not awarded a second interview.

28.     Ms. Sellick was denied this promotion shortly after she had been interviewed by Con Edison's Equal Employment Opportunity Affairs (EEOA) office about a complaint filed by a male shop steward, which reported gender discrimination against women in Construction Services, and after Ms. Sellick had submitted information to EEOA about specific examples of

such discrimination against several women, including herself.

29.     Ultimately, three men were placed in the position.  Upon information and belief, one of the selected male candidates had a lower title than Ms. Sellick and considerably fewer years' service to Con Edison.  Upon information and belief, the other two men who were promoted benefitted from unfair assistance and preferential treatment from the interviewers in advance of their interviews.

30.     In addition to the blatant preferential treatment given to certain male candidates from male decision makers, the promotional process was riddled with unfairness and a lack of accountability.  For example, the decision about who gets a screening phone interview and whether someone who participates in a screening interview is awarded a second interview is entirely discretionary, and no documentation is required for those decisions.

31.     Ms. Sellick was denied the promotion for discriminatory and retaliatory reasons, based on her sex and because she made good faith complaints of sex discrimination and/or participated in a process in which she made good faith complaints about sex discrimination.

32.     Having been treated unfairly, Ms. Sellick complained even more about the promotional process directly to Janusz, two members of high-level management, an HR representative, and the Corporate Ombudsman.  No one took any action in response to her complaint.  To the contrary, her good faith complaints targeted her for yet more retaliation.

*First Line Supervisor – June 2007*

33.     Despite her growing frustration with a system that seemed dead-set on keeping her from advancing in the Company, Ms. Sellick applied again for the First Line Supervisor position in June 2007.

34.     Ms. Sellick was committed to advancing within the Company and hoped that

perhaps a different department might afford her better opportunities to do so.  She then also submitted an application to become an Inspector in the Construction Management Department, which would have been a lateral move within the Company.

35.     Before interviews for the First Line Supervisor position had been scheduled, Ms. Sellick was offered the Inspector position.  She informed Janusz about the job offer and inquired about whether she was still being considered for the post of First Line Supervisor.

36.     Before receiving a response from Janusz, Ms. Sellick learned from one of the men promoted over her in January 2007 that her suspicions about the unlikelihood that she would be able to advance within the Construction Services Department were founded.  Her colleague told Ms. Sellick that she was openly disparaged by and among department management and that she would not have any opportunity for advancement within the department.

37.     Ms. Sellick subsequently received an email response from Janusz suggesting she "make the decision [regarding the Inspector position] as if there was no supervisor position open."

38.     Based on that email message and the statements about how department management viewed Ms. Sellick, Ms. Sellick concluded that Con Edison had denied her the promotion and opted to take the Inspector position.

39.     Four days after Ms. Sellick accepted the Inspector position, Con Edison selected its interview candidates for the Supervisor position, all of whom were male.  In August 2007, Con Edison selected three men to receive the promotion that Ms. Sellick had been denied.

40.     Ms. Sellick was denied the promotion for discriminatory and retaliatory reasons, based on her sex and because she made good faith complaints of sex discrimination and/or participated in a process in which she made good faith complaints about sex discrimination.

**The Denials of Advancement Constituted Retaliation Against Ms. Sellick**

41.     The promotion denials in January and June 2007 also were in retaliation for Ms. Sellick's having spoken out in opposition to Con Edison's discrimination against her and other women workers.

42.     As a union shop steward, Ms. Sellick often brought complaints about sex discrimination to the attention of Con Edison management, which is a principal component of the shop steward's role.  Just prior to her two applications for promotion in late 2006 and 2007, Ms. Sellick had been outspoken about blatant sex-based hostility toward another female mechanic.  She had been in direct communication with Janusz – the manager who was integral in the interview and decision making process for the January 2007 promotion and who advised Ms. Sellick away from the First Line Supervisor position in June 2007 – about this harassment and sex discrimination.

43.     In addition, as detailed above, Ms. Sellick met with an EEOA representative in January 2007 to comment on an EEOA complaint lodged by a male shop steward regarding discrimination against women in the department.  Following the meeting, she submitted additional information that had been requested from her.  Less than one week later, Ms. Sellick was told she had not been selected for a second interview for the Supervisor position.  When a co-worker asked Janusz why Ms. Sellick hadn't been promoted, he responded along the lines of, "I can hire whoever I want. If she has a problem, let her come after us. We've got a whole floor of lawyers."

