**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| **SHARRON SELLICK**, | |
| *Plaintiff*, | |
| v. | No. 15-cv-9082 (RJS) |
| **CONSOLIDATED EDISON COMPANY OF NEW YORK, INC.,** | |
| *Defendant*. | ECF Case |

<u>**MEMORANDUM OF LAW IN SUPPORT OF LEGAL MOMENTUM'S MOTION TO ASSERT A CHARGING LIEN UNDER N.Y. JUDICIARY LAW § 475**</u>

**Legal Momentum**
5 Hanover Square,
Suite 1502
New York, New York
(212)925-6635

## TABLE OF AUTHORITIES
### CASES

*Alderman v. Pan Am World Airways*, 169 F.3d 99 (1999) ...........................................................10

*Bonnaig v. Walton*, 982 N.Y.S.2d 319 (2014) ...........................................................................2

*Byrne v. Leblond*, 811 N.Y.S.2d 681 (2006) ...........................................................................15

*Cioffi v. N.Y. Cmty. Bank*, 465 F. Supp. 2d 202 (2006) ...........................................................12

*Cohen v. Grainger, Tesoriero & Bell*, 81 N.Y.2d 655 (1993)...................................................16

*Consumers Union of U.S., Inc. v. State,* 5 N.Y.3d 327, 371 (N.Y. 2005) ...................................17

*Farrar v. Hobby*, 506 U.S. 103 (1992) .....................................................................................12

*Fischer-Hansen v. Brooklyn H. R. Co.*, 173 N.Y. 492 (1903).....................................................17

*Haser v. Haser*, 707 N.Y.S.2d 47(2000).....................................................................................17

*Itar-Tass Russian News Agency v. Russian Kurier, Inc.*, 140 F.3d 442 (1998)............................10

*Kaplan v. Reuss*, 495 N.Y.S.2d 404 (1985) ................................................................................2

*Klein v. Eubank,* 663 N.E.2d 599, 600 (N.Y. 1996) ...................................................................14

*Luessenhop v. Clinton Cty.*, 558 F. Supp. 2d 247 (2008) ..........................................................13

*Maher v. Gagne*, 448 U.S. 122, 129 (1980)..............................................................................13

*N.Y. Gaslight Club v. Carey*, 447 U.S. 54 (1980)......................................................................13

*Ray Legal Consulting Grp. v. Gray*, 37 F. Supp. 3d 689 (2014) ...............................................16

*Ruthman, Mercadante & Hadjis, P.C. v. Nardiello*, 791 N.Y.S.2d 665 (2005) ...........................12

*Tsombanidis v. W. Haven Fire Dep't,* 352 F.3d 565 (2003) ........................................................13

*Uni-Rty Corp. v. N.Y. Guangdong Fin., Inc.*, 2 N.Y.S.3d 348 (2015)..........................................11

*Watson v. E.S. Sutton, Inc.*, No. 02-02739, 2006 U.S. Dist. LEXIS 97873.................................10

*Wilder v. Bernstein*, 965 F.2d 1196 (1992)................................................................................13

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ...............................................................................1

FACTUAL BACKGROUND .................................................................................3

    **A.** Timeline of Legal Momentum's Work on This Case................................3

    **B.** Legal Momentum's Hours and Staffing on This Case............................7

    **C.** Retainer Agreement and Separation Letter.......................................8

ARGUMENT ...................................................................................................10

  **I.** LEGAL MOMENTUM IS ENTITLED TO A CHARGING LIEN ...................10

    **A.** Legal Momentum Is Entitled to Fees Per the Terms of Its Retainer
Agreement with Plaintiff Sharron Sellick........................................12

    **B.** Legal Momentum Is Entitled to Fees Because Ms. Sellick Is a
"Prevailing Party" Under Title VII...............................................12

        **1.** Title VII Provides for Attorneys' Fees for Administrative
Proceedings...................................................................**13**

  **II.** LEGAL MOMENTUM IS ENTITLED TO ENFORCE ITS LIEN AGAINST
CON EDISON, CHW, OR CHW................................................14

    **A.** Legal Momentum is an Attorney of Record in This Matter...........................14

    **B.** Legal Momentum May Enforce Its Lien Even Though Legal Momentum and
Ms. Sellick Terminated Their Attorney-Client Relationship ........................15

    **C.** Legal Momentum May Enforce the Charging Lien Against CHW...............16

    **D.** Con Edison Will Be Liable for the Full Amount of Legal Momentum's
Attorneys' Fees if It Disburses the Funds of the Settlement Without
Compensating Legal Momentum...................................................17

  **III.** LEGAL MOMENTUM'S BOARD OF DIRECTORS HAS A FIDUCIARY
DUTY TO PURSUE ATTORNEYS' FEES.....................................17

