EXHIBIT 5

| CHARGE OF DISCRIMINATION | AGENCY | | CHARGE NUMBER |
|---|---|---|---|
| This form is affected by the Privacy Act of 1974; See Privacy Act Statement before completing this form. | | FEPA | 520-2007-04519 |
| | x | EEOC | |

| New York State Division of Human Rights | and EEOC |
|---|---|
| State or local Agency, if any | |

**NAME** (Indicate Mr., Ms., Mrs.)
Ms. Sharron Sellick

**HOME TELEPHONE** (Include Area Code)
(212) 735-6365

**STREET ADDRESS CITY, STATE AND ZIP CODE**
205 E. 95th Street, #18D, New York, NY 10128

**DATE OF BIRTH**
10-31-62

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME (If more than one list below.)

| NAME | NUMBER OF EMPLOYEES, MEMBERS | TELEPHONE (Include Area Code) |
|---|---|---|
| Consolidated Edison Co. of NY | More than 15 | (212) 460-4600 |

| STREET ADDRESS CITY, STATE AND ZIP CODE | COUNTY |
|---|---|
| 4 Irving Place, New York, NY 10003 | New York |

| NAME | NUMBER OF EMPLOYEES, MEMBERS | TELEPHONE NUMBER (Include Area Code) |
|---|---|---|
| Consolidated Edison, Inc. | More than 15 | (212) 460-4600 |

| STREET ADDRESS CITY, STATE AND ZIP CODE | COUNTY |
|---|---|
| 4 Irving Place, New York, NY 10003 | New York |

**CAUSE OF DISCRIMINATION BASED ON** (Check appropriate box(es))

**DATE DISCRIMINATION TOOK PLACE**
EARLIEST (ADEA/EPA) LATEST (ALL)
1/25/07 - present

| | RACE | COLOR | x | SEX | RELIGION | AGE |
|---|---|---|---|---|---|---|
| x | RETALIATION | NATIONAL ORIGIN | | DISABILITY | OTHER (Specify) | |

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

This Amended Charge is intended to place Consolidated Edison Co. of New York and Consolidated Edison, Inc. (collectively, the "company") on notice of a pattern or practice of discrimination against women at the company.  Please see the attached affidavit.

---

☑ I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or telephone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

NOTARY - (When necessary for State and Local Requirements)

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.

SIGNATURE OF COMPLAINANT

I declare under penalty of perjury that the foregoing is true and correct.

Date
11/14/07
Charging Party (Signature)
EEOC FORM 5 (Test 10/94)

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE
14th day of Nov. 2007
(Day, month, and year)

GILLIAN THOMAS
NOTARY PUBLIC-STATE OF NEW YORK
No. 02TH6149752
Qualified in Kings County
My Commission Expires July 17, 2010

IN THE EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

---

SHARRON SELLICK    :
                   :
        Charging Party,    :
                   :
    v.             :       Charge No. 520-2007-04519
                   :
CONSOLIDATED EDISON    :       AFFIDAVIT
COMPANY OF NEW YORK and    :
CONSOLIDATED EDISON, INC.,    :
                   :
        Respondents.    :
                   :

---

CITY OF NEW YORK       )
                       )   ss.:
COUNTY OF NEW YORK  )

      I, Sharron Sellick, being duly sworn, depose and say:

      1.      I submit this affidavit in support of my Amended Charge of Discrimination against respondents Consolidated Edison Company of New York ("CENY") and Consolidated Edison, Inc. ("CEI") (collectively, "Con Ed" or the "company"). CENY is a subsidiary of CEI.

      2.      I am a 45-year-old woman.

      3.      I have been an employee of respondent CENY for nearly eight years. For virtually all of that time, I worked in the Construction Services Department (the "Department"). In late July 2007, I transferred to CENY's Construction Management Department to take the job I currently hold, Inspector.

      4.      From 2001 until my transfer out of the Department, I was a shop steward for my union, Local 1-2 of the Utility Workers Union of America.

      5.      On three occasions – in October 2004, in January 2007, and June 2007 – Con Ed denied me promotion to the position of First Line Supervisor. These denials

were due to my gender and, with respect to the 2007 denials, in retaliation for my complaints about gender discrimination at the company.

6.      Con Ed's failure to promote me to First Line Supervisor is part of a pattern or practice of discrimination against women at the company.

*My History at Con Ed and Its Refusal to Promote Me to Supervisor*

7.      Con Ed hired me in January 2000 as a General Utility Worker ("GUW") in the Department (then known as the Maintenance Service Department).  In April 2001 I received the title of Mechanic B, and in December 2005 I qualified as Mechanic A.

8.      Throughout my employment, I have received positive performance evaluations, both through the formal evaluation process and through informal communications with supervisors.

9.      Con Ed profiles me on its corporate website, http://www.coned.com/diversity/women.asp, describing me as "[one] of the remarkable women who have chosen to pursue careers at Con Edison in 'nontraditional' fields."