44.     Also in January 2007 – following the promotion denial in which two of the three successful candidates had been coached by the interviewers prior to their interviews – Ms. Sellick complained about the unfairness of the promotional process.  She was subsequently

denied the June 2007 promotion.

**Ms. Sellick Files an EEOC Charge and Con Edison Continues to Discriminate and Retaliate Against Her**

45.     Ms. Sellick filed an initial charge with the Equal Employment Opportunity Commission ("EEOC") in September 2007, which she amended on November 15, 2007 to add class and systemic allegations (hereinafter referred to as "EEOC Charge"). The EEOC Charge set forth the specifics of Con Edison's discriminatory failure to promote Ms. Sellick in 2004 and the discriminatory and retaliatory failures to promote her twice in 2007.

46.     Shortly after Ms. Sellick filed her EEOC Charge, Con Edison for the first time promoted several women to be supervisors in the field in Construction Services. The women promoted had recently graduated from college and had no relevant field experience. One promoted female employee in particular was far less qualified than Ms. Sellick. Upon information and belief, Con Edison promoted this woman to create the appearance that the Construction Services department does not discriminate against women by denying them advancement within the Company. Nonetheless, the promoted female employee was also treated unfavorably compared to the male supervisors.

47.     Beginning in late July 2007, Ms. Sellick experienced additional retaliatory marginalization in her job at Con Edison. She began her new role as an Inspector in the Construction Management department in the Bronx, as one of only two women out of approximately 19 Inspectors and Construction Representatives.

48.     Her male coworkers were already aware that Ms. Sellick had made complaints to EEOA about discriminatory conduct against women, including herself, in early January 2007, and they ostracized her immediately.

49.    In September 2007, soon after Ms. Sellick filed her initial EEOC Charge concerning the three denials of promotion described above, one of her supervisors held up a *Daily News* article about the EEOC filing and stated that, as of that morning, the article had been circulated throughout the Company.  The implication was that everyone now, more than ever, viewed Ms. Sellick as a troublemaker and a traitor for challenging the unfair and unlawful treatment she suffered at Con Edison.

50.    Male Inspectors in her department told her directly that they had been instructed not to trust her.

51.    As an example of the retaliation Ms. Sellick experienced, she was isolated and not supported when she started in August 2007 as a new Inspector.  Instead, she was left effectively to her own devices.  In contrast, men joining up as new Inspectors were routinely supported, actively taught, and identified for good assignments.

52.    The pattern continued.  For example, in 2009, Ms. Sellick asked to be placed with a qualified Construction Representative to learn the construction business and for training in codes and billing, which are skills required for a promotion within the Construction Management department.  Ms. Sellick's requests were ignored and she was not given any on-the-job training in billing, notwithstanding the fact that junior male colleagues were afforded such opportunities. She was instead forced to study on her own, learning what she could from observing and talking to people at Con Edison's training facility.

53.    Ultimately, Ms. Sellick passed the test and became a Construction Representative in 2010.  But the process of doing so was significantly harder for her than it was for her male counterparts because no one would work with her on the job to help her develop the necessary skills and knowledge, or to otherwise train her.

54.    From 2010, when she became a Construction Representative, until the present, Ms. Sellick has been given mostly menial jobs and is nearly always assigned to work alone.  The General Manager in her department since 2010 has been particularly disrespectful and unfair towards Ms. Sellick.  On several occasions when they have had face-to-face meetings, he wrote down everything Ms. Sellick said.  His actions stem from his having been informed that Ms. Sellick is not to be trusted, and specifically because Ms. Sellick made good faith complaints about the sex discrimination and retaliation at Con Edison.  On another occasion, he spoke so harshly to Ms. Sellick – using a tone he never uses with any male employee – that even Ms. Sellick's own supervisor seemed embarrassed by the harshness.

55.    Another supervisor told Ms. Sellick that he had wanted to give her a rating of "Superior" for the previous raise cycle, but that the General Manager would not allow it.  Ms. Sellick has been targeted by Con Edison's management and suffers the consequences on a daily basis.

**Ms. Sellick Is Subjected to a Continuing Hostile Work Environment**

56.    Ms. Sellick has also been subjected, on a weekly if not daily basis, to sexually inappropriate conduct and language by men in the construction departments, which has created a hostile work environment.  The male Inspectors and Construction Representatives use vulgar, graphic terms in the work place about their sexual activities; male colleagues in the Construction Services department have used similarly graphic terms to brag about their sexual exploits and physically abusing their wives or girlfriends.  The supervisors either ignore this talk or join in, laughing.