CONCLUSION.................................................................................18

**PRELIMINARY STATEMENT**

For over eight years, from July 2007 until November 2015, Legal Momentum, the Women's Legal Defense and Education Fund ("Legal Momentum") worked tirelessly as Sharron Sellick's counsel of record in her gender discrimination claims against Consolidated Edison Company of New York ("Con Edison") before the Equal Employment Opportunity Commission ("EEOC") and in mediation proceedings. Legal Momentum aggressively took on Ms. Sellick's case, spending over 400 hours on the matter. Legal Momentum: drafted and filed a charge as well as an amended charge with the EEOC; interviewed multiple witnesses to bolster Ms. Sellick's claim; drafted a nearly 20-page rebuttal to the EEOC that included substantial documentary evidence as exhibits; aggressively pursued collaboration with the New York Attorney General's Office ("OAG") to address systemic discrimination at Con Edison that impacted Ms. Sellick; and worked tirelessly on settling the matter through the EEOC's informal conciliation process and through formal Judicial Arbitration & Mediation Services ("JAMS") through 2015. The extensive work that Legal Momentum put into Ms. Sellick's case resulted in the EEOC's finding of "reasonable cause" at in November 2011 that Con Edison had discriminated against Ms. Sellick. In 2011, the EEOC made such a finding less than 5% of the time. [1] (*See* Venetis Dec. Ex. .)

At the end of 2015, after serving as her counsel of record for eight years, Ms. Sellick and Legal Momentum mutually decided to terminate their relationship, with the understanding that Ms. Sellick would pursue her claims in federal court represented by Legal Momentum's co-counsel at the time, Cuti Hecker Wang LLP ("CHW"). CHW does not currently dispute that

---

[1] *See* U.S. Equal Employment Opportunity Commission, Sex-Based Charges FY 1997 – FY 2015 at https://www.eeoc.gov/eeoc/statistics/enforcement/sex.cfm (last accessed on June 20, 2016).

Legal Momentum worked on Ms. Sellick's case and deserves compensation. (Venetis Dec. Ex. ,

Tr. 8:17.) Nor did former co-counsel dispute this fact throughout the course of the administrative

and mediation proceedings. A 2014 document shows that Legal Momentum and CHW *together*

requested $380,000 in fees.[2] Ms. Sellick and Legal Momentum's mutual decision to terminate

their relationship at an opportune time does not change Legal Momentum's ultimate right to fees.

Legal Momentum respectfully brings this motion pursuant to N.Y. Judiciary Law § 475

("Section 475") to assert a charging lien on any settlement proceeds, "in whatever hands they

may come." Section 475 thus allows Legal Momentum to seek fees from all parties to this

lawsuit, including CHW and Con Edison, in the event of a settlement. Under Section 475, Legal

Momentum is an "attorney of record" in this matter because it appeared as Ms. Sellick's counsel

in her EEOC proceedings. *Bonnaig v. Walton*, 982 N.Y.S.2d 319, 319 (N.Y. App. Div. 2014)

(holding that "plaintiff's filing of a charge before the Equal Employment Opportunity

Commission . . . constituted the commencement of a 'proceeding' before a 'federal department'

within the meaning of [] section 475.") It is of no moment that Legal Momentum has not

appeared as Ms. Sellick's counsel in this federal litigation.

Legal Momentum must make this motion at this time, even where no settlement has been

finalized, or risk waiver for failing to act expeditiously and allowing settlement funds to change

hands without asserting its rights. *Kaplan v. Reuss*, 495 N.Y.S.2d 404, 407 (N.Y. App. Div.

1985) (internal citations omitted).

Finally, basic principles of equity and public policy support Legal Momentum's position.

Nonprofits like Legal Momentum would not be able to continue to serve the function of private

---

[2] That confidential settlement document has been filed under seal and an ancillary motion to Legal Momentum's Section 475 Motion.

attorney if counsel who takes the laboring oar, but is not present on settlement day, cannot recover attorneys' fees for its work. Legal Momentum's eight years worth of fruitful work should not go uncompensated.

## FACTUAL BACKGROUND

Sharron Sellick, an exemplary Con Edison employee, approached Legal Momentum after suffering severe discrimination in her workplace. (Venetis Dec. Ex. 1, ¶¶ 5, 8-9.)[3] Ms. Sellick was repeatedly denied promotions and was subjected to harassment in her workplace. (*Id.* ¶¶ 5, 42, and 43.) Con Edison failed to promote her on three occasions due to her gender and in retaliation for complaints about the sex discrimination she faced. (*Id.* ¶ 5) She also complained of harassing language and pornographic images. (*Id.* ¶ 46.)  After several meetings, Ms. Sellick formally retained Legal Momentum as counsel on July 18, 2007. (Venetis Dec. Ex. 1.)