10.     Women comprise a small minority of the Department's workforce.  Out of approximately 500 employees, approximately 20 are women (i.e., 4%), and only 5 women are supervisors.

11.     In October 2004, I applied for and was denied the position of First Line Supervisor (the "Supervisor position").  Instead, the company promoted two men, one of whom had no prior experience as a mechanic.

12.     In early January 2007, I again applied for the Supervisor position and was selected for an initial phone interview with Construction Manager Chris Janusz, who is the head of the Electric Operations unit (the "unit"), and Anthony Carucci, one of the unit's four Field Operations Planners.

2

13.     Although I performed well in the interview, I was not awarded a second interview.  On January 25, 2007, Janusz informed me of this decision and told me the reason was that I had "not shown good communication or leadership potential" during the initial telephone interview.

14.     Upon information and belief, Con Ed conducted second interviews with six candidates, all male, and in February 2007, placed three of them in the Supervisor job: Anthony Santamaria ("Santamaria"), Phil Justi ("Justi"), and Sharan Bux ("Bux").

15.     At that time, Santamaria was working in another department as a "helper," a job category below level B Mechanic.  He also had fewer years' service to Con Ed than I did.

16.     Additionally, I later learned that Janusz had arranged for Justi to receive the initial interview questions in advance, and that Carucci had assisted Bux with his application.

17.     I complained to Janusz about this unfair treatment, but he denied it and took no action in response to my complaint.

18.     I also told Robert Massoni, Janusz's supervisor, and Human Resources representative Susan Tarakan that I thought the promotion process was unfair, but they took no action, either.

19.     In June 2007, Con Ed advertised another First Line Supervisor position.  I again submitted an application.

20.     After the First Line Supervisor application deadline had passed but before the company had identified candidates to be interviewed, I was offered the position of Inspector in the Construction Management Department – a lateral move.

21.     On June 28, 2007, I wrote Janusz an e-mail and told him I had been

3

offered the Inspector job.  I told him that I did not want to leave the Department and that I would accept the Supervisor position if offered it.  I asked whether I was a candidate.

22.     The next day, I spoke with Bux (one of the supervisors promoted over me in January 2007).  He recommended that I accept the Inspector job.  Bux also told one of my co-workers that Janusz and other Department management openly disparaged me, and that my only opportunity for promotion lay outside the Department.

23.     That evening, Janusz responded to my e-mail that I should "make the decision [about the Inspector job] as if there was no supervisor position open."

24.     Based on Janusz's statement, as well as Bux's statements, I concluded that Con Ed had denied my application for Supervisor, and accepted the Inspector job.

25.     Upon information and belief, within four days of my accepting the Inspector job, Con Ed chose its candidates to interview for the Supervisor position.  Upon information and belief, all of those candidates were male.

26.     On August 15, 2007, I learned that Con Ed selected three men to be Supervisors:  Scott (last name unknown), formerly a Supervisor in another division of the company; Billy Kaseman; and Kenny Saul.  Upon information and belief, Kaseman and Saul are less qualified than I am for the position of Supervisor; Kaseman also has fewer years of service with Con Ed than I do.

### Con Ed's Retaliation Against Me

27.     Con Ed's refusals to promote me in January 2007 and June 2007 were not only because of my gender, but also were in retaliation for my speaking out in opposition to the company's discrimination against women workers, including me.

28.     The June 2007 promotion denial also was in retaliation for my complaints about the fairness of the January 2007 promotion process.

29.     As a shop steward for my union, I frequently receive complaints from female employees about their difficulties on the job.  On several occasions during my tenure with the company, I have opposed discriminatory practices by bringing those complaints to the attention of Con Ed management, including Section Manager Massoni, then-General Manager Mike O'Donnell, General Manager Carlos Torres ("Torres"), Construction Manager Janusz, Field Operations Planner Joseph Busacca, and Supervisor Mike Luongo.

30.     Most recently, over several months in 2006, I objected numerous times to Janusz and Busacca concerning the open sex-based hostility expressed toward a female mechanic by the men assigned to work with her.  (Con Ed had transferred the mechanic to work under Busacca's supervision after she lodged a sexual harassment complaint with the company's EEO department against Busacca's brother, mechanic Tommy Busacca.)

31.     My last communication with Janusz and Busacca concerning discrimination against the female mechanic was in late October 2006.

32.     In January 2007, EEO staff member Tom Aloisi asked me to comment on an EEO complaint lodged by a male shop steward alleging discrimination against women in the Department.

33.     I met with Aloisi on January 19, 2007.  A few days later, at his request, I submitted additional information about discrimination against several women, including me.

34.     Upon information and belief, Janusz knew about my meeting with Aloisi. Less than a week later, Janusz told me I would not get a second interview for the First Line Supervisor position.

35.     Upon information and belief, when one of my co-workers asked Janusz

5

why he did not promote me, Janusz stated, "I can hire whoever I want. If she has a problem, let her come after us. We've got a whole floor of lawyers," or words to that effect.