57.    This behavior is ongoing.  Ms. Sellick was forced to view pornography that covered the inside of a Con Edison truck from the Gas Department at one of her work sites.  The

driver of the truck refused to listen to her because she was a woman, even though she had called him to the site for a consultation.  A supervisor arrived and spoke with the driver, but did not say anything about the clearly visible pornography covering the inside walls of the truck.

58.     As recently as last month, Ms. Sellick returned to her desk to find an offensive and vulgar photograph posted on a message board just to the side of her desk.  The graphic and offensive photo, which depicted a man riding a female in a sexually derogatory manner, remained on the message board for several days.

59.     This kind of discriminatory behavior is constant at Con Edison, and Ms. Sellick is forced to deal with it without any recourse because management condones it and participates in it.  And of course, whenever Ms. Sellick complains, she is swiftly punished for doing so.

**Con Edison's Continued Failure to Address or Remedy Complaints**

60.     Con Edison's management and EEOA office have failed entirely to address or remedy the hostile work environment and sex discrimination that permeates the Company's culture.  In fact, the Company has even rewarded male employees whom the EEOA has found *did engage* in discrimination against women.

61.     For example, an individual against whom a harassment complaint was substantiated by the EEOA was given a favorable transfer less than 12 months after the EEOA made its finding, in direct violation of the Company's policy against such transfers within 12 months of a disciplinary action.

62.     In contrast to that male employee, Ms. Sellick was denied a promotion based on a disciplinary action that was *more than* 12 months old, even though Con Edison's policy clearly prohibits relying on such an old action.  Plainly, the rules don't matter when it comes to favoring men.  Con Edison chooses to ignore the policy with respect to a male employee to help him, but

to break with policy to punish Ms. Sellick.

63.     And Con Edison's purported efforts to remedy the pervasive nature of harassment and discrimination at the Company have been superficial and cursory.  For example, the EEOA office has hosted several meetings per year for women working in nontraditional positions, of which Ms. Sellick attended several.  Following these meetings, the Company has taken no action to address the systemic problems of sexual harassment, discrimination in job assignments, promotion, and training, and retaliation.  In fact, EEOA staff have not permitted Ms. Sellick or other women to discuss such issues during the meetings, despite the fact that the meetings are ostensibly designed to help these very women air their grievances and affect change within the Company.

64.     Con Edison has also supposedly instituted a mentoring program for women in non-traditional positions, called Women in Non-Traditional Careers (WINC).  This program is window dressing and essentially non-functional.

65.     First, there are an insufficient number of women in the field to be mentors (or whom Con Edison will allow to be mentors, *see infra*), so men, or women in management or other non-field positions are designated as mentors, thereby creating mismatched mentor relationships.

66.     Second, Con Edison will not allow experienced women in the field who have a history of speaking out on issues of discrimination to serve as mentors.  Specifically, in 2010, Ms. Sellick – who, at that time, was a Construction Representative with 10 years of experience in the field – asked an EEOA employee if she could become a mentor.  She was told that she was not qualified.  Ms. Sellick pressed the EEOA representative to explain what the requisite qualifications were, and though the EEOA representative said she would send them to Ms.

Sellick, she never did.

67.    At bottom, the Company's supposed efforts to address concerns related to harassment, discrimination, and retaliation in the field have been superficial, defense-oriented, and entirely ineffective.  Con Edison continues to maintain a discriminatory and hostile work environment for Ms. Sellick and many other women working in the field.

**The EEOC Probable Cause Finding**

68.    Even more astounding is Con Edison's unwillingness to make any changes to its culture in the face of Ms. Sellick's (and others') EEOC Charges and the EEOC's ultimate finding of probable cause.

69.    On November 7, 2011, after a full investigation, the EEOC made a probable cause finding regarding the discriminatory and retaliatory treatment Ms. Sellick suffered.  According to the EEOC determination, Con Edison "discriminated against [Ms. Sellick and other Charging Parties] on account of their sex when they were denied promotions to various supervisory positions for which they were more qualified than the male employees who were promoted instead."

70.    The EEOC found further that Ms. Sellick "was qualified for the First Line Supervisor position to which she applied on December 15, 2006, but was not given the same opportunity to compete for the position as the male applicants who were selected for the position. Accordingly, the Commission found that [Con Edison] failed to promote [Ms. Sellick] to the First Line Supervisor position because of her sex."