### A. Timeline of Legal Momentum's Work on This Case

Once Legal Momentum began working as counsel, Legal Momentum Senior Staff Attorney, Gillian Thomas, spent nearly 30 hours investigating Ms. Sellick's claims and preparing to file Ms. Sellick's EEOC charge, an eight-page document, which was filed on September 19, 2007. (Venetis Dec. Ex. 2.) Legal Momentum then continued to work closely with Ms. Sellick to build her case against Con Edison. Ms. Thomas spent close to 30 additional hours corresponding with Ms. Sellick and interviewing witnesses that would corroborate Ms. Sellick's claims. (*See* Venetis Dec. Ex. 4.) To bolster Ms. Sellick's claims and to build the strongest case possible on behalf of Ms. Sellick, Ms. Thomas also met and collaborated with the OAG during this time.

---

[3] The documents referred to herein are attached as exhibits to the declaration of Legal Momentum's Executive Vice President and Legal Director, Penny Venetis ("Venetis Dec.").

(*See id.*) This work resulted in a nine-page amended charge with the EEOC, which Ms. Thomas drafted and filed on November 15, 2007. (Venetis Dec. Ex. 5.)

On January 29, 2008, Con Edison responded to Ms. Sellick's claims with a "Position Statement." (Venetis Dec. ¶ 10.) Legal Momentum then filed an extensive, 19-page rebuttal with over 20 exhibits on February 22, 2008. (*Id.* ¶ 11.) Ms. Thomas spent over 40 hours on this task. (*See* Venetis Dec. Ex. 4) In March 2008, Legal Momentum followed up with the EEOC via email, providing further documentation supporting Ms. Sellick's discrimination claim. (*Id* ¶ 12.) In addition, Legal Momentum spent approximately nine hours drafting and finalizing the "Tolling and Standstill Agreement," wherein the parties agreed to toll the statute of limitations to attempt to settle the matter informally. (*See id.* ¶ 13)

On July 30, 2009, Legal Momentum drafted and sent a letter to the EEOC. (Venetis Dec. ¶ 13.) Several law firms, including Outten & Golden and Counsel Mariann Meier Wang's firm at the time, Emery Celli Brinckerhoff & Abady LLP ("ECBA"), signed the letter as well, providing the EEOC with 11 documents to assist the agency in its investigation of systemic discrimination. This letter was sent on Legal Momentum letterhead. (*Id.* ¶ 14)

By the end of 2009, Legal Momentum had already spent over 220 hours on Ms. Sellick's case. (*Id.* ¶ 16; *see also id.* Ex. 4.) At that time, Legal Momentum agreed to co-counsel with Mariann Wang, who was then with ECBA. (*Id.* ¶ 16.) Upon information and belief, Ms. Wang represented at least two other claimants against Con Edison, apart from Ms. Sellick. (¶ 15.) Legal Momentum represented only Ms. Sellick until November 2015, after Ms. Sellick received her "right to sue" letter from the EEOC. (Venetis Dec. ¶ 17.)

On November 7, 2011, Ms. Sellick, along with seven other women (together "Charging Parties"), received a "reasonable cause" finding by the EEOC that they were discriminated

against by Con Edison on account of their sex. (Venetis Dec. ¶ 18.) This EEOC finding is rare, occurring less than 5% of the time. (Venetis Dec. ¶ 18, Ex. 6.) Legal Momentum, along with counsel for the other Charging Parties, then began preparing for "conciliation," an informal and confidential settlement process before the EEOC, with Con Edison. (Venetis Dec. ¶ 19.)

In 2012 and 2013, Legal Momentum's then Litigation Director, Michelle Caiola, spent over 15 hours on conciliation efforts. (*See* Venetis Dec., Ex. 4.) During that time she conferred with Ms. Sellick, calculated damages, and drafted the 23-page reply to the EEOC on behalf of the Charging Parties, dated November 30, 2012. (*Id.*) This letter was submitted by Ms. Caiola on Legal Momentum's letterhead. (*Id* ¶ 21.)

Throughout 2014, a Senior Staff Attorney from Legal Momentum, Christina Brandt-Young, spent nearly 30 hours trying to settle Ms. Sellick's case against Con Edison. (*See id.* Ex. 4.) In a June 24, 2014 draft letter to the OAG and the EEOC encouraging settlement, Legal Momentum and Cuti Hecker Wang *together* requested a total of $380,000 for attorneys' fees. (Venetis Dec. Ex. 7, filed under seal.)