36.     Additionally, as described above, I complained to various managers in January 2007 concerning the preferential treatment male candidates got when I was a candidate for the First Line Supervisor job.

### Con Ed's Discrimination Against Other Women at the Company

37.     Upon information and belief, Con Ed maintains a pattern or practice of discrimination against women at the company.

38.     Upon information and belief, women do not receive proper on-the-job training ("OJT"). For example, women often are paired with less-experienced female partners, or with male partners who express hostility to working with a woman and refuse to provide necessary training.

39.     Upon information and belief, because the company fails to provide proper OJT and other training to women, it takes longer for them to advance among pay grades, such as from GUW to Mechanic B, and from Mechanic B to Mechanic A.

40.     Upon information and belief, women generally are passed over for promotional opportunities in the company's operational divisions, including the Construction Services Department, Electric Operations, Steam Operations, and Gas Operations.

41.     Upon information and belief, when conducting performance evaluations or making promotional decisions in the operational divisions, the company is more likely to penalize women for utilizing the company's medical leave policies.

42.     Upon information and belief, sexually harassing language, conduct, and

6

images (such as pornography and graffiti) are pervasive in the operational divisions. I have witnessed such conduct personally on numerous occasions.

43.      Upon information and belief, managers talk openly about their belief that women should not be mechanics or otherwise should not work at Con Ed. Such statements have been made to me personally on numerous occasions.

44.      Upon information and belief, Con Ed also fails to provide adequate on-site restroom and changing facilities for many women employees in the operational divisions.

45.      Upon information and belief, the company's EEO department does not take reasonable action to prevent or correct discrimination or harassment, or to prevent or correct retaliation against employees who complain of such conduct.

46.      As described above, I repeatedly have told managers, in my role as shop steward, about the unfair treatment of women within the Construction Services Department. I also met with EEO staffer Aloisi to discuss Con Ed's discriminatory treatment of women workers, and later submitted a detailed timeline of events specifying various instances of such treatment. To date neither Aloisi nor any other EEO personnel has asked me for more information or otherwise followed up with me concerning the evidence of discrimination against women that is set out in the timeline.

47.      I am aware of numerous Con Ed employees, male and female, who have lodged complaints with Con Ed management, including EEO personnel, about gender discrimination.

48.      Most recently, as mentioned above, union shop steward Steve Hart submitted a detailed complaint to the company's EEO personnel concerning women's treatment in the company. In subsequent communications, Hart informed EEO director Joan Jacobs about my January 2007 and June 2007 promotion denials, among other

developments.  To date, no one from EEO has followed up with Hart concerning these issues.

49.     Con Ed managers, including the Construction Services Department's General Manager Torres, have acknowledged women are underrepresented in the Construction Services Department.

50.     Additionally, upon information and belief, women are underrepresented throughout the operational divisions generally.

51.     In the fall of 2006, I helped recruit approximately 17 women to apply for entry-level General Utility Worker positions at the company.  Upon information and belief, out of those 17, to date only 6 have been invited to take the test to determine eligibility for interview, and only 3 have been offered a job.  Also upon information and belief, the company has hired 50 men as GUWs in the same time period, and has promoted at least 11 men to Supervisor in the Construction Services Department alone.

### *Conclusion*

52.     By denying me promotions to Supervisor in January 2007 and again in June 2007, Con Ed unlawfully and intentionally discriminated against me on the basis of gender, and retaliated against me for complaining about gender discrimination and supporting other employees' discrimination complaints.

53.     Con Ed's discriminatory practices have resulted in my losing past and future wages and other job benefits.

54.     Con Ed's discriminatory practices are part of a pattern or practice of discrimination against women at the company.

55.     Con Ed maintains a system for making decisions about hiring, training, job assignments, and promotions that is excessively subjective and through which Con

8

Ed discriminates against female employees in the company by denying them the same opportunities for employment, job assignments, and upward mobility afforded to similarly situated male employees.

56.     Con Ed's discriminatory practices described above have denied employment to women applicants, have denied women employees training, assignments, and promotional opportunities to which they are entitled, which have resulted in the loss of past and future wages and other job benefits.

57.     Con Ed's discriminatory practices also have created a hostile work environment for women employees in the company.

58.     Con Ed has systematically retaliated against women in the company who have complained about discrimination and unfair treatment.

59.     Con Ed's retaliatory practices have resulted in the loss of past and future wages and other job benefits for women employees in the company.

60.     I have not filed proceedings involving these unlawful employment practices before any state or local agency charged with the enforcement of fair employment practice laws.

I swear that I have read the foregoing Amended Charge and know the contents thereof; the same is true to the best of my knowledge, except as to the matters therein stated to be on information and belief, and as to those matters, I believe them to be true.

9

Executed at New York City on November __14__, 2007.

Sharron Sellick

Subscribed and sworn to before me the undersigned notary public, this __14__ day of November, 2007.

GILLIAN THOMAS
NOTARY PUBLIC-STATE OF NEW YORK
No. 02TH6149752
Qualified in Kings County
My Commission Expires July 17, 2010

10