**Ms. Sellick Has Suffered and Continues to Suffer Emotional, Psychological, and Economic Harm**

71.    Ms. Sellick has suffered substantial harm as a result of the discriminatory and retaliatory treatment she has experienced as an employee of Con Edison.  Certainly, the multiple

denials of promotions set her back financially in a meaningful way, including in lost salary wages, lost raises, lost bonuses, and other compensation.  Moreover, members of Con Edison's management receive substantial additional benefits and are entitled to better medical insurance policies and lower co-pays, among other benefits.  Ms. Sellick was unable to reap these benefits as a direct result of the promotion denials.

72.     In addition to lost back pay, Ms. Sellick is owed front pay, as her current salary is not what she should be receiving had she not been discriminated and retaliated against.

73.     Ms. Sellick has also suffered emotional and physical harm as a result of the discriminatory and retaliatory treatment.

74.     Ms. Sellick has difficulty sleeping and is anxious and depressed.  These symptoms have been triggered and exacerbated by her mistreatment at Con Edison, where she has never been treated fairly and where she feels perpetually physically unsafe.  She is made to feel an outcast, with no one to support her in a job where teamwork and partnership are essential. Every day, Ms. Sellick goes to work anxious about the constant discrimination and retaliation that she has experienced on a daily basis for years, without end.  The stress and anxiety caused by Ms. Sellick's mistreatment at work over the course of many years also contributed actively to physical stressors affecting her health.

## FIRST CAUSE OF ACTION
(Unlawful Discrimination – Title VII, 42 U.S.C. § 2000e *et seq.*)

75.     Plaintiff repeats and realleges the allegations in each and all of the above paragraphs as if set forth fully herein.

76.     Con Edison is an employer as defined in Title VII, and at all relevant times herein employed Plaintiff.

77.     Plaintiff filed a charge with the EEOC in September 2007, and amended her charge in November 2007.  On November 7, 2011, the EEOC found probable cause.

78.     This action is being initiated within 90 days of Plaintiff's receipt of a Notice of Right to Sue from the EEOC.

79.     At all relevant times herein, Defendant discriminated against Plaintiff in the terms and conditions of her employment on the basis of her sex in violation of Title VII, including without limitation by allowing for, encouraging, and condoning (i) the discriminatory denials of promotion to Plaintiff, affording men the promotions over Plaintiff, even though she was qualified and capable, and often more experienced; (ii) the disparate treatment and degradation of female staff, particularly in positions in the field; (iii) a hostile, demeaning, degrading, and abusive work environment because she is a woman; and/or (iv) the failure to support, train, and promote Plaintiff in the same manner as men in equivalent positions; and (v) other acts as detailed above.

80.     Defendant acted with malice and reckless indifference to Plaintiff's rights.

81.     As a result of Defendant's unlawful discrimination, Plaintiff has been damaged and is entitled to injunctive relief, compensatory damages, costs, attorneys' fees and interest, and is further entitled to punitive damages.

## SECOND CAUSE OF ACTION
(Unlawful Discrimination – New York City Administrative Code)

82.     Plaintiff repeats and realleges the foregoing paragraphs as if the same were fully set forth at length herein.

83.     Plaintiff is an aggrieved person under New York City Administrative Code § 8-502(a).

84.     At all times relevant to this Complaint, Con Edison was an "employer" within the meaning of New York Administrative Code § 8-102, employing at least four persons.

85.     New York City Administrative Code § 8-107(1)(a) makes it unlawful for an "employer or an employee or agent thereof, because of the … gender … of any person … to discriminate against such person in compensation or in terms, conditions or privileges of employment."

86.     At all relevant times herein, Defendant discriminated against Plaintiff in the terms, conditions or privileges of her employment on the basis of her gender in violation of the New York City Administrative Code, including without limitation by allowing for, encouraging, and condoning (i) the discriminatory denials of promotion to Plaintiff, affording men the promotions over Plaintiff, even though she was qualified and capable, and often more experienced; (ii) the disparate treatment and degradation of female staff, particularly in positions in the field; (iii) a hostile, demeaning, degrading, and abusive work environment because she is a woman; and/or (iv) the failure to support, train, and promote Plaintiff in the same manner as men in equivalent positions; and (v) other acts as detailed above.

87.     Defendant is liable for the discriminatory and humiliating environment in which Ms. Sellick works, because it was created and fostered by Con Edison management and/or because Defendant did not take adequate steps to prevent or address discrimination.

88.     Pursuant to New York City Administrative Code § 8-502(c), Plaintiff will serve a copy of this complaint within ten days of commencing the action upon the City Commission on Human Rights and Corporation Counsel.