During the "conciliation" phase of the case, Legal Momentum, counsel for the Charging Parties, and Con Edison agreed to work with a private mediator. (Venetis Dec. ¶ 25.) In its attempt to settle the case, Legal Momentum Senior Staff Attorney Christina Brandt-Young, Staff Attorney Jelena Kolic, and Executive Vice President and Legal Director Penny Venetis spent approximately 80 hours preparing for the mediation, attending two days of mediation, and participating in conference calls related to the mediation. (Venetis Dec. Ex. 4.) Time spent on the mediation included: reviewing documents; calculating damages; back and forth communications with the client regarding the mediation process and strategy; strategizing with co-counsel and counsel for the Charging Parties; communicating with the JAMS mediator Michael Young; and

attending the mediation sessions. (*Id.*) In February 2015, Ms. Venetis and Ms. Brandt-Young of Legal Momentum made significant substantive edits to Ms. Sellick's mediation statement submitted to JAMS and provided CHW with seven supporting documentation for that submission. (Venetis Dec. ¶ 26; *id.* Ex. 4.)

Neither the conciliation nor the mediation processes were ultimately successful. (Venetis Dec. ¶ 27.) On August 21, 2015, Ms. Sellick received her "right to sue" letter from the EEOC, indicating that the EEOC had finished investigating and processing Ms. Sellick's claim. (*Id.* ¶ 29.) As Ms. Sellick's administrative remedies had been exhausted pursuant to Title VII (42 U.S.C. § 2000e *et seq.*), Ms. Sellick was free to file suit in federal court. The "right to sue" letter provided a 90-day window for Ms. Sellick to file suit. (Venetis Dec. ¶ 30.) Per the terms of the "Standstill and Tolling Agreement," Ms. Sellick notified Con Edison of her intent to sue on August 26, 2015. (Venetis Dec. ¶ 31.)

Between August 26, 2015 and November 2015, Ms. Sellick and Legal Momentum had several conversations and mutually decided that Legal Momentum would not pursue federal litigation on Ms. Sellick's behalf. (Venetis Dec. ¶ 32.) Ms. Sellick's retainer agreement stated that Legal Momentum would represent Ms. Sellick through the EEOC proceedings and was not obligated to continue its representation of Ms. Sellick beyond that point. (Venetis Dec. Ex. 1, ¶¶ 3-4.) Legal Momentum and Ms. Sellick thus mutually decided to terminate their relationship per the terms of the parties' retainer agreement. (Venetis Dec. Ex. ¶¶ 21, 22.) Legal Momentum sent Ms. Sellick a separation letter on November 18, 2015, which reminded Ms. Sellick "that pursuant to paragraphs 7 and 8 of the Retainer Agreement, Legal Momentum is legally entitled to attorneys' fees in the event that your case settles or is successful at trial." (Venetis Dec. Ex. 8.) Neither Ms. Sellick not CHW refuted or responded to this letter. (*Id.*) This suit was filed three

6

days later, on November 21, 2015, by Ms. Sellick, who was represented by Legal Momentum's

co-counsel, CHW.

### B. Legal Momentum's Hours and Staffing on This Case

Over the course of eight years, Legal Momentum spent over 400 hours representing Ms.

Sellick, approximately 80 of which were spent preparing for and attending mediations. (*See*

Venetis Dec. Ex. 4.) The case was leanly staffed at all times. Nearly half of those 430 hours were

put in by a single senior staff attorney, Gillian Thomas. (*See id.*) She worked on the case for two

years, until her departure from Legal Momentum in 2009. (*See id.*) A graduate of the University

of Michigan Law School, Ms. Thomas has served as a Senior Trial Attorney at the EEOC and is

currently a Senior Staff Attorney of the Women's Rights Project at the American Civil Liberties

Union. She is also the author of the well-reviewed book *Because of Sex*, a book about the impact

of Title VII that was partly inspired by her time working at Legal Momentum and on Ms.

Sellick's case.

In July 2009, the new litigation director, Michelle Caiola, took over her case, spending

over 100 hours on the case. (Venetis Dec. Ex. 4.) Before her time at Legal Momentum, Ms.

Caiola served ten years as a Senior Trial Attorney for the EEOC. Her work on the case was

followed by Senior Staff Attorney Christina Brandt-Young's in 2014, a *cum laude* graduate of

the University of Michigan Law School with extensive experience representing women in Title

VII matters. Ms. Brandt-Young spent 75 hours on the case. (*See* Venetis Dec. Ex. 4.) The work

from these senior attorneys constitutes the bulk of the time spent on this case. (*Id.*) In 2015,

former Staff Attorney Jelena Kolic and Legal Director and Executive Vice President Penny

Venetis (who joined Legal Momentum in late January 2015) also worked on the mediation

efforts. (Venetis Dec. ¶ 28.)

In total, Legal Momentum's attorneys spent 412.5 hours on this case and accrued in $221,731.50 in fees. (Venetis Dec. Ex. 3.)