89.     Defendant acted willfully, intentionally, with malice, and in reckless indifference to Plaintiff's rights.

90.     As a direct and proximate result of Defendant's unlawful conduct, Plaintiff sustained damages alleged herein.

91.     Accordingly, under the New York City Administrative Code § 8-502(a) and (f), Plaintiff is entitled to actual damages, punitive damages, injunctive relief, and reasonable attorneys' fees and costs, and interest.

### THIRD CAUSE OF ACTION
(Retaliation – Title VII, 42 U.S.C. § 2000e *et seq.*)

92.     Plaintiff repeats and realleges the foregoing paragraphs as if the same were fully set forth at length herein.

93.     Beginning after Ms. Sellick participated in voicing complaints about sex discrimination that she and other women at Con Edison suffered to the Company's EEOA in January 2007 and continuing after she filed an EEOC Charge, Ms. Sellick was subjected to retribution by her colleagues and Con Edison in the form of an offensive and hostile work environment.

94.     Ms. Sellick was also retaliated against after making complaints about sex discrimination to the Company's EEOA office in January 2007 in the form of unfair denials of promotion.

95.     This retaliation adversely and severely impacted Ms. Sellick's position, career, and well being, and was designed to punish and retaliate against her for having complained about

the humiliating and discriminatory treatment she and other women at Con Edison were forced to endure.

96.     Defendant acted with malice and reckless indifference to Plaintiff's rights.

97.     As a result of Defendant's unlawful retaliation against Plaintiff, Plaintiff has suffered actual damages as a result of lost income and emotional harm, and she is entitled to injunctive relief, compensatory damages, costs and attorneys' fees, and further, to punitive damages and interest.

## FOURTH CAUSE OF ACTION
(Retaliation – New York City Administrative Code)

98.     Plaintiff repeats and realleges the allegations in each and all of the above paragraphs as if set forth fully herein.

99.     New York City Administrative Code § 8-107(8) makes it unlawful for "any person engaged in any activity to which this chapter applies to retaliate or discriminate in any manner against any person because such person had … opposed any practice forbidden under this chapter."

100.     The foregoing acts and practices of Defendant constitute unlawful discriminatory and retaliatory employment practices within the meaning of and in violation of Section 8-107(7) of Title 8 of the New York City Administrative Code.

101.     Defendant is liable for its retaliation against Ms. Sellick because it created and fostered an environment in which management at Con Edison took no meaningful steps to prevent or address the mistreatment Ms. Sellick faced after complaining to Con Edison's EEOA office in January 2007 and because Defendant unfairly denied her opportunities to advance within the Company in retaliation for her making such complaints.

102.    Defendant further retaliated against Ms. Sellick for having filed an EEOC Charge in September 2007, by fostering and failing to remedy the hostile work environment that she has been forced to endure at Con Edison since 2007.

103.    Pursuant to New York City Administrative Code § 8-502(c), Plaintiff will serve a copy of this complaint within ten days of commencing the action upon the City Commission on Human Rights and Corporation Counsel.

104.    Defendant acted willfully, intentionally, with malice, and in reckless disregard for Plaintiff's rights.

105.    As a direct and proximate result of Defendant's unlawful conduct, Plaintiff sustained damages alleged herein.

106.    Accordingly, under New York City Administrative Code § 8-502(a) and (f), Plaintiff is entitled to actual damages, punitive damages, injunctive relief, and reasonable attorneys' fees and costs, and interest.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully requests the following relief:

a.      an order enjoining Con Edison from further discriminating and retaliating against Ms. Sellick;

b.      an order enjoining Con Edison to promote Ms. Sellick and to compensate her for the years of lost wages, benefits, and other compensation during the years she was not promoted;

c.      an order awarding compensatory damages for all lost wages, benefits, and compensation based on all discriminatory denials of promotion and advancement;

d.      an order awarding compensatory damages for all distress, anxiety, humiliation, injury to reputation, emotional harm, pain and suffering, career, family and social disruption and other grievous harm, in an amount to be determined at trial;

e.      an award of punitive damages to Ms. Sellick for Defendant's reckless, willful, and grossly unlawful discriminatory and retaliatory behavior;

f.      an award of reasonable attorneys' fees and costs;

g.      an award of interest on all categories of damages, fees and costs; and

h.      such other and further relief as the Court may deem just and proper.

Dated: New York, New York
        November 18, 2015

By: _____
        Mariann Meier Wang
        Alice G. Reiter

        CUTI HECKER WANG LLP
        305 Broadway, Suite 607
        New York, New York 10007
        (212) 620-2603