### C.  Retainer Agreement and Separation Letter

Legal Momentum is the nation's oldest gender justice legal nonprofit that works to ensure women's economic security by representing plaintiffs like Ms. Sellick. (Venetis Dec. ¶ 3.) Legal Momentum is also a very small nonprofit that represents clients for free. (*Id.*) The primary way to continue doing so is by ensuring that we collect attorneys' fees that are due to Legal Momentum. (*Id.*) As a result, in its retainer agreements, it provides very specific provisions for attorneys' fees for its prevailing clients. (*Id.*) Ten out of 23 paragraphs in the retainer agreement address attorneys' fees in some manner. (*See* Venetis Dec. Ex. , ¶¶ 5, 6, 7, 8, 9, 10, 11, 12, 13, 16.)

Pursuant to the retainer agreement, Ms. Sellick agreed that "[i]f I recover any money in this case, either in a settlement or otherwise, Legal Momentum has the right to require me to repay such costs and I agree to do so." (Venetis Dec. Ex. 1, ¶ 6.) In the event Ms. Sellick received court-awarded fees, such fees were assigned to Legal Momentum:

> If my case is successful, the court may require the defendants to pay litigation costs and/or attorneys' fees. Because I am not being charged any fee for Legal Momentum's services, *I hereby assign any award of attorneys' fees to Legal Momentum*. I also hereby assign any court award of costs to Legal Momentum. This agreement as to court-awarded costs and/or attorneys' fees may be altered by any subsequent co-counsel agreement that Legal Momentum may enter into.

(*Id.* ¶ 7. Emphasis added.) No subsequent co-counsel agreement was entered into between Legal Momentum and CHW, or previously ECBA, that altered this agreement. (Venetis Dec. ¶ 16.)

Pursuant to ¶ 8 of the retainer (*Id.* Ex. 1), Ms. Sellick also very explicitly agreed that she would not accept any settlement that did not provide fees to Legal Momentum:

I agree not to accept a settlement for such claims unless it makes some provision for costs and attorney's fees, and I agree to seek one of the following provisions in the settlement of any such claim:

    a) The defendants will pay reasonable costs and attorneys' fees, calculated by multiplying the hours expended by a reasonable hourly rate for determining such fees; or

    b) The defendants will pay a smaller amount for costs and attorneys' fees that Legal Momentum and I agree to accept; or

    c) The defendants will permit the court or administrative body to decide how much they must pay for costs and attorneys' fees.

Ms. Sellick further agreed to pay Legal Momentum's attorneys' fees where defendant agrees only to pay the settlement in a lump sum and refuses to negotiate a separate amount of attorneys' fees:

In the event defendants insist on settling the case for a lump sum covering all their monetary obligations, I will cooperate with Legal Momentum in reaching mutual agreement on (a) a reasonable minimum amount I will accept for my monetary relief and (b) a reasonable minimum amount I will accept for attorneys' fees. If a lump sum settlement is reached, the costs of the litigation shall first be deducted and paid to Legal Momentum.

(*Id.* ¶ 9.)

On June 13, 2016, CHW represented to this Court that the potential settlement offer "is a lump-sum number that is being offered to Ms. Sellick in exchange for releasing her claims." (Venetis Dec. Ex. 9, Tr. 23:5-6.) Such a settlement was contemplated by Legal Momentum's retainer agreement with Ms. Sellick. The agreement states that in the event of a "fee waiver, Legal Momentum has the right to charge reasonable attorneys' fees plus the costs of litigation against the amount of the settlement, and to deduct those amounts from the settlement amount before remitting the balance to me." (Venetis Dec. Ex. ¶ 9.)

In Legal Momentum's separation letter to Ms. Sellick, Legal Momentum stated: "We wish to remind you that pursuant to paragraph 7 and 8 of the Retainer Agreement, Legal Momentum is legally entitled to collect attorney's fees in the event that your case settles or is successful at trial." (Venetis Dec. Ex. 9) Neither Ms. Sellick nor CHW contested the separation letter's assertion regarding fees. (*Id.* ¶ 33.)

## ARGUMENT

Legal Momentum is entitled to eight years of attorneys' fees for work performed during the EEOC phase of Ms. Sellick's case, even though, pursuant to the retainer agreement, Legal Momentum did not continue to represent Ms. Sellick after those administrative proceedings terminated. A case on point, *Watson v. E.S. Sutton, Inc.*, No. 02-02739, 2006 U.S. Dist. LEXIS 97873 (S.D.N.Y. Aug. 11, 2006), addresses this issue directly, awarding attorneys' fees to the firm of Outten & Golden for its representation of a client during the EEOC phase of a case that went to trial. Pursuant to Section 475, Legal Momentum is thus entitled to assert a charging lien here. This Court has jurisdiction over attorneys' fees disputes. "Federal courts may exercise supplemental jurisdiction 'to hear fee disputes between litigants and their attorneys when the dispute relates to the main action.'" *Alderman v. Pan Am World Airways*, 169 F.3d 99, 102 (2d Cir. 1999) (citations omitted).

## I.      LEGAL MOMENTUM IS ENTITLED TO A CHARGING LIEN

The mechanism for recovering attorneys' fees is the assertion of a lien. Section 475 provides a broad remedy in order "to furnish security to attorneys by giving them a lien upon the subject of the action." *Itar-Tass Russian News Agency v. Russian Kurier, Inc.*, 140 F.3d 442, 450 (2d Cir. 1998) (citations omitted).

Section 475 provides in pertinent part:

> From the commencement of an action, special or other proceeding in any court or before any state, municipal or federal department, except a department of labor, . . . the attorney who appears for a party has a lien upon his or her client's cause of action, claim or counterclaim, which attaches to a verdict, report, determination, decision, award, settlement, judgment or final order in his or her client's favor, and the proceeds thereof in whatever hands they may come; and the lien cannot be affected by any settlement between the parties before or after judgment, final order or determination. The court upon the petition of the client or attorney may determine and enforce the lien.

Section 475 "governs attorneys' charging liens in federal courts sitting in New York." *Itar-Tass Russian News Agency,* 140 F.3d at 448. Former attorneys may enforce the "lien either by way of motion in the main action or by plenary action." *Uni-Rty Corp. v. N.Y. Guangdong Fin., Inc.*, 2 N.Y.S.3d 348, 348 (N.Y. App. Div. 2015) (citations omitted). Here Legal Momentum is asserting its rights under Section 475 as a motion in the main action. The Court in this case has jurisdiction over this fee dispute (*see, e.g., Alderman*, 169 F.3d at 102), and Legal Momentum is entitled to file a motion and enforce a charging lien.

This motion is timely. Legal Momentum may waive its lien if it does not act to enforce its lien within a reasonable time. "[I]f the attorney knowingly allows the proceeds to pass into the hands of the client or another party without asserting his or her rights, or if the attorney fails to enforce the lien within a reasonable time, the lien will be deemed waived and the attorney relegated to a plenary action against the client for any fees. *Kaplan v. Reuss*, 495 N.Y.S.2d 404, 407 (N.Y. App. Div. 1985) (internal citations omitted).  Legal Momentum did not waive the charging lien, since it raised this issue with both parties as soon as it learned about the possibility of settlement, and it informed the Court of the same via letter, dated May 26, 2016, and at the June 13, 2016 hearing.

### A. Legal Momentum Is Entitled to Fees Per the Terms of Its Retainer Agreement with Plaintiff Sharron Sellick

Ten out of 23 paragraphs in Ms. Sellick's retainer agreement address Legal Momentum's right to attorneys' fees. In New York, courts enforce the parties' retainer agreement on its terms. *Ruthman, Mercadante & Hadjis, P.C. v. Nardiello*, 791 N.Y.S.2d 665, (N.Y. App. Div. 2005) ("A clear and unambiguous retainer agreement will be enforced according to its terms.") The retainer set the expectations of the parties and is the basis upon which Legal Momentum brings this motion to assert a charging lien under Section 475.

The retainer agreement entered into between Legal Momentum and Sharron Sellick is clear and unambiguous with respect to attorneys' fees. In exchange for free representation, Legal Momentum was entitled to an award of attorneys' fees if Ms. Sellick recovered any money in this matter. Ms. Sellick authorized and agreed for Legal Momentum to "seek attorneys' fees and costs from the defendants." (¶ 5.) In fact, she agreed to "assign any award of attorneys' fees to Legal Momentum." (¶ 7.)

Ms. Sellick further agreed to pay Legal Momentum's attorneys' fees where defendant agrees only to pay the settlement in a lump sum and refuses to negotiate a separate amount of attorneys' fees. (¶ 9.) In other words, even in a situation such as this, where Con Edison decides to settle this matter in a lump sum, Legal Momentum is contractually entitled to fees.

### B. Legal Momentum Is Entitled to Fees Because Ms. Sellick Is a "Prevailing Party" Under Title VII

Title VII provides for fee shifting and awards fees to prevailing parties. *Cioffi v. N.Y. Cmty. Bank*, 465 F. Supp. 2d 202, 217 (E.D.N.Y. 2006). )) "A plaintiff is a prevailing party when she 'succeed[s] on any significant issue in litigation which achieves some of the benefit' sought in the lawsuit." *Farrar v. Hobby*, 506 U.S. 103, 109 (1992). "It is therefore axiomatic that '[t]he

fact that [plaintiff] prevailed through settlement rather than through litigation does not weaken her claim to fees.'" *Luessenhop v. Clinton Cty.*, 558 F. Supp. 2d 247, 252 (N.D.N.Y. 2008) (quoting *Maher v. Gagne*, 448 U.S. 122, 129 (1980)). "[I]t is plain that a party may prevail when it vindicates rights--regardless of whether there is a formal judgment--through a settlement or consent judgment." *Wilder v. Bernstein*, 965 F.2d 1196, 1202 (2d Cir. 1992).

### 1. Title VII Provides for Attorneys' Fees for Administrative Proceedings

Title VII further provides for attorneys' fees for work performed solely in administrative proceedings. Therefore Legal Momentum is entitled to fees for the work it performed in the EEOC phase of Ms. Sellick's claim. "The words of § 706 (k) leave little doubt that fee awards are authorized for legal work done in 'proceedings' other than court actions. Congress' use of the broadly inclusive disjunctive phrase 'action or proceeding' indicates an intent to subject the losing party to an award of attorney's fees and costs that includes expenses incurred for administrative proceedings." *N.Y. Gaslight Club v. Carey*, 447 U.S. 54, 66 (1980). "To obtain the fees, the administrative proceeding must be 'useful and of a type ordinarily necessary to secure the final result obtained from the litigation.'" *Tsombanidis v. W. Haven Fire Dep't*, 352 F.3d 565, 581 (2d Cir. 2003) (citations omitted).

In *Watson*, a jury determined that plaintiff had been retaliated against in violation of Title VII, among other statutes. Several firms worked on plaintiff's case. Like Legal Momentum in this case, Outten & Golden represented the plaintiff only in the EEOC proceedings and obtained a "probable cause" finding. Two other firms represented plaintiff after the EEOC finding and, subsequently, during the trial. The plaintiff moved for attorneys' fees and costs on behalf of all three firms, and Outten & Golden its fees for work performed during the administrative phase of the case. *Watson*, 2006 U.S. Dist. LEXIS 97873, at *13, *adopted by Watson*, No. 02-2739,

(S.D.N.Y. filed Aug. 3, 2007 at 2). In this 2007 case, the court found the hourly rate of $500 reasonable for partners Anne Golden and Kathleen Peratis.

*Watson* is directly on point here. Legal Momentum vigorously represented Ms. Sellick throughout her EEOC proceedings. As a result of Legal Momentum's representation of Ms. Sellick, Ms. Sellick received a "reasonable cause" finding that Con Edison discriminated against Ms. Sellick on the basis of her sex. Legal Momentum also represented Ms. Sellick through lengthy mediated settlement discussions through 2015.  All of Legal Momentum's work for Ms. Sellick favorably impacted her settlement. Like plaintiffs' counsel who represented Watson during the EEOC phase of her case, Legal Momentum is entitled to compensation for its work.

## II.    LEGAL MOMENTUM IS ENTITLED TO ENFORCE ITS LIEN AGAINST CON EDISON, CHW, OR CHW

### A.  Legal Momentum is an Attorney of Record in This Matter

As an initial matter, the charging lien may be awarded only to "attorneys of record," which includes attorneys who appear in EEOC proceedings. *Bonnaig v. Walton*, 982 N.Y.S.2d 319, 319 (N.Y. App. Div. 2014) (holding that "plaintiff's filing of a charge before the Equal Employment Opportunity Commission . . . constituted the commencement of a 'proceeding' before a 'federal department' within the meaning of [] section 475.") Case law makes clear that Legal Momentum is an attorney of record here for the purposes of enforcing its lien. *Klein v. Eubank*, 663 N.E.2d 599, 600 (N.Y. 1996).

### B. Legal Momentum May Enforce Its Lien Even Though Legal Momentum and Ms. Sellick Terminated Their Attorney-Client Relationship

Pursuant Section 475, "[i]t has long been held that attorneys who terminate their representation for just cause continue to be entitled to enforce their liens." *Klein*, 663 N.E.2d at 601 (N.Y. 1996). The policy behind the long-standing New York law is clear:

> Attorney-client relationships frequently end because of personality conflicts, misunderstandings or differences of opinion having nothing to do with any impropriety by either the client or the lawyer. Others end because of unexpected conflicts of interests or changes in litigation strategy that require different lawyering skills. In some of those situations, the client may ask the attorney to withdraw. In others, it may be the attorney who initiates the termination process by offering to withdraw in order to avoid embarrassment, avert further conflict, preserve the relationship on a long-term basis or simply save the client from the discomfort of having to fire the attorney. Importantly, in many such cases, the decision to terminate the relationship is the product of a mutual choice.

*Klein*, 663 N.E.2d at 601 (N.Y. 1996).

Here, the decision to terminate the relationship between Legal Momentum and Ms. Sellick was mutual and pursuant to a previously negotiated 2007 retainer agreement. As such, Legal Momentum is entitled to seek fees. "[I]t is simply inaccurate to state that, as a general proposition, attorneys who voluntarily withdraw always forfeit their statutory charging liens." *Id.* Indeed, even attorneys dismissed *for cause*, which is not the case here, do not automatically waive their rights under Section 475: they are entitled to a hearing. *Byrne v. Leblond*, 811 N.Y.S.2d 681, 683 (N.Y. App. Div. 2006) ("Where there are conflicting claims as to the whether an outgoing attorney was discharged with or without cause, a hearing is necessary to resolve such dispute.")

Consequently, any argument that Legal Momentum cannot be awarded fees since it represented Ms. Sellick only in EEOC proceedings is antithetical to the policy behind Section

475, the language of the retainer agreement, and Legal Momentum's separation letter, to which Ms. Sellick and CHW did not object.

### C. Legal Momentum May Enforce the Charging Lien Against CHW

Where the former attorney is not discharged for cause, the attorney can assert a charging lien against the current attorneys. *Ray Legal Consulting Grp. v. Gray*, 37 F. Supp. 3d 689, 698 (S.D.N.Y. 2014) ("New York law holds, albeit implicitly so, that an attorney has standing to pursue an action under Section 475 against another attorney for fees due to the attorney from his former client.") In this case, Legal Momentum was not dismissed by the client. Legal Momentum and Ms. Sellick agreed, pursuant to the retainer agreement, after she received her "right to sue" letter, that they would not continue their attorney-client relationship. Legal Momentum and Ms. Sellick agreed that CHW would represent her adequately in federal court proceedings against Con Edison.

Therefore, "when the dispute is between attorneys . . . [t]he discharged attorney may elect to receive compensation immediately based on quantum meruit or on a contingent percentage fee based on his or her proportionate share of the work performed on the whole case." *Cohen v. Grainger, Tesoriero & Bell*, 81 N.Y.2d 655, 658 (N.Y. App. Div. 1993). If the outgoing attorney makes no election at the time she is discharged from the case, "the presumption should be that a contingent fee has been chosen." *Id.* at 660. In its termination letter, Legal Momentum did not request immediate reimbursement but made clear that it was entitled to fees in the event of settlement or success at trial.

### D. Con Edison Will Be Liable for the Full Amount of Legal Momentum's Attorneys' Fees if It Disburses the Funds of the Settlement Without Compensating Legal Momentum

"Under New York law, a plaintiff's attorney may enforce her statutory charging lien against the defendant's own assets, if he still possesses the settlement proceeds or knowingly paid them to the plaintiff so as to deprive the attorney of her compensation. The lien which attaches in the attorney's favor cannot be impaired by a collusive settlement." *Haser v. Haser*, 707 N.Y.S.2d 47, 50 (N.Y. App. Div. 2000) (internal citations omitted); *Fischer-Hansen v. Brooklyn H. R. Co.*, 173 N.Y. 492, 502, 66 N.E. 395, 398 (1903) ("a lien upon a claim or a cause of action follows the fund created by a settlement of the claim, which thereupon ceases to exist. It attaches to the amount agreed upon in settlement the instant that the agreement is made, and if the defendant pays over to the client without providing for the lien of the attorney, he violates the rights of the latter and must stand the consequences.") As such, Con Edison, Ms. Sellick, and Ms. Wang cannot enter into a "collusive settlement," depriving Legal Momentum of its fees. Legal Momentum's actions informing Con Edison and Cuti Hecker Wang of its lien in any potential settlement protected its interest in the case. Section 475 "created a lien in favor of the attorney on his client's cause of action, in whatever form it may assume in the course of the litigation, and enables him to follow the proceeds into the hands of third parties. . ." *Itar-Tass Russian News Agency,* 140 F.3d at 450.

### III. LEGAL MOMENTUM'S BOARD OF DIRECTORS HAS A FIDUCIARY DUTY TO PURSUE ATTORNEYS' FEES

As fiduciaries, Legal Momentum's Board of Directors ("Board") is obligated to protect the organization's financial interests. *Consumers Union of U.S., Inc. v. State*, 5 N.Y.3d 327, 371 (N.Y. 2005) (holding nonprofit boards and individual directors must uphold fiduciary duties of care, loyalty,

and obedience.) Proper discharge of these duties ensures that a board's financial decisions "are made soundly and legally" and that the board "prudently manages its assets in furtherance of its organization's stated charitable purpose." *Id.* In this case, the Board must therefore protect Legal Momentum's entitlement to fees and its mission to continue to represent victims of gender discrimination free of charge.

This enforcement is timely and not premature as the parties have suggested. Indeed, failure to assert the lien could be construed as waiving those fees, *see e.g.*, *Kaplan v. Reuss*, 495 N.Y.S.2d 404, 407 (N.Y. App. Div. 1985), which could be deemed a violation of our Board's fiduciary obligations.

## **<u>CONCLUSION</u>**

For the foregoing reasons, Legal Momentum respectfully requests that the Court grant its Motion to Assert a Charging Lien Pursuant to Section 475.

Dated: New York, New York
       June 20, 2016

                                    _____s/_____
                                    Penny M. Venetis