EXHIBIT 9

# In The Matter Of:

*SHARRON SELLICK, v.*

*CONSOLIDATED EDISON COMPANY OF NEW YORK, INC.,*

---

*June 6, 2016*

---

*Southern District Court Reporters*

Original File G66VSELC.txt
Min-U-Script® with Word Index

SHARRON SELLICK, v.
CONSOLIDATED EDISON COMPANY OF NEW YORK, INC.,                    June 6, 2016

G66VSELC                                                      Page 1

```
1  UNITED STATES DISTRICT COURT
   SOUTHERN DISTRICT OF NEW YORK
2  ------------------------------x
3  SHARRON SELLICK,
4              Plaintiff,
5         v.                        15 CV 9082 (RJS)
6  CONSOLIDATED EDISON COMPANY OF
   NEW YORK, INC.,
7
             Defendant.            CONFERENCE
8  ------------------------------x
                                   New York, N.Y.
9                                  June 6, 2016
10                                 11:40 a.m.
11 Before:
12              HON. RICHARD J. SULLIVAN,
13                                 District Judge
14              APPEARANCES
15 CUTI HECKER WANG
        Attorneys for Plaintiff
16 BY:  MARIANN M. WANG
        ALICE G. REITER
17
   SEYFARTH SHAW
18      Attorneys for Defendant
   BY:  LORIE E. ALMON
19
   LEGAL MOMENTUM
20      Attorneys for Interested Party Legal Momentum
   BY:  PENNY M. VENETIS
21
22 ALSO PRESENT:
23              PHYLLIS TAYLOR, ConEd, In-House Counsel
24
25
```

G66VSELC                                                      Page 2

1         (Case called)
2         THE COURT: All right.
3         Let me take appearances for the plaintiff.
4         MS. WANG: For the plaintiff, your Honor, Mariann
5  Wang.
6         Ms. Sellick is also here and Alice Reiter from my firm
7  as well.
8         THE COURT: Okay.  So Ms. Wang, Ms. Reiter, and
9  Ms. Sellick.  Okay.  Good morning.
10        And for the defendant?
11        MS. ALMON: Lori Almon from Seyfarth Shaw for
12 ConEdison.
13        I'm joined by in-house counsel for ConEdison Phyllis
14 Taylor as well.
15        THE COURT: Ms. Taylor and Ms. Almon.
16        And then not on the docket sheet -- or, no, actually,
17 you are on the docket sheet.  Go ahead.
18        MS. VENETIS: Good morning, your Honor.
19 Penny Venetis for Legal Momentum.
20        And we represented Ms. Sellick from 2007 until 2015.
21        THE COURT: Till 2000?
22        MS. VENETIS: '15.
23        THE COURT: '15.
24        All right.  So what I received from the parties, I
25 guess, was a letter indicating that there's a dispute primarily

G66VSELC                                                      Page 3

1  with respect to, I think, the lawyers.  So what I was told is
2  that there's been a settlement reached between the parties, is
3  that correct, on the claims that are in the complaint?
4         MS. WANG: That is correct.
5         There's a settlement that had with it -- it was
6  accepted with a condition.  That condition, as plaintiffs
7  understood it and was providing it, was that Legal Momentum be
8  allowed the opportunity to litigate its fees, the issue with
9  ConEdison, which is precisely what Legal Momentum, as
10 Ms. Venetis has said, had represented Ms. Sellick alongside me
11 for a number of years in the EEOC proceeding --
12        THE COURT: Right.
13        MS. VENETIS: -- the administrative proceeding.
14        And that retainer ended on its own terms because that
15 proceeding ended.  Legal Momentum indicated that the retention
16 ended because it was -- the administrative proceeding was over.
17 Ms. Sellick chose to pursue this action through my firm only.
18 Notwithstanding the conclusion of that retainer, we have always
19 felt very strongly that Legal Momentum should get paid for work
20 that it has done and we want to make sure that -- we hope that
21 ConEd will pay them.
22        THE COURT: Will pay them outside of the settlement?
23        MS. WANG: Well, it requires a little bit of
24 background, your Honor, which I'll go into without mentioning
25 any specifics that are confidential.

G66VSELC                                                      Page 4

1         The settlement conversations began in earnest most
2  recently in mid April.  The conversations revolved, first and
3  foremost, around what Ms. Sellick should get paid based on her
4  claims evaluating what those claims were worth.  In the context
5  of those conversations, ConEdison asked us what are the fees,
6  of course, because part of the big driving of this was that we
7  were in very intense litigation, as your Honor is aware,
8  because we submitted a number of disputes to your Honor.
9         THE COURT: I'm familiar.
10        MS. WANG: Yes.
11        So they had a serious concern about the accrual of
12 fees; they are paying their own firm obviously, Seyfarth Shaw,
13 and we are also litigating very intensively.
14        So they asked that question about mid April.  At that
15 time I immediately provided my own firm's fees and what our
16 fees were at.
17        I then asked Ms. Venetis from Legal Momentum what
18 their fees were at.  In that conversation I then informed
19 ConEdison and it became clear that the fees were going to be an
20 issue, particularly with respect to Legal Momentum's fees.  I
21 then subsequently went back to Ms. Venetis and asked if there
22 was a way to compromise on that, would there be some
23 flexibility.  She indicated that there was no flexibility.  As
24 a result of that conversation, I indicated that -- it was
25 served as messenger for that to ConEd.  ConEd, of course, took

SHARRON SELLICK, v.
CONSOLIDATED EDISON COMPANY OF NEW YORK, INC.,                          June 6, 2016

| G66VSELC | Page 5 |
| --- | --- |

1  a different view of Legal Momentum's fees.
2      In that conversation with Ms. Almon, Ms. Almon
3  suggested, Can we put Legal Momentum aside and can we try to
4  resolve this with respect to Ms. Sellick's claims and your
5  fees.
6      And I said, Well, that's okay, as long as there's a
7  mechanism to ensure that Legal Momentum gets an opportunity to
8  get paid or litigate this.
9      Ms. Sellick had a retainer agreement with Legal
10 Momentum that she signed in 2007, which says very clearly that
11 Legal Momentum is providing its services free of charge to
12 Ms. Sellick; that Legal Momentum is representing Ms. Sellick
13 only in the administrative proceeding; and that if there were
14 any subsequent proceedings, Legal Momentum would not represent
15 her or there would be a need to have a new retainer put in
16 place.
17     Third and most importantly, the retainer set forth a
18 very detailed provision saying that if you settle with ConEd,
19 you should seek a provision that allows Legal Momentum to seek
20 its fees. The provision specifically says that Ms. Sellick
21 will agree to seek a provision in her settlement agreement
22 where the defendants will permit the Court or administrative
23 body to decide how much they must pay for costs and attorneys'
24 fees.
25     So I was very careful in saying to ConEdison, We can

| G66VSELC | Page 6 |
| --- | --- |

1  have this conversation, we can talk about it, but just be -- I
2  want to be very clear it would be conditioned on allowing Legal
3  Momentum essentially to make a fee application.
4      THE COURT: Nobody is getting fees unless there's a
5  favorable result, right? So normally where there's one lawyer,
6  the parties then decide to settle on whatever terms they think
7  is appropriate, and attorneys' fees are part of the settlement.
8      You're talking about settling for the claims brought
9  in this case, but leaving a mechanism by which to negotiate
10 fees in an EEOC case.
11     MS. WANG: That's correct, your Honor.
12     That is not unusual. It is not unusual also
13 particularly -- and the law says very clearly that the retainer
14 agreement between the parties is what governs.
15     THE COURT: That's fine.
16     MS. WANG: I should be clear, your Honor. I also
17 really tried repeatedly -- this was sort of a last effort. I
18 tried repeatedly to ensure both that ConEd would address Legal
19 Momentum's fees, even though I was sort of standing in the
20 middle of it. Legal Momentum would not budge off of their
21 amount, which is a very large amount, even relative to what we
22 are getting. But, in any event --
23     THE COURT: So your view is I should settle your case
24 and then have a separate trial, basically, between ConEdison
25 and Legal Momentum about their fees.

| G66VSELC | Page 7 |
| --- | --- |

1      MS. WANG: Well, your Honor, this is what Legal
2  Momentum -- Legal Momentum --
3      THE COURT: Maybe I should let Ms. Venetis speak for
4  herself.
5      MS. WANG: Legal Momentum -- I will --
6      THE COURT: Which is not a party to this action.
7      MS. WANG: I understand that, your Honor.
8      But to be clear, this is what Legal Momentum
9  negotiated with Ms. Sellick. That is what they provided. They
10 provided an eight-page retainer in which they repeatedly say
11 that she is being served free of charge; and that they will
12 only be with her in front of the EEOC; that whatever you do,
13 make sure that we have a chance to make an argument to a court
14 about what our fees are.
15     THE COURT: She's going to get a chance to make an
16 argument today. So your view is that that satisfies her
17 obligations under the agreement.
18     MS. WANG: No, I'm not saying that at all, your Honor.
19     THE COURT: That sounds like a contract dispute,
20 contract dispute between Ms. Sellick and Legal Momentum, right?
21     MS. WANG: I think that that is correct to some
22 degree, your Honor.
23     THE COURT: And you're saying that Legal Momentum has
24 the right to veto the settlement?
25     MS. WANG: No.

| G66VSELC | Page 8 |
| --- | --- |

1      THE COURT: No.
2      MS. WANG: I am not.
3      I think because it is a contract, I think the language
4  of the contract --
5      THE COURT: The contract has nothing to do with this
6  cause of action, right? It's a separate cause of action, be it
7  a breach of contract claim or a specific performance claim
8  under a contract that is not part of this litigation.
9      MS. WANG: That's correct, your Honor.
10     I think ConEd probably would make the argument that
11 potentially Legal Momentum doesn't get any fees; and that
12 possibly they should have sought fees in front of the
13 administrative body. But I am not making that argument in
14 part, to be very frank with your Honor, because I'm making
15 arguments that are also just what I think are right, not
16 necessarily what's legal, which is that I do hope that Legal
17 Momentum gets paid something.
18     THE COURT: Well, they would get paid out of, I guess,
19 whatever percentage of the settlement goes to attorneys' fees.
20     MS. WANG: But that was not the agreement, your Honor.
21 That was not my agreement with ConEdison, and it was very clear
22 from the beginning that ConEdison was not, in fact, paying us
23 anywhere near --
24     THE COURT: I'm not sure why this is my problem. It
25 seems to me that this is a contract negotiated between

SHARRON SELLICK, v.
CONSOLIDATED EDISON COMPANY OF NEW YORK, INC.,

June 6, 2016

G66VSELC         Page 9

1 Ms. Sellick and Legal Momentum. If Legal Momentum has the
2 right to veto the settlement because their fees have not been
3 taken care of, then I guess they should do that. But I'm not
4 sure what you're asking me to do in a case that is an
5 employment discrimination suit.
6      MS. WANG: I don't disagree with your Honor at all
7 with one exception: I took exactly that approach and I
8 believed that we could address this all contractually,
9 including in the settlement, except that Legal Momentum has now
10 threatened to sue Ms. Sellick under the lien theory under New
11 York Judiciary Law Section 475.
12      THE COURT: I think Ms. Venetis is shaking her head
13 no.
14      MS. WANG: Well, she has said it in her letter to the
15 Court under a provision that says that she is seeking fees very
16 clearly both under -- pursuant to the retainer and separately
17 that she is seeking fees in an effort to exercise the lien.
18      In that regard, if we settle and therefore are
19 exposing our client to a further lawsuit by Legal Momentum
20 against her for a lien -- which we think that is completely
21 meritless, we've looked at the cases and the New York cases are
22 quite clear that when there's a contingency representation and
23 it ends through the conclusion of the proceeding, there is no
24 lien and, moreover, it certainly -- even cases that Legal
25 Momentum has cited under the lien provision say very clearly

G66VSELC         Page 10

1 that the Court would limit the lien to the retainer terms,
2 which is exactly what we are doing here.
3      So that is the issue from our perspective. We agree
4 that we could settle it and resolve this with a provision that
5 allows -- that satisfies Legal Momentum, but Legal Momentum has
6 threatened to sue Ms. Sellick at this point.
7      THE COURT: Let's hear what Legal Momentum has to say.
8 Ms. Venetis, what are you asking for here?
9      MS. VENETIS: Good morning, your Honor.
10 Legal Momentum has represented Ms. Sellick for eight
11 years through November of 2015. And I have a copy of our
12 retainer agreement here that makes very clear the terms of our
13 representation. It's a 23-paragraph retainer agreement; ten of
14 those paragraphs deal with attorneys' fees. We are a small
15 nonprofit and we depend on attorneys' fees so that we can
16 continue our work representing women who suffer discrimination.
17      THE COURT: I assume that Cuti, Hecker & Wang also
18 relies on attorneys' fees to continue doing their work. But
19 what does that have to do with the case that's before me?
20      MS. VENETIS: So, your Honor, we were involved in
21 negotiations until they broke down in 2015 and Ms. Sellick
22 decided she wanted to sue. We decided to terminate our
23 agreement mutually at that time.
24      Let me make clear we are not here to sue Sharron
25 Sellick; she's a victim of discrimination. But as our very,

G66VSELC         Page 11

1 very short submission to the Court says -- and we're happy to
2 brief this further -- the law is really, really clear. The
3 lien attaches to the attorneys' fees provision.
4      THE COURT: That's great. But I assume they are not
5 going to settle -- maybe they will, maybe they won't. But if
6 you're saying that as a result of this settlement, which
7 includes attorneys' fees, that ConEd also is going to have to
8 pay attorneys' fees to another lawyer who was involved
9 before --
10      MS. VENETIS: Well, not before; it's through the
11 entire duration of the litigation until 2016.
12      THE COURT: Well, this case was filed in 2015.
13      MS. VENETIS: Right. So we -- the EEOC proceedings --
14      THE COURT: You were not counsel of record in this
15 case.
16      MS. VENETIS: We were counsel of record from before
17 the case started, when it was filed through the EEOC, and all
18 through negotiations with JAMS until 2015.
19      Your Honor, I just want to correct some
20 misrepresentation that Ms. Wang made.
21      Legal Momentum has always been willing to negotiate a
22 settlement of attorneys' fees; indeed, we severely cut our
23 hours and our rates so that we could actually achieve a
24 settlement on the attorneys' fees provision.
25      THE COURT: Wait, wait.

G66VSELC         Page 12

1      You cut those rates so that you could achieve a
2 settlement with whom? With ConEd?
3      MS. VENETIS: With Ms. Wang and ConEd on the
4 attorneys' fees rates.
5      We were very clear about that; we sent a chart showing
6 that we are only collecting portions of all the hours. That's
7 for purposes of a settlement. If we litigated, obviously we
8 are going to try and get whatever we are entitled to.
9      THE COURT: But wait. Can I interrupt you?
10      MS. VENETIS: Sure.
11      THE COURT: Because if the client decides to settle
12 these claims, all in, including attorneys' fees, for X amount,
13 doesn't that end it?
14      MS. VENETIS: Your Honor, no. We have a retainer
15 agreement. Again, I have it here and I'm happy to --
16      THE COURT: But ConEd is not a party to that retainer
17 agreement. If the party, the plaintiff, has decided that this
18 case is worth X number of dollars, including attorneys' fees,
19 and that resolves the case completely, you're saying
20 Ms. Sellick does not have the authority to enter into that
21 agreement.
22      MS. VENETIS: Your Honor, pursuant to the retainer
23 agreement, that is correct.
24      THE COURT: So you can veto her desire or her decision
25 to settle this case.

SHARRON SELLICK, v.
CONSOLIDATED EDISON COMPANY OF NEW YORK, INC.,                    June 6, 2016

G66VSELC                                                    Page 13

1      MS. VENETIS: She is required to seek attorneys' fees
2 under the agreement that include Legal Momentum.
3      Your Honor, there are two things that are directly on
4 point. If you look at the Watson case, again, it's Watson and
5 we cited it in our submission to the Court. It's a 2006 case.
6 Similar facts here. There were many firms involved in the EEOC
7 proceedings. And then after the case went to trial, Outten &
8 Golden sought attorneys' fees from the attorneys in the case
9 who took the case to trial and was successful.
10     There's also Section 475, which we also cited in our
11 submission to the Court, which makes very clear that the lien
12 attaches against the other attorneys in the case; that we would
13 be entitled to fees as it relates to the other attorneys.
14     THE COURT: Right. So that's my point.
15     If Ms. Sellick decides that she wants to settle this
16 case for X number of dollars, including attorneys' fees, then
17 it seems to me that your recourse is either to try to stop the
18 settlement or to attempt to get a percentage of the attorneys'
19 fees that were baked into the settlement.
20     MS. VENETIS: Your Honor, that's why we are here
21 today.
22     THE COURT: Okay.
23     MS. VENETIS: We attempted, your Honor, to engage both
24 ConEdison and Ms. Wang to be part of the negotiation agreements
25 and we were not invited to those, the settlement agreements

G66VSELC                                                    Page 14

1 after the mediation ended. Ms. Wang basically said Legal
2 Momentum gets zero. She was very, very clear that we would get
3 nothing. She would not be willing to --
4      THE COURT: It sounds like Ms. Wang is saying, You can
5 negotiate your own arrangement with ConEd, but I've already
6 negotiated my arrangement with ConEd.
7      MS. VENETIS: Well, and we're happy to, your Honor,
8 negotiate with -- ConEdison was also not willing to negotiate
9 that provision with us. So as we are obliged to, our board has
10 a fiduciary duty to actually be here today to say we did a
11 tremendous amount of work; this case would not be here, there
12 would not have been a $3.8 million settlement that was
13 negotiated by the attorney general's office in relation to
14 other individuals --
15     THE COURT: But that's not this case.
16     MS. VENETIS: No, it's not, your Honor, but it's a
17 small of that case.
18     THE COURT: Well, did you get attorneys' fees out of
19 that case?
20     MS. VENETIS: No, that was other plaintiffs. We
21 always represented Ms. Sellick, and Ms. Sellick did not wish to
22 be part of that settlement. So but not for Legal Momentum's
23 incredibly, incredibly hard work for bringing this horrible
24 discrimination to the public's eye and also before the EEOC,
25 Ms. Sellick would not have been able to negotiate the

G66VSELC                                                    Page 15

1 settlement that she did with ConEd.
2      So that's why we're here, your Honor. Again, we are
3 happy to fully brief this; we are very, very confident that the
4 loss awards are positioned. But if we don't assert our lien
5 and our rights here, then we are in danger of waiving them and
6 that is not something that we want to do.
7      THE COURT: All right.
8      So this really is, as I thought all along -- Ms. Wang
9 seemed to be suggesting otherwise, this is really a dispute
10 between you and Ms. Wang, right?
11     MS. VENETIS: And ConEdison, your Honor. We want
12 Ms. Sellick to get -- to be compensated. But also we have been
13 cut out of the discussions. We would have been happy to be
14 part of the settlement negotiations; we were cut out. As a
15 matter of fact, one of the cases --
16     THE COURT: Wait. I want to be clear.
17     So your view is that ConEdison has an obligation to
18 include you in these conversations.
19     MS. VENETIS: And if it doesn't, we can actually sue
20 ConEdison under Section 475, because under the law they will be
21 seen as having entered into, quote/unquote, a collusive
22 agreement to cut out an attorney who is entitled to fees.
23     THE COURT: With the client.
24     MS. VENETIS: A collusive agreement between the
25 client's attorney and his client.

G66VSELC                                                    Page 16

1      THE COURT: No, no, no. With the client. She's right
2 here. She's not a cipher, she's not an imbecile, she's not a
3 child. She is the one who will decide whether she is settling
4 with ConEdison. You're saying that they have engaged into a
5 collusive --
6      MS. VENETIS: That's a term of art, your Honor, in the
7 case law, which is --
8      THE COURT: But that's not this case, all right? I
9 have a plaintiff here --
10     MS. VENETIS: Yes, your Honor.
11     THE COURT: -- who brought a claim against ConEdison.
12 She now wishes to settle that claim with ConEdison.
13     MS. VENETIS: Absolutely.
14     THE COURT: And you're saying that ConEdison has an
15 obligation to include you in the settlement discussions even
16 though you are not counsel of record.
17     MS. VENETIS: Because we are -- under the law, we are
18 counsel of record because we are counsel of --
19     THE COURT: Under the law you're counsel of record in
20 this case?
21     MS. VENETIS: We are counsel -- legally we are
22 considered counsel of record because we were involved in the
23 EEOC proceedings. And there's a U.S. Supreme Court case that
24 is on point on that issue; I can give you the citation for
25 that.

SHARRON SELLICK, v.
CONSOLIDATED EDISON COMPANY OF NEW YORK, INC.,                    June 6, 2016

G66VSELC                                                      Page 17

1        THE COURT: The client has no choice but to include
2   you in these conversations, even though she wishes to fire you;
3   is that right?
4        MS. VENETIS: The client did not --
5        THE COURT: I'm saying --
6        MS. VENETIS: -- fire us.
7        THE COURT: -- even if she wished to fire you, under
8   your view -- and your view, your reading of the Supreme Court
9   case, an obligation to include you in all settlement
10  discussions.
11       MS. VENETIS: We have to be involved in those
12  discussions, your Honor. And she actually has not fired us; we
13  determined that we did not -- she had Ms. Wang and --
14       THE COURT: So she can't settle this case, that's what
15  you're telling me. The Supreme Court requires that she can
16  only settle this case if you say she can.
17       MS. VENETIS: No, your Honor, I said that we are
18  attorney of record in terms of collecting attorneys' fees
19  according to a U.S. Supreme Court case that even though we were
20  not party to this litigation in federal court --
21       THE COURT: But she doesn't have the authority to
22  settle this case, including attorneys' fees, that's what you're
23  saying.
24       MS. VENETIS: Your Honor, she has her contractual
25  obligation to us under the retainer agreement. That retainer

G66VSELC                                                      Page 18

1   agreement, in multiple places, requires us to be part of the
2   discussion concerning attorneys' fees --
3        THE COURT: If she breaches that agreement, then what?
4        MS. VENETIS: If she breaches that agreement, then we
5   have multiple recourses, for example. And we would like to
6   pursue those recourses.
7        THE COURT: In front of me in a case where you're not
8   even a party.
9        Why are you not going to enforce a contract in some
10  other proceeding? I'm not sure why you're here.
11       MS. VENETIS: Because this is the forum where things
12  like this happen, your Honor. If you look at the Watson case,
13  with very, very similar facts, it was the federal court that
14  made that determination based on an analysis of the retainer
15  agreement and also because counsel throughout the EEOC
16  proceedings are considered counsel of record for a subsequent
17  Title VII action. That's why we are here today.
18       Your Honor, again, we are very happy to brief this
19  thoroughly to talk about you have jurisdiction under the case.
20  I can give you the citations. You do indeed have jurisdiction
21  to hear this case.
22       THE COURT: To hear this case. "This case" being
23  what? You think this is now really a case about you, right?
24  You basically are saying you don't want the plaintiff to settle
25  this case without you.

G66VSELC                                                      Page 19

1        MS. VENETIS: Your Honor, we want the plaintiff to
2   settle very much. But we also want to get the attorneys' fees
3   to which we are entitled to. We really, really do. We have
4   done a tremendous amount of work on this case. We want
5   Ms. Sellick to settle. We should not have been boxed out of
6   any sort of negotiations. When attorneys' fees were being
7   discussed, I asked repeatedly to be part of those negotiations
8   and Ms. Wang blocked me out.
9        So that's why we're here today. We really would have
10  loved if we had been at the table. I believe we would have
11  been able to negotiate a settlement that included Legal
12  Momentum. But we were totally boxed out. And Ms. Wang is
13  willing to give us zero for all the work that we did. We
14  brought her firm into this --
15       THE COURT: Don't say Ms. Wang is trying to do this.
16  The client is trying to do this, right? Ms. Wang doesn't get
17  to decide what the settlement is, Ms. Sellick does.
18       MS. VENETIS: Ms. Sellick does get to decide what the
19  settlement is; but Ms. Wang asserted her right to the fees.
20  There are many times during the course of this --
21       THE COURT: So you think you have a cause of action
22  against Ms. Wang?
23       MS. VENETIS: I do think we have --
24       THE COURT: What is that cause of action?
25       MS. VENETIS: It is a lien on the proceedings. And

G66VSELC                                                      Page 20

1   it's also pursuant to Watson definitively stated that a lawyer
2   who had been involved in EEOC cases -- it's from this Court,
3   your Honor, a lawyer who had been involved in EEOC cases would
4   be able to collect their share of attorneys' fees.
5        THE COURT: There are attorneys' liens all the time.
6   This is not unique to cases like this one. There are cases all
7   the time where you have one lawyer who carries the ball to the
8   ten yard line, and another lawyer who then comes in and
9   finishes the job, and then they are both disputing over who
10  gets what. That's not unusual.
11       MS. VENETIS: Absolutely. I agree with you. But we
12  carried the ball to the 95th yard line and we wanted to be part
13  of the settlement negotiations as to the fees and we were never
14  consulted.
15       The only time Ms. Wang contacted me was to say, What
16  would you take in fees?
17       And I said, Well, what's on the table?
18       And she would not tell me what was on the table. And
19  she would not tell me what her firm had been offered until
20  very, very recently. And then she told me that Legal Momentum
21  would get nothing.
22       I offered to split the fees with her; I offered to do
23  it proportionally based on the amount of time we spent on it.
24  We spent hundreds of hours on this case and, indeed, in a memo
25  to the mediator we made that very, very clear. In our

SHARRON SELLICK, v.
CONSOLIDATED EDISON COMPANY OF NEW YORK, INC.,                    June 6, 2016

| G66VSELC | Page 21 |
| --- | --- |

1 correspondence with the attorney general's office we made very,
2 very clear that we had hundreds of thousands of dollars worth
3 of fees in play in this action. So, again, it's not a case of
4 we brought the case and handed it offer to Ms. Wang. We were
5 very, very active.
6     THE COURT: Again, that's not the point.
7     So are you suggesting that you can enjoin Ms. Sellick
8 from settling this case?
9     MS. VENETIS: Your Honor, we don't want to -- we want
10 Ms. Sellick to settle this case, but we also want to assert our
11 lien on the fees to which we are entitled.
12     THE COURT: That's the fees that have been negotiated
13 as part of this settlement.
14     Do you even know what they are at this point?
15     MS. VENETIS: I was told by --
16     MS. ALMON: Excuse me. I'm sorry.
17     We're on the record and it's confidential.
18     MS. VENETIS: I won't say it.
19     MS. ALMON: Okay. Making sure.
20     MS. VENETIS: Ms. Wang told me what it was and I
21 discussed with her the possibility of sharing those, splitting
22 them in some way, and she said no.
23     THE COURT: Well, again, it seems to me that if
24 Ms. Sellick wishes to settle this case, all in, for a certain
25 amount of money, a percentage of which is going to go to fees,

| G66VSELC | Page 22 |
| --- | --- |

1 then the dispute will just be over the percentage of those fees
2 to be divided among the lawyers. Do you agree with that? Do
3 you agree with that or no?
4     MS. VENETIS: We are happy to engage in that
5 discussion, your Honor, we really are. We put a lot of time
6 and effort into this and we are happy to engage in it; we are
7 happy to have your Honor review documents in camera. We really
8 are happy to do that. I made that very clear to Ms. Wang and
9 she said no.
10     THE COURT: I just want to make sure that we all
11 understand. Nobody is objecting to this settlement being
12 consummated; it's just a matter of carving up that portion of
13 the settlement that is devoted to attorneys' fees; is that
14 right?
15     MS. VENETIS: Your Honor, that's right from our
16 perspective. Obviously if ConEd wants to kick in for money to
17 effectuate the settlement, we would certainly be -- and
18 attorneys' fees, we would certainly be amenable to that. But
19 there is a number on the table. I think we should split it
20 50/50 with Ms. Wang. She has said her firm will not take
21 anything out of their -- what has been negotiated as their
22 fees. And that is unfair and we have a legal right to be here
23 to assert our entitlement to the fees.
24     THE COURT: All right.
25     Ms. Wang, do you want to respond?

| G66VSELC | Page 23 |
| --- | --- |

1     MS. WANG: Yes, your Honor, I do.
2     Ms. Venetis unfortunately has a number of facts and
3 also the law incorrect.
4     First, on the facts, there is an offer from ConEd that
5 is a lump-sum number that is being offered to Ms. Sellick in
6 exchange for releasing her claims and my firm's -- her right to
7 seek fees for my firm.
8     THE COURT: Well, a right to seek fees for your firm
9 or a right to seek attorneys' fees?
10     MS. WANG: No, her right to seek fees from my firm
11 only. That is it. She is not giving up her right to seek fees
12 for Legal Momentum.
13     THE COURT: That's a new trick. So what is her
14 ability to settle with ConEdison, but to still seek fees even
15 though all claims have been settled?
16     MS. WANG: It is a matter of contract, your Honor.
17     THE COURT: Ms. Almon, are you going to settle on
18 these terms?
19     MS. ALMON: Well, your Honor, what we were trying to
20 do is work around what seems to be a fundamental
21 misunderstanding with Legal Momentum about what attorneys' fees
22 they are entitled to, both as a matter of contract and from
23 ConEdison legally in a case where they didn't appear. It
24 seemed to us -- and we actually have spoken with Legal Momentum
25 a number of times.

| G66VSELC | Page 24 |
| --- | --- |

1     The number of hours that we are being told are being
2 attributed to filing Sharron Sellick's EEOC charge and working
3 on her individual case seem unquestionably to include many,
4 many, many hours relating to a separate proceeding which has
5 already been settled, which was a group settlement involving
6 the New York Attorney General's office and the EEOC on behalf
7 of the group of several hundred women. I think Ms. Venetis has
8 stated a couple times today that she is seeking the fees
9 through this lawsuit for those $3.8 million settlement. She
10 said it wouldn't have happened but for that case. She sort of
11 keeps talking about these other things that were not tied to
12 Sharron Sellick.
13     We've said we'd like to see your contemporaneous time
14 records because we think, at best, if you had a lien here it
15 would relate to what you did on behalf of Sharron Sellick and
16 Sharron Sellick alone.
17     They talk a lot about the Watson case here. The
18 Watson case was a post jury verdict fee application and, of
19 course, it would not be unusual that the counsel that filed the
20 EEOC charge could secure fees associated with that. So we were
21 willing to have a dialogue kind of around that model, what did
22 you do in terms of Sharron Sellick's charge.
23     They've steadfastly refused to share the
24 contemporaneous time records with us probably because they
25 don't back up only fees relating to Ms. Sellick. They've told

SHARRON SELLICK, v.
CONSOLIDATED EDISON COMPANY OF NEW YORK, INC.,

June 6, 2016

**G66VSELC**            Page 25

1 us there's a total of 431 hours associated -- this is their
2 reduced number, 431 hours associated with Ms. Sellick's EEOC
3 charge. It's a seven or eight-page charge; we find it very,
4 very hard to grasp.
5       So where we ultimately came out, because we think we
6 have such a fundamental misunderstanding of the law on Legal
7 Momentum's behalf, is that if they thought they had some kind
8 of cause of action or legal claim relating to fees as against
9 ConEdison, then they could go ahead and pursue that because,
10 frankly, I don't believe they have one. There's no prevailing
11 party here; it's a settlement. They didn't appear in this
12 case; they've never filed a charging lien; they are not a party
13 in this action. So to a certain degree just to put the actual
14 costly litigation behind us, we were willing to carve that
15 piece out.
16       But we've always been willing to have a dialogue
17 around it. What I think the trick here is there's a belief
18 from Legal Momentum's behalf that they are entitled to fees
19 relating to this larger matter which was already settled, and
20 you heard reference to the attorney general's office. That has
21 nothing to do with a Title VII claim here; it's not an
22 administrative prerequisite to suit. The fact that we are not
23 seeing any of these time records is telling and it's been an
24 obstacle to what could have been a much neater resolution.
25       MS. VENETIS: Your Honor, may I respond to that?

**G66VSELC**            Page 26

1       THE COURT: Sure.
2       MS. VENETIS: First of all, Legal Momentum made clear
3 to ConEdison that we are not seeking fees for the attorney
4 general matter. Legal Momentum did a tremendous amount of
5 legwork for years and years before the EEOC charge was actually
6 filed. And yes, it's a short charge, it's a few pages, but
7 there was a tremendous amount of work that went into that. And
8 Legal Momentum has always represented only Sharron Sellick in
9 this case.
10       THE COURT: In this case?
11       MS. VENETIS: In the EEOC case, excuse me, your Honor.
12 Ms. Wang has represented other clients, as well as Ms. Sellick.
13 The information that we have given to ConEdison reflects only
14 the hours devoted to issues related to Ms. Sellick. We went
15 through our time records painstakingly and we took out time
16 that was spent on the larger matter. And even when there was
17 time that was somewhat questionable, we just eliminated it and
18 we also reduced our hours and we also reduced our fees, what we
19 would normally charge in cases like this and other civil rights
20 cases.
21       So again, we are more than happy and have been happy
22 to adjudicate the -- to discuss the settlement of Legal
23 Momentum's fees of this case.
24       THE COURT: So you would be making a motion under what
25 to collect here?

**G66VSELC**            Page 27

1       MS. VENETIS: Your Honor, we would be making a
2 motion -- we'd be filing a lien. The case that --
3       THE COURT: Under what, Section 475?
4       MS. VENETIS: Under Section 475, yes.
5       The case law makes clear that under 475, even though
6 it's a state court provision, that your Honor would have
7 jurisdiction to decide this particular --
8       THE COURT: But you've never been counsel of record in
9 this case.
10       MS. VENETIS: Right. But we are --
11       THE COURT: So 475 talks about being counsel of
12 record.
13       MS. VENETIS: And under the law, we are considered
14 counsel of record because we are counsel of record in the EEOC
15 charge.
16       Again, your Honor, we are very happy to brief this.
17 We can provide a brief within two days to the Court on this
18 particular issue because we feel very, very confident in the
19 Court having jurisdiction over this and also --
20       THE COURT: And the case you're relying on for -- it's
21 not a jurisdictional issue; the issue is whether the statute
22 covers you. The issue is whether you are the attorney of
23 record for purposes of Section 475 and a charging lien. And
24 475 is about counsel of record; and you've never been counsel
25 of record in this case.

**G66VSELC**            Page 28

1       MS. VENETIS: Right. But we are -- under Title VII
2 law, we are counsel of record, your Honor.
3       THE COURT: Well, if the resolution took place in the
4 EEOC proceeding, that might be true. But this is --
5       MS. VENETIS: But the case law, the case that I cited
6 earlier --
7       THE COURT: That involved Section 475?
8       MS. VENETIS: No, but it defines who counsel of record
9 is.
10       THE COURT: Counsel of record is going to be defined
11 by state law or federal law?
12       MS. VENETIS: No, your Honor, it's defined by federal
13 law.
14       THE COURT: Then why are we talking about Section 475
15 then?
16       MS. VENETIS: Because 475 says counsel of record may
17 actually apply for a lien before the Court.
18       THE COURT: But federal law defines who counsel of
19 record is under a state procedure?
20       MS. VENETIS: There are federal cases that actually
21 have -- the Second Circuit says that 475 -- a federal court can
22 look to 475 or adopt 475 in determining whether or not lien
23 attaches and who the attorneys of record are.
24       Let me just give you that cite, your Honor. If you
25 just give me a moment, I just have to thumb through my papers.

**SHARRON SELLICK, v.**
**CONSOLIDATED EDISON COMPANY OF NEW YORK, INC.,**                    June 6, 2016

| G66VSELC | Page 29 |

1 And again, your Honor, we're very happy to brief this for the
2 Court.
3       MS. WANG: Your Honor, may I say something while
4 she's -- or do you want me to wait?
5       THE COURT: Yes, you could say something, Ms. Wang.
6       MS. WANG: Two things, your Honor.
7       The first is that when Legal Momentum was discharged,
8 when their retention ended, they sent Ms. Sellick a letter
9 saying, We're done pursuant to paragraphs 3 and 4 of our
10 agreement. Paragraphs 3 and 4 state, We represent you only in
11 the EEOC proceeding.
12      Then subsequently they specifically reminded Ms.
13 Sellick, Don't forget about paragraphs 7 and 8. And this is
14 what we have been trying to do. Because Legal Momentum has had
15 a number that has been very difficult from ConEd's perspective
16 to deal with in terms of their fees. And as a footnote to
17 that, your Honor, we too -- Ms. Sellick has asked her former
18 attorneys, Legal Momentum, for the fee detail and we have not
19 gotten it. We've asked repeatedly and we still don't have the
20 fee detail from Legal Momentum, but that's an aside.
21      Legal Momentum reminded Ms. Sellick of her obligation.
22 And under lien law, at the moment, at the time of discharge,
23 the law has to then assert their lien. They did not assert a
24 lien. There are two paths here for Legal Momentum getting
25 paid: There's the retainer and then there's the lien law.

| G66VSELC | Page 30 |

1       The lien law, we believe, is very clearly not
2 applicable here for many reasons, one of which here is that at
3 the time of discharge, they didn't invoke quantum meruit, they
4 invoked their retainer rights, which is what governed and
5 determined how we then proceeded. We tried to get Legal
6 Momentum to the table; we tried to get them to revise their
7 fees; they wouldn't revise their fees; she wanted to talk to
8 ConEd, I invited her to talk to ConEd; it took her still a week
9 to call them.
10      But, in any event, on the retainer side of it, this is
11 where your Honor very correctly said this is a matter of
12 contract and it's a contract that Legal Momentum, sophisticated
13 attorneys, provided Ms. Sellick with an eight-page retainer
14 that provided for how she should govern herself, and reminded
15 her at the moment of discharge, Don't forget paragraph 8. And
16 paragraph 8 says that Ms. Sellick can settle her case, but she
17 must seek from ConEdison the opportunity for Legal Momentum to
18 file a fee application, which is exactly what we did and what
19 we ensured that they have that opportunity.
20      We again say that there is no lien and Ms. Sellick has
21 done everything to --
22      THE COURT: You're saying Ms. Sellick has performed.
23      MS. WANG: Yes.
24      THE COURT: That the lien hasn't been made, and so
25 it's too late now is what you're saying; and that therefore

| G66VSELC | Page 31 |

1 there is really no cause of action or no motion to be made by
2 Legal Momentum at this point.
3       MS. WANG: Under the lien theory.
4       And it is also true that the lien cases say very
5 clearly the claim is against the client. The client is
6 determining what this pot of money -- how much to potentially
7 pay my firm and how much she gets. And that's the
8 determinative factor, that Legal Momentum would have to sue
9 Ms. Sellick.
10      The one other thing I just want to note, your Honor,
11 for the record, which is probably not that important, but I
12 just want to say it, I have now represented Ms. Sellick
13 alongside Legal Momentum for seven years. So I just wanted to
14 clarify that it wasn't that Legal Momentum prepared this case
15 and handed it to me; I have been there with Ms. Sellick
16 actually beginning in December 2007 when Legal Momentum first
17 approached me about the case, and in formal terms since 2009.
18 And so I have been very involved in this case and have
19 developed it both in the EEOC and in this proceeding.
20      MS. VENETIS: Your Honor, may I just add one thing?
21      THE COURT: Sure.
22      MS. VENETIS: The law is pretty clear that we have not
23 waived our right to a lien.
24      THE COURT: You've not --
25      MS. VENETIS: Waived.

| G66VSELC | Page 32 |

1       THE COURT: You never asserted a lien at any point.
2       MS. VENETIS: Right. We are doing it through these
3 proceedings, your Honor.
4       Additionally, your Honor, there was one letter of
5 separation to Ms. Sellick and in it we reminded her that should
6 she settle the case, we would be entitled to fees pursuant to
7 our retainer agreement. Neither Ms. Sellick nor Ms. Wang
8 disputed that at any point. That was sent in November of 2015.
9 We are now in June of 2016.
10      Again, we believe that your Honor should look at the
11 retainer agreement and multiple provisions that discuss fees;
12 and that your Honor should consider both the Second Circuit law
13 and Section 475 law to actually fully appreciate our legal
14 right to be here and to assert a claim to the fees.
15      Thank you.
16      THE COURT: All right.
17      I'm still just trying to figure out where ConEdison
18 fits in all this. So what you're suggesting, Ms. Venetis, is
19 really just a dispute between you and Ms. Wang over the
20 attorneys' fees portion of the settlement, is that what you're
21 saying?
22      MS. VENETIS: Your Honor, ConEd is actually in this as
23 well, because Section 475 law basically says that if somebody
24 is making a claim to fees in a case, then the attorney for the
25 defendant can't settle a claim that involves attorneys' fees

**SHARRON SELLICK, v.**
**CONSOLIDATED EDISON COMPANY OF NEW YORK, INC.,**                                     June 6, 2016

| | |
|---|---|
| G66VSELC                         Page 33 | G66VSELC                         Page 35 |

Page 33

1  without actually exposing themselves to liability for the cost
2  of attorneys' fees. And that's 475 law, your Honor, which is
3  why I keep saying we would very much like to brief this.
4           THE COURT: Do you agree with that, Ms. Wang? I'm
5  trying to figure out where ConEdison fits in this whole thing.
6           MS. WANG: Your Honor, our deal, as it were, with
7  ConEd is very explicit; that we only accept the deal if Legal
8  Momentum is permitted essentially to litigate its fees with
9  them.
10          THE COURT: Litigate its fees with them.
11          MS. WANG: Yes.
12          To seek its payment as required under the retainer,
13  that Legal Momentum -- and I can read directly from the
14  retainer. That Ms. Sellick seek the following provision in the
15  settlement of any claim: That defendants, ConEd, will permit
16  the Court or administrative body to decide how much they must
17  pay for costs and attorneys' fees.
18          And so that is essentially the mechanism that I
19  believe should satisfy Legal Momentum and should satisfy its
20  ability to put forth this Court what it's done in
21  advancement of Ms. Sellick's claims even in prior proceedings.
22  And this Court can determine that. Ms. Sellick does not
23  have -- they do not have a separate claim against Ms. Sellick
24  for a lien. That can be determined. Your Honor can decide
25  whether or not -- and I certainly hope and submit that Legal

Page 34

1  Momentum should get paid something, I don't know because --
2           THE COURT: So you've negotiated a settlement and then
3  I will decide what fees they're entitled to even though their
4  entitlement to fees turns on there being a favorable result.
5           MS. WANG: Yes, that's correct.
6           And there is case law that says a settlement can be a
7  favorable --
8           THE COURT: So this is a settlement between the
9  parties. Are you settling on terms that would lead you to say
10  this is a favorable result for the plaintiff, Ms. Almon?
11          MS. ALMON: What we've agreed to, your Honor, is that
12  we would settle with Ms. Sellick. And to be clear, would be
13  waiving any and all claims for fees, carving out whatever
14  claims Legal Momentum says that it may have on ConEdison. We
15  don't think they have any cause of action for a claim against
16  us. We've been willing for a long time to enter -- they are
17  not counsel of record in this case; we don't think there's
18  anything under Title VII that entitles them to fees; we don't
19  think they are a prevailing party under the statute. It's a
20  settlement; it's a mutual agreement.
21          THE COURT: They wouldn't be a prevailing party, they
22  are lawyers. The prevailing party would be Ms. Sellick.
23          MS. ALMON: That's what I'm saying. I don't think
24  there's anything under Title VII that actually does give Legal
25  Momentum the right to case against ConEdison. But we were

Page 35

1  willing, because of this concern about the retainer agreement,
2  to have Ms. Sellick sign a general release with an exclusion of
3  she's not waiving any claims on behalf of Legal Momentum.
4  Again, I don't think Legal Momentum has any claims, but she
5  wouldn't be doing anything to compromise their rights through
6  the settlement. And we were willing to live with that.
7           I don't know how to emphasize enough is that this
8  settlement dialogue has been going on for years; and Legal
9  Momentum has had multiple, multiple opportunity to try to show
10  us the specific time they devoted to Sharron Sellick in her
11  charge. I think it could have just been resolved in an easy
12  way, but we're sort of all over the map here on these mystery
13  causes of action and no liens. To me, sharing the attorneys'
14  fees -- I'm sorry, the contemporaneous time records, which they
15  would have to do if they have some sort of a fee application,
16  right, maybe it's the path where it's trying to help Legal
17  Momentum and ConEdison understand exactly what is the universe
18  in dispute and then see if there was some kind of a compromise.
19          But, frankly, I know what it usually takes to file an
20  EEOC charge; I've been doing this for a long time. It's not
21  431 hours. And my understanding is a lot, a lot, a lot of this
22  is related to the other matter which has been long since
23  closed. And I think there's remorse perhaps of not having
24  secured fees through that proceeding that is now being used to
25  hurt Ms. Sellick and hold up her settlement.

Page 36

1           We certainly dispute this concept that there's
2  horrible discrimination in the light that they brought to the
3  public's eye that they describe. But what we do have is a
4  dispute between Ms. Sellick and ConEdison; that we've reached a
5  path towards settlement; and the only holdup here is Legal
6  Momentum asking for fees that frankly exceeded what Ms. Wang
7  says she has through hotly-contested litigation. Makes no
8  sense to us. We think it's a real shame that there's a holdup
9  here.
10          MS. VENETIS: Your Honor, just for the record, we're
11  seeking fees for eight years worth of work. There were 100
12  hours of fees -- I have the breakdown here. There were 100
13  hours of fees --
14          THE COURT: But why won't you give the fee breakdown
15  to ConEd?
16          MS. VENETIS: Your Honor, because we gave them a chart
17  with the breakdown of attorney; we gave them a chart of the
18  hours spent. We thought that was sufficient.
19          THE COURT: But why would that be sufficient? They
20  want to see what you folks were working on, whether it was this
21  case or a larger case with multiple parties with the attorney
22  general's office.
23          MS. VENETIS: Your Honor, we were never a party to
24  that. Ms. Sellick was never a party to the attorney general
25  action; but it was our work on behalf of Ms. Sellick that

SHARRON SELLICK, v.
CONSOLIDATED EDISON COMPANY OF NEW YORK, INC.,                                June 6, 2016

| G66VSELC | Page 37 |
| --- | --- |

1 allowed the attorney general's office to then go forward.
2      THE COURT: So why not provide them with the
3 contemporaneous time records that show what your lawyers were
4 doing over those eight years?
5      MS. VENETIS: Your Honor, we provided them with the
6 chart --
7      THE COURT: You told me that. Say it again. Say it
8 three times. You provided them with a chart. Why not the
9 contemporaneous records that show what those hours consisted
10 of, what was being done?
11      MS. VENETIS: We can do that, your Honor.
12      THE COURT: Why didn't you do that?
13      MS. VENETIS: We stand behind our hours. We are
14 happy -- if the Court requires it, we are happy to turn that
15 over.
16      THE COURT: If I require it. I mean, look, this is an
17 intramural dispute that normally gets resolved without courts
18 getting involved at all. This is lawyers fighting over the
19 money with almost no concern about the client, it seems to me.
20      MS. VENETIS: Your Honor, that is untrue. We care
21 very much about the client and we have asked to be part of the
22 settlement negotiations and we're boxed out.
23      THE COURT: Ms. Almon just said -- maybe she's lying.
24 Tell me if she's lying, because there are serious consequences
25 to lying on the record in open court. Are you calling her a

| G66VSELC | Page 38 |
| --- | --- |

1 liar that she asked you for these contemporaneous time records
2 and you refused? Is that a lie?
3      MS. VENETIS: No, your Honor.
4      THE COURT: No.
5      MS. VENETIS: She did ask --
6      THE COURT: So that was an attempt -- don't talk over
7 me. So she invited you to be a part of these negotiations and
8 you just declined, is that it?
9      MS. VENETIS: Your Honor, she invited me to submit
10 this after a settlement had been reached between Ms. Sellick
11 and ConEd. It was not before the settlement was reached. I
12 was told about this afterwards. And then I spoke with
13 Ms. Almon. And she said, Can you give us this breakdown?
14 And I sent her the chart. And I said, We have
15 severely cut -- this was only in the past three weeks, your
16 Honor. We have cut our time, we have gone through our records,
17 and I'm giving you this chart. So it wasn't five years back,
18 it was in the past three weeks.
19      THE COURT: I assume it wasn't five years back. I
20 mean this is -- this case was only filed in 2015, in November.
21      MS. VENETIS: Right. But the EEOC action --
22      THE COURT: I don't give a damn about the EEOC action.
23 This is a case that came before me in November. Obviously it
24 didn't settle until after that; and so the settlement
25 discussions that you say you are entitled to be a part of are

| G66VSELC | Page 39 |
| --- | --- |

1 settlement discussions associated with this case, which was
2 filed in November. So I wouldn't have expected it to go five
3 years back, these negotiations.
4      So I guess I'll let you file your motions.
5      MS. VENETIS: Okay, your Honor.
6      THE COURT: So when do you want to do that? You said
7 two weeks.
8      MS. VENETIS: That's fine, your Honor.
9      MS. ALMON: Your Honor, I apologize, just two things.
10      One, I do want to correct the record, since statements
11 are being made about my actions, and Ms. Wang can corroborate
12 me on this.
13      We actually have been asking for the time records for
14 quite a while, even before we reached a definitive number with
15 Ms. Sellick; so certainly not do anything contrary to my
16 ethical obligations to this Court is simply an untruth, that we
17 have not been including Legal Momentum in the process. They
18 just are standing firm and saying, I want my full fees and
19 that's what I want. And I'm not going to get you the
20 foundation, even though it bears no reality to -- no connection
21 to what you normally see associated with a charge. It's
22 blocked settlement dialogue, but it has not been through any
23 effort on our part or Ms. Wang's part to, quote, block them out
24 in any way.
25      Second of all, I am totally lacking in clarity on what

| G66VSELC | Page 40 |
| --- | --- |

1 this motion --
2      THE COURT: Me too. Me too. I'm hoping I'll be
3 enlightened once I get the brief, because it's not at all clear
4 to me whether there is a charging lien motion, whether this is
5 a motion to enforce the retainer agreement that was originally
6 entered into with Ms. Sellick in an effort to enjoin her from
7 settling this case. I'm utterly confused.
8      MS. VENETIS: Your Honor, I can ask one question. How
9 do you want us to treat confidential records such as retainer
10 agreements and settlement documents that would demonstrate and
11 support certain of our points? Could we submit them for in
12 camera review?
13      THE COURT: So what is confidential here? What
14 overcomes the presumption of open records?
15      MS. VENETIS: We have our retainer agreement with
16 Ms. --
17      THE COURT: Why is that something that can't be
18 publicly docketed?
19      MS. VENETIS: Okay. That's fine.
20      THE COURT: Don't say okay. I'm asking you a
21 question. There's a presumption of open records. Anybody who
22 wants to file something under seal would have to overcome the
23 presumption. So what is the basis for overcoming the
24 presumption with respect to a retainer agreement?
25      MS. VENETIS: It's just our relationship with our

SHARRON SELLICK, v.
CONSOLIDATED EDISON COMPANY OF NEW YORK, INC.,                    June 6, 2016

| G66VSELC | Page 41 |
| --- | --- |

1  client.
2  THE COURT: Retainer agreements are not privileged and
3  they are not generally treated as confidential.  Is there
4  something about this that is specific to Ms. Sellick that's
5  giving away her confidential information?  It includes things
6  that would be embarrassing to her?  It seems to me it's just a
7  standard agreement that you enter into with your clients,
8  right?
9  MS. VENETIS: That is true, your Honor.  It's just
10  that there are other documents as well which are confidential,
11  settlement agreements during the EEOC proceedings where we
12  actually do reveal things like strategy and certain positions
13  relating to Ms. Sellick's claim.
14  THE COURT: Why will that be necessary for purposes of
15  this brief, for this motion?
16  MS. VENETIS: Just to demonstrate the years that we
17  represented Ms. Sellick and to show our active involvement in
18  the negotiations all through 2015; to show that we very much
19  continued to represent Ms. Sellick until the point that she
20  filed her claim here in federal court, your Honor.
21  MS. ALMON: Your Honor, if I may, just I will add that
22  prior negotiations in which Legal Momentum was involved were
23  subject to a written confidentiality agreement.
24  THE COURT: That's of no moment to me either.
25  MS. ALMON: I don't think they are necessary, but I

| G66VSELC | Page 42 |
| --- | --- |

1  would agree to the extent she thinks she needs to put in
2  something that's covered by the confidentiality agreement,
3  there's a contractual agreement not to discuss numbers or
4  things that were exchanged.
5  THE COURT: Right.
6  The existence of an agreement between parties to keep
7  things confidential doesn't by itself overcome the presumption
8  of open records.
9  So since I'm not really sure what this motion is going
10  to look like and I'm not sure what is necessary to attach to it
11  other than perhaps the retainer agreement and some records of
12  time and, I guess, contemporaneous time records and aggregate
13  charts, it's not clear to me whether anything needs to be
14  docketed under seal.
15  If you think there are things that need to be sealed,
16  then you can make a request to docket certain portions in
17  redacted form, citing the proper authority, which is, I guess,
18  Lugosch is the key Second Circuit case on this, United States
19  v. Amadeo as well, but that's more involving criminal cases.
20  And if there's a basis to keep some of it redacted, then that's
21  fine.  But it's not clear to me that I need chapter and verse
22  of every communication that existed prior to this lawsuit.  I'm
23  just trying to figure out why it is that there should be a
24  charging lien and what it is that you're seeking with respect
25  to the settlement.

| G66VSELC | Page 43 |
| --- | --- |

1  It's still not clear to me, Ms. Venetis, whether
2  you're seeking to enjoin this settlement or whether you're
3  simply seeking to get your piece of the pie that was negotiated
4  between ConEdison and Ms. Sellick with Ms. Wang.
5  MS. WANG: Your Honor, the settlement negotiated
6  between ConEd and Ms. Sellick, that allows for Legal Momentum
7  to seek its fees.  That is the key.  There is no effort to --
8  THE COURT: I understand.  But seek its fees from
9  whom?  From ConEdison?
10  MS. WANG: From ConEdison, yes.
11  THE COURT: Okay.  But it will be a claim that
12  doesn't -- it's completely unclear to me how the client can
13  resolve a case, including all fees, but carve out a spot for a
14  lawyer to make a claim for fees.
15  MS. WANG: It is what Legal Momentum asked her to do.
16  THE COURT: I get that.  But it's not clear to me how
17  it provides any basis for Legal Momentum to get fees from
18  ConEdison if the settlement basically says that there's no
19  fault, this is not -- this is a settlement that doesn't make
20  any findings with respect to who's at fault, right?
21  MS. WANG: For the reasons, your Honor, that Ms. Almon
22  and I have both tried to express, which is that they have the
23  opportunity to make the argument that somehow they did in the
24  EEOC proceeding benefited Ms. Sellick.
25  THE COURT: Well, they've made the argument.

| G66VSELC | Page 44 |
| --- | --- |

1  MS. WANG: No, they haven't, because we've been asking
2  for their fee records for a long time, including, as Ms. Almon
3  said, since April, before any settlement was --
4  THE COURT: But if the contract only allowed -- calls
5  for them to have an opportunity to make this argument, they've
6  made this argument today.
7  MS. WANG: But the argument is how much -- what are
8  their fees under Title VII and under their retainer.  The
9  argument is not for a lien.  It is simply not the case.  There
10  are many, many, including Court of Appeals cases, on this point
11  that they do not have a lien against Ms. Sellick for a
12  settlement in which she specifically carved out a mechanism for
13  them to seek their fees.
14  And I have to say, your Honor, we've --
15  THE COURT: I don't know what this motion is going to
16  be then.  She's saying it's a lien motion.
17  MS. VENETIS: Your Honor --
18  MS. WANG: Your Honor, if I can just finish.
19  This is Legal Momentum, a nonprofit institution that
20  endeavors to defend and promote women's rights in which they --
21  THE COURT: I get all this.  Why are you telling me
22  stuff I already know?
23  MS. WANG: They are now going to stop, essentially,
24  through this motion practice a settlement that their former
25  client wants.

**SHARRON SELLICK, v.**
**CONSOLIDATED EDISON COMPANY OF NEW YORK, INC.,**                                June 6, 2016

| G66VSELC | Page 45 |
|---|---|

1      THE COURT: I don't know that they are trying to stop
2  the settlement. I don't know what they are trying to do. It
3  seems to me they are trying to just assert a lien against
4  Ms. Sellick to get a piece of your fees, that's what it sounds
5  like.
6      MS. WANG: It certainly sounds like it. And then we
7  don't have a settlement. And so then we have to be back here
8  and get a new discovery schedule.
9      THE COURT: Wait, wait, wait. Wait a minute.
10  You're telling me that this settlement is contingent
11  on them not filing a lien?
12      MS. WANG: No, your Honor. I've said that the
13  settlement was accepted contingent on Legal Momentum having an
14  opportunity to seek its fees from this Court, through a ruling
15  from this Court and from ConEdison. That's what the
16  contingency is.
17      THE COURT: She's saying she wants to make a motion
18  under 475, an attorneys' lien, charging lien statute. That's
19  the motion she wants to make.
20      MS. WANG: Right.
21      THE COURT: And you're saying that if she wins -- I
22  don't know that she's going to win, but if she wins on that,
23  then the settlement blows up?
24      MS. WANG: That's correct, your Honor.
25      This is where it lies, the two arguments, essentially.

| G66VSELC | Page 46 |
|---|---|

1      THE COURT: No, no, no, no, no.
2      But you don't have any funds until this. There's no
3  charging lien to be had unless and until there is a settlement.
4      MS. WANG: Right. And there is no settlement as well.
5      THE COURT: There is no settlement. So then how can
6  you make a charging lien in advance of a settlement?
7      MS. ALMON: My understanding is the settlement we've
8  reached -- and I don't think we're saying different things --
9  is there's an agreement to reach settlement with a general
10  release from Ms. Sellick covering all the fees and costs that
11  would be associated with any Title VII claim she brought as
12  well, with the exception -- because this is what in the
13  retainer letter was sought by Legal Momentum, you have to say
14  they are not doing anything to waive our rights, whether or not
15  they have any rights.
16      THE COURT: She's asserting her right for a charging
17  lien, not her right against ConEdison as the defendant in the
18  case.
19      MS. ALMON: The retainer letter doesn't say anything
20  about a charging lien; perhaps you can just read that.
21      MS. VENETIS: Your Honor, if I may --
22      THE COURT: Wait, wait.
23      Let Ms. Venetis speak. Everybody else, sit.
24      MS. VENETIS: Ms. Wang misrepresents what the actual
25  retainer agreement says. There are ten provisions that deal

| G66VSELC | Page 47 |
|---|---|

1  with attorneys' fees, and the retainer couldn't be clearer that
2  Ms. Sellick assigns all her attorneys' fees to Legal Momentum
3  in return for free representation. It uses those words, and
4  then there are multiple other provisions that talk about that
5  as well.
6      Neither Ms. Sellick nor Ms. Wang have actually changed
7  the provisions of a signed contract without having Legal
8  Momentum at the table. They can't contract with ConEd for a
9  settlement agreement that somehow alters this contract that we
10  have with Ms. Sellick. It just doesn't make any sense.
11      THE COURT: Ms. Wang is suggesting -- and maybe I have
12  to look at the agreement -- that when you ended your
13  representation of her prior to the commencement of this suit,
14  you basically terminated that agreement other than with respect
15  to a couple of provisions. Is that what you said, Ms. Wang?
16      MS. WANG: Yes, your Honor.
17      MS. VENETIS: No, your Honor --
18      THE COURT: Wait. I'm asking her if that's what she
19  said. And she says yes, I think. Is that what you said?
20      MS. WANG: Yes, your Honor.
21      At the time of termination, they sent her a letter
22  invoking -- not mentioning any lien and invoking only and
23  reminding her of the paragraph that I've been quoting from.
24      MS. VENETIS: Your Honor, the paragraphs we invoke are
25  the paragraph that says she assigns all her fees to Legal

| G66VSELC | Page 48 |
|---|---|

1  Momentum. We don't talk about paragraph 4, we talk about
2  paragraph 7 and 8 in that letter. There was one letter of
3  termination, that was sent in November of 2015; and that
4  invokes those specific paragraphs; and those provisions were
5  never refuted by either Ms. Sellick or Ms. Wang, and that was
6  six months ago. Those were the terms of the termination
7  agreement.
8      This retainer agreement also makes very clear that if
9  settlement occurs in the future, Legal Momentum is entitled to
10  fees. I can bring you a copy of this retainer agreement if you
11  want to look at it on the bench, your Honor, but it is clear as
12  day.
13      THE COURT: I'm going to get briefing on this anyway,
14  so I might as well take a look at it. But I'm a little
15  confused as to whether you can have me resolve a charging lien,
16  a motion for a charging lien, basically -- it's a motion since
17  it's within the context of a larger action -- before there's
18  been a settlement.
19      MS. VENETIS: Your Honor, there is case law and we
20  cited one case because we were constrained by the distance -- I
21  mean the amount of time -- amount of space that we had to
22  contact -- to make contact with the Court. But, again, we are
23  very confident that we can show you through our briefing that
24  what we're asking for is timely and is appropriate before this
25  Court.

SHARRON SELLICK, v.
CONSOLIDATED EDISON COMPANY OF NEW YORK, INC.,                    June 6, 2016

| G66VSELC | Page 49 |
| --- | --- |

1    THE COURT: That's not my question really. My
2  question is normally a charging lien -- basically, the Court
3  will decide the charging lien issue once it has been
4  determined, right, that there are fees owing and what the fees
5  are. And so it's a dispute really between lawyers for the same
6  party as to how the fees are going to get whacked up.
7        But this is a situation where Ms. Wang has just told
8  me there is no settlement until basically you go away. I think
9  that's what you're telling me, Ms. Wang, in essence?
10       MS. WANG: Your Honor, in some way, that based on how
11  resolve the fees -- and I just want to clarify. The law says
12  that they can get a determination if there is a lien or not.
13  So my understanding is former counsel can come in and seek a
14  court directive as to whether or not they have a lien; and then
15  as to whether it is -- how much the lien would only happen
16  after the end of the proceedings.
17       THE COURT: If I determine they have a lien, then
18  you're saying that this settlement goes up in smoke, that's
19  what you're telling me?
20       MS. WANG: It doesn't necessarily go up in smoke if we
21  can get the fee details and ConEd can be convinced that some
22  portion of those fees should be paid and that Legal Momentum
23  accepts that amount.
24       Your Honor, if I may, in terms of practical next
25  steps, obviously my client really would like to settle this and

| G66VSELC | Page 50 |
| --- | --- |

1  move this forward as quickly as possible. I'm sure your Honor
2  will set a briefing schedule to that accord.
3        I have repeatedly, repeatedly asked both ConEd and
4  Legal Momentum if they would mediate this through some method.
5  I have not gotten an answer at different stages from Legal
6  Momentum, although ConEd had said they would.
7        We would also ask at the same time that we set a
8  briefing schedule that there be a mediation in which Legal
9  Momentum provides the fee details. Ms. Sellick has asked for
10  her former counsel to provide the fee details to her repeatedly
11  and has not received them. And it's her right to see what
12  they're effectively charging her, at what rates and for what
13  work. In any case, it would never not get resolved until that
14  happens.
15       MS. VENETIS: Your Honor, we don't want to mediate
16  solely with ConEdison because we also don't want to give up our
17  claim against Ms. Wang's firm and any sort of lien that we
18  might have in the whole thing.
19       THE COURT: I thought Ms. Wang was suggesting a
20  three-cornered mediation.
21       MS. VENETIS: No, she said between us and ConEd
22  exclusively, your Honor. She said that Cuti Wang would be out
23  of the mediation and it would just be between Legal Momentum
24  and ConEd. We object to that because we don't think it's
25  appropriate because we'd be giving up our right to attorneys'

| G66VSELC | Page 51 |
| --- | --- |

1  fees against Cuti Wang.
2        MS. WANG: I have said repeatedly that and Cuti Hecker
3  Wang would attend a mediation. I don't have any reason at this
4  point for Ms. Sellick to give up any amount that has been
5  offered to her, but of course we'll attend. We're the ones who
6  suggested it.
7        MS. VENETIS: And you would be party to it because all
8  your correspondence has been that we mediate solely with
9  ConEdison. And you also told the Court multiple times that you
10  carved out some sort of provision --
11       THE COURT: Are you talking to her or are you talking
12  to me, because you guys can do that on the corner.
13       MS. VENETIS: Your Honor, I apologize.
14       Ms. Wang represented to the Court multiple times that
15  they carved out some sort of provision in the settlement that
16  we should work with ConEd. And any sort of negotiations or any
17  discussions about mediation -- and I have all the emails --
18  have been solely between Legal Momentum and ConEdison and we
19  believe that would not be appropriate.
20       If Ms. Wang is willing to be part of a three-person
21  mediation, that's a different story; but that was never,
22  represented to us. And if it had been, we certainly would have
23  discussed it and determined whether or not that was the
24  appropriate cause of action and probably would have done it.
25  But they said they wanted us to negotiate solely with

| G66VSELC | Page 52 |
| --- | --- |

1  ConEdison; we don't think that's appropriate.
2        MS. ALMON: Your Honor, as I recall the proposal and
3  what ConEdison agreed to is Ms. Wang had -- when we were trying
4  to get these legal contemporaneous time records to try to see
5  if we could bridge this chasm of a gap between what we think
6  the cost to file a charge versus the numbers that are being
7  advanced to us.
8        Ms. Wang had suggested that we come to the Court.
9  We've already spent plenty of money and time on mediation which
10  was finally a futility when Legal Momentum was involved. When
11  we did it on our own, we did better. We'd still be willing to
12  sit down with the Court.
13       But I think this just fundamentally comes down to
14  we're getting a demand that makes no sense whatsoever to us or
15  to anybody who does this because it involves over 400 hours
16  1:05:57 charge. And I think if the Court were to order
17  production of the time records, which would be essential to
18  determine any fee application, we maybe can bridge this gap.
19       So I would ask your Honor if you're willing to
20  consider doing that. I think there's just a fundamental
21  disconnect about what can be recovered in the context of an
22  individual charge. I think there's some sort of derivative
23  cascading theory here that's leading to these huge numbers. It
24  might be helpful to have a judge point out that that's not
25  typically how these things are approached in an actual fee

SHARRON SELLICK, v.
CONSOLIDATED EDISON COMPANY OF NEW YORK, INC.,                    June 6, 2016

| G66VSELC | Page 53 |
| --- | --- |

1 application.
2       THE COURT: I assume that with whatever submission I
3 get from Ms. Venetis, that she'll also include the time records
4 because I want to see them.
5       So you have the contemporaneous time records, right?
6       MS. VENETIS: Absolutely, your Honor.
7       Just for the record, again, we spent eight years on
8 this case. We did not put any application in for -- we're not
9 requested fees for hours spent pre-charge. We spent a lot of
10 time on this matter.
11       THE COURT: Hours spent pre-charge --
12       MS. VENETIS: Pre-charge before the EEOC, your Honor,
13 which is what Ms. Almon is suggesting. A lot of work went into
14 this case, including in the past year in mediation, preparing
15 documents for mediation and participating in those mediation
16 sessions. We agree they were futile and we believe that ConEd
17 was using stall tactics.
18       MS. ALMON: On the record, that's not accurate.
19       But what we are just trying to get to is what time was
20 devoted to Ms. Sellick and Ms. Sellick's alone claims. It's as
21 simple as that.
22       THE COURT: All right.
23       Well, I want to see those records. It's still not
24 clear to me exactly what this motion is going to look like or
25 under what statute it's being made. Normally I have a

| G66VSELC | Page 54 |
| --- | --- |

1 premotion letter requirement which would flesh this out, which
2 would save everybody this kind of confusion. It sounds like
3 this is just going to be a charging lien motion, in which case
4 then maybe it will be quite simple, maybe not.
5       But you said two weeks, Ms. Venetis?
6       MS. VENETIS: That's fine, your Honor. We'd be ready
7 in two weeks.
8       THE COURT: Two weeks from today is June 20th.
9       I guess depending on what the motion is, if it's just
10 a charging lien, then it seems to me that the only person
11 responding is really going to be Ms. Wang.
12       MS. WANG: Ms. Sellick, your Honor, because the lien
13 was against Ms. Sellick.
14       THE COURT: You're going to be responding on behalf of
15 her, right?
16       MS. WANG: Yes, your Honor.
17       THE COURT: You're not throwing her to the wind at
18 this point, are you?
19       MS. WANG: Of course not, your Honor.
20       THE COURT: No. So that's what I mean. You're going
21 to be responding. It's not clear to me that ConEd is
22 responding at all if it's just a motion under 475.
23       MS. VENETIS: Your Honor, ConEd probably should
24 respond because it would be against the settlement agreement
25 itself. And under the law, it actually is -- we would have a

| G66VSELC | Page 55 |
| --- | --- |

1 lien both against ConEd and Ms. Wang's firm.
2       THE COURT: Well, again, none of this is clear to me
3 right now, and none of this was teed up the way it would
4 normally be teed up.
5       I'll take a look at what I get from you and then I'll
6 decide who I need to respond and when they need to respond by.
7 Okay?
8       So June 20th I guess I'll get something from
9 Ms. Venetis. And then depending on what it is, because right
10 now I'm utterly in the dark, it will either require responses
11 from one or both of either Ms. Wang or Ms. Almon. I'll set a
12 schedule for that. Okay?
13       MS. WANG: Thank you, your Honor.
14       MS. VENETIS: Thank you very much, your Honor.
15       THE COURT: Let me thank the court reporter for her
16 time.
17                       *   *   *
18
19
20
21
22
23
24
25

SHARRON SELLICK, v.
CONSOLIDATED EDISON COMPANY OF NEW YORK, INC.,

June 6, 2016

**$**

**$3.8 (2)**
14:12;24:9

**A**

**ability (2)**
23:14;33:20
**able (3)**
14:25;19:11;20:4
**Absolutely (3)**
16:13;20:11;53:6
**accept (1)**
33:7
**accepted (2)**
3:6;45:13
**accepts (1)**
49:23
**accord (1)**
50:2
**according (1)**
17:19
**accrual (1)**
4:11
**accurate (1)**
53:18
**achieve (2)**
11:23;12:1
**action (18)**
3:17;7:6;8:6,6;
18:17;19:21,24;21:3;
25:8,13;31:1;34:15;
35:13;36:25;38:21,22;
48:17;51:24
**actions (1)**
39:11
**active (2)**
21:5;41:17
**actual (3)**
25:13;46:24;52:25
**actually (18)**
2:16;11:23;14:10;
15:19;17:12;23:24;
26:5;28:17,20;31:16;
32:13,22;33:1;34:24;
39:13;41:12;47:6;
54:25
**add (2)**
31:20;41:21
**Additionally (1)**
32:4
**address (2)**
6:18;9:8
**adjudicate (1)**
26:22
**administrative (7)**
3:13,16;5:13,22;
8:13;25:22;33:16
**adopt (1)**
28:22
**advance (1)**

46:6
**advanced (1)**
52:7
**advancement (1)**
33:21
**afterwards (1)**
38:12
**Again (17)**
12:15;13:4;15:2;
18:18;21:3,6,23;26:21;
27:16;29:1;30:20;
32:10;35:4;37:7;48:22;
53:7;55:2
**against (17)**
9:20;13:12;16:11;
19:22;25:8;31:5;33:23;
34:15;25;44:11;45:3;
46:17;50:17;51:1;
54:13,24;55:1
**aggregate (1)**
42:12
**ago (1)**
48:6
**agree (8)**
5:21;10:3;20:11;
22:2,3;33:4;42:1;53:16
**agreed (2)**
34:11;52:3
**agreement (44)**
5:9,21;6:14;7:17;
8:20,21;10:12,13,23;
12:15,17,21,23;13:2;
15:22,24;17:25;18:1,3,
4,15;29:10;32:7,11;
34:20;35:1;40:5,15,24;
41:7,23;42:2,3,6,11;
46:9,25;47:9,12,14;
48:7,8,10;54:24
**agreements (5)**
13:24,25;40:10;41:2,
11
**ahead (2)**
2:17;25:9
**Alice (1)**
2:6
**allowed (3)**
3:8;37:1;44:4
**allowing (1)**
6:2
**allows (3)**
5:19;10:5;43:6
**ALMON (25)**
2:11,11,15;5:2,2;
21:16,19;23:17,19;
34:10,11,23;37:23;
38:13;39:9;41:21,25;
43:21;44:2;46:7,19;
52:2;53:13,18;55:11
**almost (1)**
37:19
**alone (2)**
24:16;53:20
**along (1)**

15:8
**alongside (2)**
3:10;31:13
**alters (1)**
47:9
**although (1)**
50:6
**always (5)**
3:18;11:21;14:21;
25:16;26:8
**Amadeo (1)**
42:19
**amenable (1)**
22:18
**among (1)**
22:2
**amount (13)**
6:21,21;12:12;14:11;
19:4;20:23;21:25;26:4,
7;48:21,21;49:23;51:4
**analysis (1)**
18:14
**apologize (2)**
39:9;51:13
**Appeals (1)**
44:10
**appear (2)**
23:23;25:11
**appearances (1)**
2:3
**applicable (1)**
30:2
**application (7)**
6:3;24:18;30:18;
35:15;52:18;53:1,8
**apply (1)**
28:17
**appreciate (1)**
32:13
**approach (1)**
9:7
**approached (2)**
31:17;52:25
**appropriate (6)**
6:7;48:24;50:25;
51:19,24;52:1
**April (3)**
4:2,14;44:3
**argument (10)**
7:13,16;8:10,13;
43:23,25;44:5,6,7,9
**arguments (2)**
8:15;45:25
**around (4)**
4:3;23:20;24:21;
25:17
**arrangement (2)**
14:5,6
**art (1)**
16:6
**aside (2)**
5:3;29:20
**assert (7)**

15:4;21:10;22:23;
29:23,23;32:14;45:3
**asserted (2)**
19:19;32:1
**asserting (1)**
46:16
**assigns (2)**
47:2,25
**associated (6)**
24:20;25:1,2;39:1,
21;46:11
**assume (4)**
10:17;11:4;38:19;
53:2
**attach (1)**
42:10
**attaches (3)**
11:3;13:12;28:23
**attempt (2)**
13:18;38:6
**attempted (1)**
13:23
**attend (2)**
51:3,5
**attorney (14)**
14:13;15:22,25;
17:18;21:1;24:6;25:20;
26:3;27:22;32:24;
36:17,21,24;37:1
**attorneys (6)**
13:8,12,13;28:23;
29:18;30:13
**attorneys' (39)**
5:23;6:7;8:19;10:14,
15,18;11:3,7,8,22,24;
12:4,12,18;13:1,8,16,
18;14:18;17:18,22;
18:2;19:2,6,20:4,5;
22:13,18;23:9,21;
32:20,25;33:2,2,17;
35:13;45:18;47:1,2;
50:25
**attributed (1)**
24:2
**authority (3)**
12:20;17:21;42:17
**awards (1)**
15:4
**aware (1)**
4:7
**away (2)**
41:5;49:8

**B**

**back (6)**
4:21;24:25;38:17,19;
39:3;45:7
**background (1)**
3:24
**baked (1)**
13:19
**ball (1)**

20:7,12
**based (4)**
4:3;18:14;20:23;
49:10
**basically (9)**
6:24;14:1;18:24;
32:23;43:18;47:14;
48:16;49:2,8
**basis (3)**
40:23;42:20;43:17
**bears (1)**
39:20
**became (1)**
4:19
**began (1)**
4:1
**beginning (2)**
8:22;31:16
**behalf (7)**
24:6,15;25:7,18;
35:3;36:25;54:14
**behind (2)**
25:14;37:13
**belief (1)**
25:17
**bench (1)**
48:11
**benefited (1)**
43:24
**best (1)**
24:14
**better (1)**
52:11
**big (1)**
4:6
**bit (1)**
3:23
**block (1)**
39:23
**blocked (2)**
19:8;39:22
**blows (1)**
45:23
**board (1)**
14:9
**body (3)**
5:23;8:13;33:16
**both (11)**
6:18;9:16;13:23;
20:9;23:22;31:19;
32:12;43:22;50:3;55:1,
11
**boxed (3)**
19:5,12;37:22
**breach (1)**
8:7
**breaches (2)**
18:3,4
**breakdown (4)**
36:12,14,17;38:13
**bridge (2)**
52:5,18
**brief (9)**

**Southern District Court Reporters**

11:2;15:3;18:18;
27:16,17;29:1;33:3;
40:3;41:15
**briefing (4)**
48:13,23;50:2,8
**bring (1)**
48:10
**bringing (1)**
14:23
**broke (1)**
10:21
**brought (6)**
6:8;16:11;19:14;
21:4;36:2;46:11
**budge (1)**
6:20

**C**

**call (1)**
30:9
**called (1)**
2:1
**calling (1)**
37:25
**calls (1)**
44:4
**came (2)**
25:5;38:23
**camera (2)**
22:7;40:12
**can (41)**
5:3,3,25;6:1;10:15;
12:9,24;14:4;15:19;
16:24;17:15,16;18:20;
21:7;27:17;28:21;
30:16;33:13,22,24,24;
34:6;37:11;38:13;
39:11;40:8;42:16;
43:12;44:18;46:5,20;
48:10,15,23;49:12,13,
21,21;51:1;52:18,21
**care (2)**
9:3;37:20
**careful (1)**
5:25
**carried (1)**
20:12
**carries (1)**
20:7
**carve (2)**
25:14;43:13
**carved (3)**
44:12;51:10,15
**carving (2)**
22:12;34:13
**cascading (1)**
52:23
**Case (89)**
2:1;6:9,10,23;9:4;
10:19;11:12,15,17;
12:18,19,25;13:4,5,7,8,
9,12,16;14:11,15,17,

19;16:7,8,20,23;17:9,
14,16,19,22;18:7,12,
19,21,22,22,23,25;
19:4;20:24;21:3,4,8,10,
24;23:23;24:3,10,17,
18;25:12;26:9,10,11,
23;27:2,5,9,20,25;28:5,
5;30:16;31:14,17,18;
32:6,24;34:6,17,25;
36:21,21;38:20,23;
39:1;40:7;42:18;43:13;
44:9;46:18;48:19,20;
50:13;53:8,14;54:3
**cases (14)**
9:21,21,24;15:15;
20:2,3,6,6;26:19,20;
28:20;31:4;42:19;
44:10
**cause (8)**
8:6,6;19:21,24;25:8;
31:1;34:15;51:24
**causes (1)**
35:13
**certain (5)**
21:24;25:13;40:11;
41:12;42:16
**certainly (8)**
9:24;22:17,18;33:25;
36:1;39:15;45:6;51:22
**chance (2)**
7:13,15
**changed (1)**
47:6
**chapter (1)**
42:21
**charge (17)**
5:11;7:11;24:2,20,
22;25:3,3;26:5,6,19;
27:15;35:11,20;39:21;
52:6,16,22
**charging (16)**
25:12;27:23;40:4;
42:24;45:18;46:3,6,16,
20;48:15,16;49:2,3;
50:12;54:3,10
**chart (7)**
12:5;36:16,17;37:6,
8;38:14,17
**charts (1)**
42:13
**chasm (1)**
52:5
**child (1)**
16:3
**choice (1)**
17:1
**chose (1)**
3:17
**cipher (1)**
16:2
**Circuit (3)**
28:21;32:12;42:18
**citation (1)**

16:24
**citations (1)**
18:20
**cite (1)**
28:24
**cited (5)**
9:25;13:5,10;28:5;
48:20
**citing (1)**
42:17
**civil (1)**
26:19
**claim (19)**
8:7,7;16:11,12;25:8,
21;31:5;32:14,24,25;
33:15,23;34:15;41:13,
20;43:11,14;46:11;
50:17
**claims (14)**
3:3,4:4,4;5:4;6:8;
12:12;23:6,15;33:21;
34:13,14;35:3,4;53:20
**clarify (2)**
31:14;49:11
**clarity (1)**
39:25
**clear (30)**
4:19;6:2,16;7:8;
8:21;9:22;10:12,24;
11:2;12:5;13:11;14:2;
15:16;20:25;21:2,2,8;
26:2;27:5;31:22;34:12;
40:3;42:13,21;43:1,16;
48:8,11;53:24;54:21;
55:2
**clearer (1)**
47:1
**clearly (6)**
5:10;6:13;9:16,25;
30:1;31:5
**client (16)**
9:19;12:11;15:23,25;
16:1;17:1,4;19:16;
31:5,5;37:19,21;41:1;
43:12;44:25;49:25
**clients (2)**
26:12;41:7
**client's (1)**
15:25
**closed (1)**
35:23
**collect (2)**
20:4;26:25
**collecting (2)**
12:6;17:18
**collusive (3)**
15:21,24;16:5
**commencement (1)**
47:13
**communication (1)**
42:22
**compensated (1)**
15:12

**complaint (1)**
3:3
**completely (3)**
9:20;12:19;43:12
**compromise (3)**
4:22;35:5,18
**concept (1)**
36:1
**concern (3)**
4:11;35:1;37:19
**concerning (1)**
18:2
**conclusion (2)**
3:18;9:23
**condition (2)**
3:6,6
**conditioned (1)**
6:2
**ConEd (34)**
3:21;4:25,25;5:18;
6:18;8:10;11:7;12:2,3,
16;14:5,6;15:1;22:16;
23:4;30:8,8;32:22;
33:7,15;36:15;38:11;
43:6;47:8;49:21;50:3,
6,21,24;51:16;53:16;
54:21,23;55:1
**ConEdison (41)**
2:12,13;3:9;4:5,19;
5:25;6:24;8:21,22;
13:24;14:8;15:11,17,
20;16:4,11,12,14;
23:14,23;25:9;26:3,13;
30:17;32:17;33:5;
34:14,25;35:17;36:4;
43:4,9,10,18;45:15;
46:17;50:16;51:9,18;
52:1,3
**ConEd's (1)**
29:15
**confident (3)**
15:3;27:18;48:23
**confidential (8)**
3:25;21:17;40:9,13;
41:3,5,10;42:7
**confidentiality (2)**
41:23;42:2
**confused (1)**
40:7;48:15
**confusion (1)**
54:2
**connection (1)**
39:20
**consequences (1)**
37:24
**consider (2)**
32:12;52:20
**considered (3)**
16:22;18:16;27:13
**consisted (1)**
37:9
**constrained (1)**
48:20

**consulted (1)**
20:14
**consummated (1)**
22:12
**contact (2)**
48:22,22
**contacted (1)**
20:15
**contemporaneous (9)**
24:13,24;35:14;37:3,
9;38:1;42:12;52:4;53:5
**context (3)**
4:4;48:17;52:21
**contingency (1)**
9:22;45:16
**contingent (2)**
45:10,13
**continue (2)**
10:16,18
**continued (1)**
41:19
**contract (17)**
7:19,20;8:3,4,5,7,8,
25;18:9;23:16,22;
30:12,12;44:4;47:7,8,9
**contractual (2)**
17:24;42:3
**contractually (1)**
9:8
**contrary (1)**
39:15
**conversation (4)**
4:18;24:5;2:6;1
**conversations (5)**
4:1,2,5;15:18;17:2
**convinced (1)**
49:21
**copy (2)**
10:11;48:10
**corner (1)**
51:12
**correctly (1)**
30:11
**correspondence (2)**
21:1;51:8
**corroborate (1)**
39:11
**cost (2)**
33:1;52:6
**costly (1)**
25:14
**costs (3)**
5:23;33:17;46:10
**counsel (26)**
2:13;11:14;16;16:16,
18,18,19,21,22;18:15,
16;24:19;27:8,11,14,
14,24,24;28:2,8,10,16,
18;34:17;49:13;50:10
**couple (2)**
24:8;47:15
**course (6)**
4:6,25;19:20;24:19;

SHARRON SELLICK, v.
CONSOLIDATED EDISON COMPANY OF NEW YORK, INC.,

June 6, 2016

51:5;54:19
COURT (179)
    2:2,8,15,21,23;3:12,
    22;4:9;5:22;6:4,15,23;
    7:3,6,13,15,19,23;8:1,
    5,18,24;9:12,15;10:1,7,
    17;11:1,4,12,14,25;
    12:9,11,16,24;13:5,11,
    14,22;14:4,15,18;15:7,
    16,23;16:1,8,11,14,19,
    23;17:1,5,7,8,14,15,19,
    20,21;18:3,7,13,22;
    19:15,21,24;20:2,5;
    21:6,12,23;22:10,24;
    23:8,13,17;26:1,10,24;
    27:3,6,8,11,17,19,20;
    28:3,7,10,14,17,18,21;
    29:2,5;30:22,24;31:21,
    24;32:1,16;33:4,10,16,
    20,22;34:2,8,21;36:14,
    19;37:2,7,12,14,16,23,
    25;38:4,6,19,22;39:6,
    16;40:2,13,17,20;41:2,
    14,20,24;42:5;43:8,11,
    16,25;44:4,10,15,21;
    45:1,9,14,15,17,21;
    46:1,5,16,22;47:11,18;
    48:13,22,25;49:1,2,14,
    17;50:19;51:9,11,14;
    52:8,12,16;53:2,11,22;
    54:8,14,17,20;55:2,15,
    15
courts (1)
    37:17
covered (1)
    42:2
covering (1)
    46:10
covers (1)
    27:22
criminal (1)
    42:19
cut (7)
    11:22;12:1;15:13,14,
    22;38:15,16
Cuti (4)
    10:17;50:22;51:1,2

**D**

damn (1)
    38:22
danger (1)
    15:5
dark (1)
    55:10
day (1)
    48:12
days (1)
    27:17
deal (5)
    10:14;29:16;33:6,7;
    46:25

December (1)
    31:16
decide (11)
    5:23;6:6;16:3;19:17,
    18;27:7;33:16,24;34:3;
    49:3;55:6
decided (3)
    10:22,22;12:17
decides (2)
    12:11;13:15
decision (1)
    12:24
declined (1)
    38:8
defend (1)
    44:20
defendant (3)
    2:10;32:25;46:17
defendants (2)
    5:22;33:15
defined (2)
    28:10,12
defines (2)
    28:8,18
definitive (1)
    39:14
definitively (1)
    20:1
degree (2)
    7:22;25:13
demand (1)
    52:14
demonstrate (2)
    40:10;41:16
depend (1)
    10:15
depending (2)
    54:9;55:9
derivative (1)
    52:22
describe (1)
    36:3
desire (1)
    12:24
detail (2)
    29:18,20
detailed (1)
    5:18
details (3)
    49:21;50:9,10
determination (2)
    18:14;49:12
determinative (1)
    31:8
determine (3)
    33:22;49:17;52:18
determined (5)
    17:13;30:5;33:24;
    49:4;51:23
determining (2)
    28:22;31:6
developed (1)
    31:19

devoted (4)
    22:13;26:14;35:10;
    53:20
dialogue (4)
    24:21;25:16;35:8;
    39:22
different (4)
    5:1;46:8;50:5;51:21
difficult (1)
    29:15
directive (1)
    49:14
directly (2)
    13:3;33:13
disagree (1)
    9:6
discharge (3)
    29:22;30:3,15
discharged (1)
    29:7
disconnect (1)
    52:21
discovery (1)
    45:8
discrimination (5)
    9:5;10:16,25;14:24;
    36:2
discuss (3)
    26:22;32:11;42:3
discussed (3)
    19:7;21:21;51:23
discussion (2)
    18:2;22:5
discussions (7)
    15:13;16:15;17:10,
    12;38:25;39:1;51:17
dispute (11)
    2:25;7:19,20;15:9;
    22:1;32:19;35:18;36:1,
    4;37:17;49:5
disputed (1)
    32:8
disputes (1)
    4:8
disputing (1)
    20:9
distance (1)
    48:20
divided (1)
    22:2
docket (3)
    2:16,17;42:16
docketed (2)
    40:18;42:14
documents (4)
    22:7;40:10;41:10;
    53:15
dollars (3)
    12:18;13:16;21:2
done (7)
    3:20;19:4;29:9;
    30:21;33:20;37:10;
    51:24

down (3)
    10:21;52:12,13
driving (1)
    4:6
duration (1)
    11:11
during (2)
    19:20;41:11
duty (1)
    14:10

**E**

earlier (1)
    28:6
earnest (1)
    4:1
easy (1)
    35:11
EEOC (27)
    3:11;6:10;7:12;
    11:13,17;13:6;14:24;
    16:23;18:15;20:2,3;
    24:2,6,20;25:2;26:5,
    11;27:14;28:4;29:11;
    31:19;35:20;38:21,22;
    41:11;43:24;53:12
effectively (1)
    50:12
effectuate (1)
    22:17
effort (6)
    6:17;9:17;22:6;
    39:23;40:6;43:7
eight (4)
    10:10;36:11;37:4;
    53:7
eight-page (3)
    7:10;25:3;30:13
either (2)
    13:17;41:24;48:5;
    55:10,11
eliminated (1)
    26:17
else (1)
    46:23
emails (1)
    51:17
embarrassing (1)
    41:6
emphasize (1)
    35:7
employment (1)
    9:5
end (2)
    12:13;49:16
endeavors (1)
    44:20
ended (6)
    3:14,15,16;14:1;
    29:8;47:12
ends (1)
    9:23

enforce (2)
    18:9;40:5
engage (1)
    13:23;22:4,6
engaged (1)
    16:4
enjoin (3)
    21:7;40:6;43:2
enlightened (1)
    40:3
enough (1)
    35:7
ensure (2)
    5:7;6:18
ensured (1)
    30:19
enter (3)
    12:20;34:16;41:7
entered (2)
    15:21;40:6
entire (1)
    11:11
entitled (11)
    12:8;13:13;15:22;
    19:3;21:11;23:22;
    25:18;32:6;34:3;38:25;
    48:9
entitlement (2)
    22:23;34:4
entitles (1)
    34:18
essence (1)
    49:9
essential (1)
    52:17
essentially (5)
    6:3;33:8,18;44:23;
    45:25
ethical (1)
    39:16
evaluating (1)
    4:4
even (16)
    6:19,21;9:24;16:15;
    17:2,7,19;18:8;21:14;
    23:14;26:16;27:5;
    33:21;34:3;39:14,20
event (2)
    6:22;30:10
Everybody (2)
    46:23;54:2
exactly (5)
    9:7;10:2;30:18;
    35:17;53:24
example (1)
    18:5
exceeded (1)
    36:6
except (1)
    9:9
exception (2)
    9:7;46:12
exchange (1)

SHARRON SELLICK, v.
CONSOLIDATED EDISON COMPANY OF NEW YORK, INC.,

June 6, 2016

23:6
**exchanged (1)**
42:4
**exclusion (1)**
35:2
**exclusively (1)**
50:22
**Excuse (2)**
21:16;26:11
**exercise (1)**
9:17
**existed (1)**
42:22
**existence (1)**
42:6
**expected (1)**
39:2
**explicit (1)**
33:7
**exposing (2)**
9:19;33:1
**express (1)**
43:22
**extent (1)**
42:1
**eye (2)**
14:24;36:3

**F**

**fact (3)**
8:22;15:15;25:22
**factor (1)**
31:8
**facts (4)**
13:6;18:13;23:2,4
**familiar (1)**
4:9
**fault (2)**
43:19,20
**favorable (4)**
6:5;34:4,7,10
**federal (8)**
17:20;18:13;28:11,
12,18,20,21;41:20
**fee (13)**
6:3;24:18;29:18,20;
30:18;35:15;36:14;
44:2;49:21;50:9,10;
52:18,25
**feel (1)**
27:18
**fees (121)**
3:8;4:5,12,15,16,18,
19,20;5:1,5,20,24;6:4,
7,10,19,25;7:14;8:11,
12,19;9:2,15,17;10:14,
15,18;11:3,7,8,22,24;
12:4,12,18;13:1,8,13,
16,19;14:18;15:22;
17:18,22;18:2;19:2,6,
19;20:4,13,16,22;21:3,
11,12,25;22:1,13,18,

22,23;23:7,8,9,10,11,
14,21;24:8,20,25;25:8,
18;26:3,18,23;29:16;
30:7,7;32:6,11,14,20,
24,25;33:2,8,10,17;
34:3,4,13,18;35:14,24;
36:6,11,12,13;39:18;
43:7,8,13,14,17;44:8,
13;45:4,14;46:10;47:1,
2,25;48:10;49:4,4,6,11,
22;51:1;53:9
**felt (1)**
3:19
**few (1)**
26:6
**fiduciary (1)**
14:10
**fighting (1)**
37:18
**figure (3)**
32:17;33:5;42:23
**file (5)**
30:18;35:19;39:4;
40:22;52:6
**filed (8)**
11:12,17;24:19;
25:12;26:6;38:20;39:2;
41:20
**filing (3)**
24:2;27:2;45:11
**find (1)**
25:3
**findings (1)**
43:20
**fine (5)**
6:15;39:8;40:19;
42:21;54:6
**finish (1)**
44:18
**finishes (1)**
20:9
**fire (3)**
17:2,6,7
**fired (1)**
17:12
**firm (13)**
2:6;3:17;4:12;19:14;
20:19;22:20;23:7,8,10;
31:7;39:18;50:17;55:1
**firms (1)**
13:6
**firm's (2)**
4:15;23:6
**first (5)**
4:2;23:4;26:2;29:7;
31:16
**fits (2)**
32:18;33:5
**five (3)**
38:17,19;39:2
**flesh (1)**
54:1
**flexibility (2)**

4:23,23
**folks (1)**
36:20
**following (1)**
33:14
**footnote (1)**
29:16
**foremost (1)**
4:3
**forget (2)**
29:13;30:15
**form (1)**
42:17
**formal (1)**
31:17
**former (4)**
29:17;44:24;49:13;
50:10
**forth (2)**
5:17;33:20
**forum (1)**
18:11
**forward (2)**
37:1;50:1
**foundation (1)**
39:20
**frank (1)**
8:14
**frankly (4)**
25:10;35:19;36:6;
52:10
**free (3)**
5:11;7:11;47:3
**front (3)**
7:12;8:12;18:7
**full (1)**
39:18
**fully (2)**
15:3;32:13
**fundamental (3)**
23:20;25:6;52:20
**fundamentally (1)**
52:13
**funds (1)**
46:2
**further (2)**
9:19;11:2
**futile (1)**
53:16
**futility (1)**
52:10
**future (1)**
48:9

**G**

**gap (2)**
52:5,18
**gave (2)**
36:16,17
**general (4)**
26:4;35:2;36:24;
46:9

**generally (1)**
41:3
**general's (6)**
14:13;21:1;24:6;
25:20;36:22;37:1
**gets (6)**
5:7;8:17;14:2;20:10;
31:7;37:17
**given (1)**
26:13
**giving (4)**
23:11;38:17;41:5;
50:25
**goes (2)**
8:19;49:18
**Golden (1)**
13:8
**Good (3)**
2:9,18;10:9
**govern (1)**
30:14
**governed (1)**
30:4
**governs (1)**
6:14
**grasp (1)**
25:4
**great (1)**
11:4
**group (2)**
24:5,7
**guess (8)**
2:25;8:18;9:3;39:4;
42:12,17;54:9;55:8
**guys (1)**
51:12

**H**

**handed (2)**
21:4;31:15
**happen (2)**
18:12;49:15
**happened (1)**
24:10
**happens (1)**
50:14
**happy (16)**
11:1;12:15;14:7;
15:3,13;18:18;22:4,6,7,
8;26:21,21;27:16;29:1;
37:14,14
**hard (2)**
14:23;25:4
**head (1)**
9:12
**hear (3)**
10:7;18:21,22
**heard (1)**
25:20
**Hecker (2)**
10:17;51:2
**help (1)**

35:16
**helpful (1)**
52:24
**herself (2)**
7:4;30:14
**hold (1)**
35:25
**holdup (2)**
36:5,8
**Honor (114)**
2:4;18:3;24:4;7,8;
6:11,16;7:1,7,18,22;
8:9,14,20;9:6;10:9,20;
11:19;12:14,22;13:3,
20,23;14:7,16;15:2,11;
16:6,10;17:12,17,24;
18:12,18;19:1;20:3;
21:9;22:5,7,15;23:1,16,
19;25:25;26:11;27:1,6,
16;28:2,12,24;29:1,3,6,
17;30:11;31:10,20;
32:3,4,10,12,22;33:2,6,
24;34:11;36:10,16,23;
37:5,11,20;38:3,9,16;
39:5,8,9;40:8;41:9,20,
21;43:5,21;44:14,17,
18;45:12,24;46:21;
47:16,17,20,24;48:11,
19;49:10,24;50:1,15,
22;51:13;52:2,19;53:6,
12;54:6,12,16,19,23;
55:13,14
**hope (3)**
3:20;8:16;33:25
**hoping (1)**
40:2
**horrible (2)**
14:23;36:2
**hotly-contested (1)**
36:7
**hours (18)**
11:23;12:6;20:24;
24:1,4;25:1,2;26:14,
18;35:21;36:12,13,18;
37:9,13;52:15;53:9,11
**huge (1)**
52:23
**hundred (1)**
24:7
**hundreds (2)**
20:24;21:2
**hurt (1)**
35:25

**I**

**imbecile (1)**
16:2
**immediately (1)**
4:15
**important (1)**
31:11
**importantly (1)**

SHARRON SELLICK, v.
CONSOLIDATED EDISON COMPANY OF NEW YORK, INC.,

June 6, 2016

5:17
**include (7)**
13:2;15:18;16:15;
17:1,9;24:3;53:3
**included (1)**
19:11
**includes (2)**
11:7;41:5
**including (10)**
9:9;12:12,18;13:16;
17:22;39:17;43:13;
44:2,10;53:14
**incorrect (1)**
23:3
**incredibly (2)**
14:23,23
**indeed (3)**
11:22;18:20;20:24
**indicated (3)**
3:15;4:23,24
**indicating (1)**
2:25
**individual (2)**
24:3;52:22
**individuals (1)**
14:14
**information (2)**
26:13;41:5
**informed (1)**
4:18
**in-house (1)**
2:13
**institution (1)**
44:19
**intense (1)**
4:7
**intensively (1)**
4:13
**interrupt (1)**
12:9
**into (11)**
3:24;12:20;13:19;
15:21;16:4;19:14;22:6;
26:7;40:6;41:7;53:13
**intramural (1)**
37:17
**invited (4)**
13:25;30:8;38:7,9
**invoke (2)**
30:3;47:24
**invoked (1)**
30:4
**invokes (1)**
48:4
**invoking (2)**
47:22,22
**involved (12)**
10:20;11:8;13:6;
16:22;17:11;20:2,3;
28:7;31:18;37:18;
41:22;52:10
**involvement (1)**
41:17

**involves (2)**
32:25;52:15
**involving (2)**
24:5;42:19
**issue (9)**
3:8;4:20;10:3;16:24;
27:18,21,21,22;49:3
**issues (1)**
26:14

### J

**JAMS (1)**
11:18
**job (1)**
20:9
**joined (1)**
2:13
**judge (1)**
52:24
**Judiciary (1)**
9:11
**June (3)**
32:9;54:8;55:8
**jurisdiction (4)**
18:19,20;27:7,19
**jurisdictional (1)**
27:21
**jury (1)**
24:18

### K

**keep (3)**
33:3;42:6,20
**keeps (1)**
24:11
**key (2)**
42:18;43:7
**kick (1)**
22:16
**kind (4)**
24:21;25:7;35:18;
54:2

### L

**lacking (1)**
39:25
**language (1)**
8:3
**large (1)**
6:21
**larger (4)**
25:19;26:16;36:21;
48:17
**last (1)**
6:17
**late (1)**
30:25
**law (30)**
6:13;9:11;11:2;
15:20;16:7,17,19;23:3;

25:6;27:5,13;28:2,5,11,
11,13,18;29:22,23,25;
30:1;31:22;32:12,13,
23;33:2;34:6;48:19;
49:11;54:25
**lawsuit (3)**
9:19;24:9;42:22
**lawyer (7)**
6:5;11:8;20:1,3,7,8;
43:14
**lawyers (6)**
3:1;22:2;34:22;37:3,
18;49:5
**lead (1)**
34:9
**leading (1)**
52:23
**leaving (1)**
6:9
**Legal (100)**
2:19;3:7,9,15,19;
4:17,20;5:1,3,7,9,11,
12,14,19;6:2,18,20,25;
7:1,2,5,8,20,23;8:11,
16,16;9:1,1,9,19,24;
10:5,5,7,10;11:21;
13:2;14:1,22;19:11;
20:20;22:22;23:12,21,
24;25:6,8,18;26:2,4,8,
22;29:7,14,18,20,21,
24;30:5,12,17;31:2,8,
13,14,16;32:13;33:7,
13,19,25;34:14,24;
35:3,4,8,16;36:5;
39:17;41:22;43:6,15,
17;44:19;45:13;46:13;
47:2,7,25;48:9;49:22;
50:4,5,8,23;51:18;52:4,
10
**legally (2)**
16:21;23:23
**legwork (1)**
26:5
**letter (10)**
2:25;9:14;29:8;32:4;
46:13,19;47:21;48:2,2;
54:1
**liability (1)**
33:1
**liar (1)**
38:1
**lie (1)**
38:2
**lien (56)**
9:10,17,20,24,25;
10:1;11:3;13:11;15:4;
19:25;21:11;24:14;
25:12;27:2,23;28:17,
22;29:22,23,24,25;
30:1,20,24;31:3,4,23;
32:1;33:24;40:4;42:24;
34:9,11,16;45:3,11,18,
18;46:3,6,17,20;47:22;

48:15,16;49:2,3,12,14,
15,17;50:17;54:3,10,
12;55:1
**liens (2)**
20:5;35:13
**lies (1)**
45:25
**light (1)**
36:2
**limit (1)**
10:1
**line (2)**
20:8,12
**litigate (4)**
3:8;5:8;33:8,10
**litigated (1)**
12:7
**litigating (1)**
4:13
**litigation (6)**
4:7;8:8;11:11;17:20;
25:14;36:7
**little (1)**
3:23;48:14
**live (1)**
35:6
**long (5)**
5:6;34:16;35:20,22;
44:2
**look (11)**
13:4;18:12;28:22;
32:10;37:16;42:10;
47:12;48:11,14;53:24;
55:5
**looked (1)**
9:21
**Lori (1)**
2:11
**loss (1)**
15:4
**lot (7)**
22:5;24:17;35:21,21,
23;53:9,13
**loved (1)**
19:10
**Lugosch (1)**
42:18
**lump-sum (1)**
23:5
**lying (3)**
37:23,24,25

### M

**makes (6)**
10:12;13:11;27:5;
36:7;48:8;52:14
**making (6)**
8:13,14;21:19;26:24;
27:1;32:24
**many (8)**
13:6;19:20;24:3,4,4;
30:2;44:10,10

**map (1)**
35:12
**Mariann (1)**
2:4
**matter (10)**
15:15;22:12;23:16,
22;25:19;26:4,16;
30:11;35:22;53:10
**may (8)**
25:25;28:16;29:3;
31:20;34:14;41:21;
46:21;49:24
**Maybe (9)**
7:3;11:5,5;35:16;
37:23;47:11;52:18;
54:4,4
**mean (4)**
37:16;38:20;48:21;
54:20
**mechanism (4)**
5:7;6:9;33:18;44:12
**mediate (3)**
50:4,15;51:8
**mediation (11)**
14:1;50:8,20,23;
51:3,17,21;52:9;53:14,
15,15
**mediator (1)**
20:25
**memo (1)**
20:24
**mentioning (2)**
3:24;47:22
**meritless (1)**
9:21
**meruit (1)**
30:3
**messenger (1)**
4:25
**method (1)**
50:4
**mid (2)**
4:2,14
**middle (1)**
6:20
**might (4)**
28:4;48:14;50:18;
52:24
**million (2)**
14:12;24:9
**minute (1)**
45:9
**misrepresentation (1)**
11:20
**misrepresents (1)**
46:24
**misunderstanding (2)**
23:21;25:6
**model (1)**
24:21
**moment (4)**
28:25;29:22;30:15;
41:24

**Momentum (88)**
2:19;3:7,9,15,19;
4:17;5:3,7,10,11,12,14,
19;6:3,20,25;7:2,2,5,8,
20,23;8:11,17;9:1,1,9,
19,25;10:5,5,7,10;
11:21;13:2;14:2;19:12;
20:20;23:12,21,24;
26:2,4,8;29:7,14,18,20,
21,24;30:6,12,17;31:2,
8,13,14,16;33:8,13,19;
34:1,14,25;35:3,4,9,17;
36:6;39:17;41:22;43:6,
15,17;44:19;45:13;
46:13;47:2,8;48:1,9;
49:22;50:4,6,9,23;
51:18;52:10
**Momentum's (7)**
4:20;5:1;6:19;14:22;
25:7,18;26:23
**money (3)**
21:25;22:16;31:6;
37:19;52:9
**months (1)**
48:6
**more (2)**
26:21;42:19
**moreover (1)**
9:24
**morning (3)**
2:9,18;10:9
**most (2)**
4:1;5:17
**motion (19)**
26:24;27:2;31:1;
40:1,4,5;41:15;42:9;
44:15,16,24;45:17,19;
48:16,16;53:24;54:3,9,
22
**motions (1)**
39:4
**move (1)**
50:1
**much (12)**
5:23;19:2;25:24;
31:6,7;33:3,16;37:21;
41:18;44:7;49:15;
55:14
**multiple (9)**
18:1,5;32:11;35:9,9;
36:21;47:4;51:9,14
**must (3)**
5:23;30:17;33:16
**mutual (1)**
34:20
**mutually (1)**
10:23
**mystery (1)**
35:12

**N**

**near (1)**

**8:23**
**neater (1)**
25:24
**necessarily (2)**
8:16;49:20
**necessary (3)**
41:14,25;42:10
**need (5)**
5:15;42:15,21;55:6,6
**needs (2)**
42:1,13
**negotiate (8)**
6:9;11:21;14:5,8,8,
25;19:11;51:25
**negotiated (9)**
7:9;8:25;14:6,13;
21:12;22:21;34:2;43:3,
5
**negotiation (1)**
13:24
**negotiations (12)**
10:21;11:18;15:14;
19:6,7;20:13;37:22;
38:7;39:3;41:18,22;
51:16
**Neither (2)**
32:7;47:6
**new (6)**
5:15;9:10,21;23:13;
24:6;45:8
**next (1)**
49:24
**Nobody (2)**
6:4;22:11
**none (2)**
55:2,3
**nonprofit (2)**
10:15;44:19
**nor (2)**
32:7;47:6
**normally (7)**
6:5;26:19;37:17;
39:21;49:2;53:25;55:4
**note (1)**
31:10
**Notwithstanding (1)**
3:18
**November (6)**
10:11;32:8;38:20,23;
39:2;48:3
**number (12)**
3:11;4:8;12:18;
13:16;22:19;23:2,5,25;
24:1;25:2;29:15;39:14
**numbers (3)**
42:3;52:6,23

**O**

**object (1)**
50:24
**objecting (1)**
22:11

**obligation (5)**
15:17;16:15;17:9,25;
29:21
**obligations (2)**
7:17;39:16
**obliged (1)**
14:9
**obstacle (1)**
25:24
**obviously (5)**
4:12;12:7;22:16;
38:23;49:25
**occurs (1)**
48:9
**off (1)**
6:20
**offer (2)**
21:4;23:4
**offered (5)**
20:19,22,22;23:5;
51:5
**office (6)**
14:13;21:1;24:6;
25:20;36:22;37:1
**once (2)**
40:3;49:3
**one (16)**
6:5;9:7;15:15;16:3;
20:6,7;25:10;30:2;
31:10,20;32:4;39:10;
40:8;48:2,20;55:11
**ones (1)**
51:5
**only (19)**
3:17;5:13;7:12;12:6;
17:16;20:15;23:11;
24:25;26:8,13;29:10;
33:7;36:5;38:15,20;
44:4;47:22;49:15;
54:10
**open (4)**
37:25;40:14,21;42:8
**opportunity (8)**
3:8;5:7;30:17,19;
35:9;43:23;44:5;45:14
**order (1)**
52:16
**originally (1)**
40:5
**otherwise (1)**
15:9
**out (25)**
8:18;14:18;15:13,14,
22;19:5,8,12;22:1;
25:5,15;26:15;32:17;
33:5;34:13;37:22;
39:23;42:23;43:13;
44:12;50:22;51:10,15;
52:24;54:1
**outside (1)**
3:22
**Outten (1)**
13:7

**over (11)**
3:16;20:9;22:1;
27:19;32:19;35:12;
37:4,15,18;38:6;52:15
**overcome (2)**
40:22;42:7
**overcomes (1)**
40:14
**overcoming (1)**
40:23
**owing (1)**
49:4
**own (5)**
3:14;4:12,15;14:5;
52:11

**P**

**pages (1)**
26:6
**paid (8)**
3:19;4:3;5:8;8:17,
18;29:25;34:1;49:22
**painstakingly (1)**
26:15
**papers (1)**
28:25
**paragraph (6)**
30:15,16;47:23,25;
48:1,2
**paragraphs (6)**
10:14;29:9,10,13;
47:24;48:4
**part (17)**
4:6;6:7;8:8,14;
13:24;14:22;15:14;
18:1;19:7;20:12;21:13;
37:21;38:7,25;39:23,
23;51:20
**participating (1)**
53:15
**particular (2)**
27:7,18
**particularly (2)**
4:20;6:13
**parties (7)**
2:24;3:2;6:6,14;
34:9;36:21;42:6
**party (14)**
7:6;12:16,17;17:20;
18:8;25:11,12;34:19,
21,22;36:23,24;49:6;
51:7
**past (3)**
38:15,18;53:14
**path (2)**
35:16;36:5
**paths (1)**
29:24
**pay (6)**
3:21,22;5:23;11:8;
31:7;33:17
**paying (2)**

**over (11)**
4:12;8:22
**payment (1)**
33:12
**Penny (1)**
2:19
**percentage (4)**
8:19;13:18;21:25;
22:1
**performance (1)**
8:7
**performed (1)**
30:22
**perhaps (3)**
35:23;42:11;46:20
**permit (2)**
5:22;33:15
**permitted (1)**
33:8
**person (1)**
54:10
**perspective (3)**
10:3;22:16;29:15
**Phyllis (1)**
2:13
**pie (1)**
43:3
**piece (3)**
25:15;43:3;45:4
**place (2)**
5:16;28:3
**places (1)**
18:1
**plaintiff (7)**
2:3,4;12:17;16:9;
18:24;19:1;34:10
**plaintiffs (2)**
3:6;14:20
**play (1)**
21:3
**plenty (1)**
52:9
**point (14)**
10:6;13:4,14;16:24;
21:6,14;31:2;32:1,8;
41:19;44:10;51:4;
52:24;54:18
**points (1)**
40:11
**portion (3)**
22:12;32:20;49:22
**portions (2)**
12:6;42:16
**positioned (1)**
15:4
**positions (1)**
41:12
**possibility (1)**
21:21
**possible (1)**
50:1
**possibly (1)**
8:12
**post (1)**

24:18

pot (1)
31:6

potentially (2)
8:11;31:6

practical (1)
49:24

practice (1)
44:24

pre-charge (3)
53:9,11,12

precisely (1)
3:9

premotion (1)
54:1

prepared (1)
31:14

preparing (1)
53:14

prerequisite (1)
25:22

presumption (5)
40:14,21,23,24;42:7

pretty (1)
31:22

prevailing (4)
25:10;34:19,21,22

primarily (1)
2:25

prior (4)
33:21;41:22;42:22;
47:13

privileged (1)
41:2

probably (5)
8:10;24:24;31:11;
51:24;54:23

problem (1)
8:24

procedure (1)
28:19

proceeded (1)
30:5

proceeding (13)
3:11,13,15,16;5:13;
9:23;18:10;24:4;28:4;
29:11;31:19;35:24;
43:24

proceedings (10)
5:14;11:13;13:7;
16:23;18:16;19:25;
32:3;33:21;41:11;
49:16

process (1)
39:17

production (1)
52:17

promote (1)
44:20

proper (1)
42:17

proportionately (1)
20:23

proposal (1)
52:2

provide (3)
27:17;37:2;50:10

provided (7)
4:15;7:9,10;30:13,
14;37:5,8

provides (2)
43:17;50:9

providing (2)
3:7;5:11

provision (14)
5:18,19,20,21;9:15,
25;10:4;11:3,24;14:9;
27:6;33:14;51:10,15

provisions (6)
32:11;46:25;47:4,7,
15;48:4

publicly (1)
40:18

public's (2)
14:24;36:3

purposes (3)
12:7;27:23;41:14

pursuant (5)
9:16;12:22;20:1;
29:9;32:6

pursue (3)
3:17;18:6;25:9

put (7)
5:3,15;22:5;25:13;
33:20;42:1;53:8

**Q**

quantum (1)
30:3

questionable (1)
26:17

quickly (1)
50:1

quite (3)
9:22;39:14;54:4

quote (1)
39:23

quote/unquote (1)
15:21

quoting (1)
47:23

**R**

rates (4)
11:23;12:1,4;50:12

reach (1)
46:9

reached (6)
3:2;36:4;38:10,11;
39:14;46:8

read (2)
33:13;46:20

reading (1)
17:8

ready (1)
54:6

real (1)
36:8

reality (1)
39:20

really (18)
6:17;11:2,2;15:8,9;
18:23;19:3,3,9;22:5,7;
31:1;32:19;42:9;49:1,
5,25;54:11

reason (1)
51:3

reasons (2)
30:2;43:21

recall (1)
52:2

received (2)
2:24;50:11

recently (2)
4:2;20:20

record (29)
11:14,16;16:16,18,
19,22;17:18;18:16;
21:17;27:8,12,14,14,
23,24,25;28:2,8,10,16,
19,23;31:11;34:17;
36:10;37:25;39:10;
53:7,18

records (22)
24:14,24;25:23;
26:15;35:14;37:3,9;
38:1,16;39:13;40:9,14,
21;42:8,11,12;44:2;
52:4,17;53:3,5,23

recourse (1)
13:17

recourses (2)
18:5,6

recovered (1)
52:21

redacted (2)
42:17,20

reduced (3)
25:2;26:18,18

reference (1)
25:20

reflects (1)
26:13

refused (2)
24:23;38:2

refuted (1)
48:5

regard (1)
9:18

Reiter (2)
2:6,8

relate (1)
24:15

related (2)
26:14;35:22

relates (1)
13:13

relating (5)
24:4,25;25:8,19;
41:13

relation (1)
14:13

relationship (1)
40:25

relative (1)
6:21

release (2)
35:2;46:10

releasing (1)
23:6

relies (1)
10:18

relying (1)
27:20

reminded (4)
29:12,21;30:14;32:5

reminding (1)
47:23

remorse (1)
35:23

repeatedly (9)
6:17,18;7:10;19:7;
29:19;50:3,3,10;51:2

reporter (1)
55:15

represent (3)
5:14;29:10;41:19

representation (4)
9:22;10:13;47:3,13

represented (10)
2:20;3:10;10:10;
14:21;26:8,12;31:12;
41:17;51:14,22

representing (2)
5:12;10:16

request (1)
42:16

requested (1)
53:9

require (2)
37:16;55:10

required (2)
13:1;33:12

requirement (1)
54:1

requires (4)
3:23;17:15;18:1;
37:14

resolution (2)
25:24;28:3

resolve (5)
5:4;10:4;43:13;
48:15;49:11

resolved (3)
35:11;37:17;50:13

resolves (1)
12:19

respect (7)
3:1;4:20;5:4;40:24;
42:24;43:20;47:14

respond (5)
22:25;25:25;54:24;
55:6,6

responding (4)
54:11,14,21,22

responses (1)
55:10

result (5)
4:24;6:5;11:6;34:4,
10

retainer (39)
3:14,18;5:9,15,17;
6:13;7:10;9:16;10:1,
12,13;12:14,16,22;
17:25,25;18:14;29:25;
30:4,10,13;32:7,11;
33:12,14;35:1;40:5,9,
15,24;41:2;42:11;44:8;
46:13,19,25;47:1;48:8,
10

retention (2)
3:15;29:8

return (1)
47:3

reveal (1)
41:12

review (2)
22:7;40:12

revise (2)
30:6,7

revolved (1)
4:2

right (52)
2:2,24;3:12;6:5;7:20,
24;8:6,15;9:2;11:13;
13:14;15:7,10;16:1,8;
17:3;18:23;19:16,19;
22:14,15,22,24;23:6,8,
9,10,11;27:10;28:1;
31:23;32:2,14,16;
34:25;35:16;38:21;
41:8;42:5;43:20;45:20;
46:4,16,17;49:4;50:11,
25;53:5,22;54:15;55:3,
9

rights (7)
15:5;26:19;30:4;
35:5;44:20;46:14,15

ruling (1)
45:14

**S**

same (2)
49:5;50:7

satisfies (2)
7:16;10:5

satisfy (2)
33:19,19

save (1)
54:2

saying (24)
5:18,25;7:18,23;

SHARRON SELLICK, v.
CONSOLIDATED EDISON COMPANY OF NEW YORK, INC.,                    June 6, 2016

11:6;12:19;14:4;16:4,
14;17:5,23;18:24;29:9;
30:22,25;32:21;33:3;
34:23;39:18;44:16;
45:17,21;46:8;49:18
**schedule (4)**
45:8;50:2,8;55:12
**seal (2)**
40:22;42:14
**sealed (1)**
42:15
**Second (4)**
28:21;32:12;39:25;
42:18
**Section (10)**
9:11;13:10;15:20;
27:3,4,23;28:7,14;
32:13,23
**secure (1)**
24:20
**secured (1)**
35:24
**seeing (1)**
25:23
**seek (18)**
5:19,19,21;13:1;
23:7,8,9,10,11,14;
30:17;33:12,14;43:7,8;
44:13;45:14;49:13
**seeking (8)**
9:15,17;24:8;26:3;
36:11;42:24;43:2,3
**seem (1)**
24:3
**seemed (2)**
15:9;23:24
**seems (8)**
8:25;13:17;21:23;
23:20;37:19;41:6;45:3;
54:10
**Sellick (83)**
2:6,9,20;3:10,17;4:3;
5:9,12,12,20;7:9,20;
9:1,10;10:6,10,21,25;
12:20;13:15;14:21,21,
25;15:12;19:5,17,18;
21:7,10,24;23:5;24:12,
15,16,25;26:8,12,14;
29:8,13,17,21;30:13,
16,20,22;31:9,12,15;
32:5,7;33:14,22,23;
34:12,22;35:2,10,25;
36:4,24,25;38:10;
39:15;40:6;41:4,17,19;
43:4,6,24;44:11;45:4;
46:10;47:2,6,10;48:5;
50:9;51:4;53:20;54:12,
13
**Sellick's (7)**
5:4;24:2,22;25:2;
33:21;41:13;53:20
**sense (3)**
36:8;47:10;52:14

**sent (6)**
12:5;29:8;32:8;
38:14;47:21;48:3
**separate (4)**
6:24;8:6;24:4;33:23
**separately (1)**
9:16
**separation (1)**
32:5
**serious (2)**
4:11;37:24
**served (2)**
4:25;7:11
**services (1)**
5:11
**sessions (1)**
53:16
**set (4)**
5:17;50:2,7;55:11
**settle (26)**
5:18;6:6,23;9:18;
10:4;11:5;12:11,25;
13:15;16:12;17:14,16,
22;18:24;19:2,5;21:10,
24;23:14,17;30:16;
32:6,25;34:12;38:24;
49:25
**settled (3)**
23:15;24:5;25:19
**settlement (80)**
3:2,5,22;4:1;5:21;
6:7;7:24;8:19;9:2,9;
11:6,22,24;12:2,7;
13:18,19,25;14:12,22;
15:1,14;16:15;17:9;
19:11,17,19;20:13;
21:13;22:11,13,17;
24:5,9;25:11;26:22;
32:20;33:15;34:2,6,8,
20;35:6,8,25;36:5;
37:22;38:10,11,24;
39:1,22;40:10;41:11;
42:25;43:2,5,18,19;
44:3,12,24;45:2,7,10,
13,23;46:3,4,5,6,7,9;
47:9;48:9,18;49:8,18;
51:15;54:24
**settling (5)**
6:8;16:3;21:8;34:9;
40:7
**seven (2)**
25:3;31:13
**several (1)**
24:7
**severely (1)**
11:22;38:15
**Seyfarth (2)**
2:11;4:12
**shaking (1)**
9:12
**shame (1)**
36:8
**share (2)**

20:4;24:23
**sharing (2)**
21:21;35:13
**Sharron (8)**
10:24;24:2,12,15,16,
22;26:8;35:10
**Shaw (2)**
2:11;4:12
**sheet (2)**
2:16,17
**short (2)**
11:1;26:6
**show (6)**
35:9;37:3,9;41:17,
18;48:23
**showing (1)**
12:5
**side (1)**
30:10
**sign (1)**
35:2
**signed (2)**
5:10;47:7
**Similar (2)**
13:6;18:13
**simple (2)**
53:21;54:4
**simply (3)**
39:16;43:3;44:9
**sit (2)**
46:23;52:12
**situation (1)**
49:7
**six (1)**
48:6
**small (2)**
10:14;14:17
**smoke (2)**
49:18,20
**solely (4)**
50:16;51:8,18,25
**somebody (1)**
32:23
**somehow (1)**
47:9
**somewhat (1)**
26:17
**sophisticated (1)**
30:12
**sorry (2)**
21:16;35:14
**sort (11)**
6:17,19;19:6;24:10;
35:12,15;50:17;51:10,
15,16;52:22
**sought (3)**
8:12;13:8;46:13
**sounds (5)**
7:19;14:4;45:4,6;
54:2
**space (1)**
48:21
**speak (2)**

7:3;46:23
**specific (4)**
8:7;35:10;41:4;48:4
**specifically (3)**
5:20;29:12;44:12
**specifics (1)**
3:25
**spent (9)**
20:23,24;26:16;
36:18;52:9;53:7,9,9,11
**split (2)**
20:22;22:19
**splitting (1)**
21:21
**spoke (1)**
38:12
**spoken (1)**
23:24
**spot (1)**
43:13
**stages (1)**
50:5
**stall (1)**
53:17
**stand (1)**
37:13
**standard (1)**
41:7
**standing (2)**
6:19;39:18
**started (1)**
11:17
**state (4)**
27:6;28:11,19;29:10
**stated (2)**
20:1;24:8
**statements (1)**
39:10
**States (1)**
42:18
**statute (4)**
27:21;34:19;45:18;
53:25
**steadfastly (1)**
24:23
**steps (1)**
49:25
**still (7)**
23:14;29:19;30:8;
32:17;43:1;52:11;
53:23
**stop (3)**
13:17;44:23;45:1
**story (1)**
51:21
**strategy (1)**
41:12
**strongly (1)**
3:19
**stuff (1)**
44:22
**subject (1)**
41:23

**submission (4)**
11:1;13:5,11;53:2
**submit (3)**
33:25;38:9;40:11
**submitted (1)**
4:8
**subsequent (2)**
5:14;18:16
**subsequently (2)**
4:21;29:12
**successful (1)**
13:9
**sue (6)**
9:10;10:6,22,24;
15:19;31:8
**suffer (1)**
10:16
**sufficient (2)**
36:18,19
**suggested (3)**
5:3;51:6;52:8
**suggesting (6)**
15:9;21:7;32:18;
47:11;50:19;53:13
**suit (3)**
9:5;25:22;47:13
**support (1)**
40:11
**Supreme (4)**
16:23;17:8,15,19
**sure (13)**
3:20;7:13;8:24;9:4;
12:10;18:10;21:19;
22:10;26:1;31:21;42:9,
10;50:1

**T**

**table (6)**
19:10;20:17,18;
22:19;30:6;47:8
**tactics (1)**
53:17
**talk (9)**
6:1;18:19;24:17;
30:7,8;38:6;47:4;48:1,
1
**talking (5)**
6:8;24:11;28:14;
51:11,11
**talks (1)**
27:11
**Taylor (2)**
2:14,15
**teed (2)**
55:3,4
**telling (6)**
17:15;25:23;44:21;
45:10;49:9,19
**ten (3)**
10:13;20:8;46:25
**term (1)**
16:6

SHARRON SELLICK, v.
CONSOLIDATED EDISON COMPANY OF NEW YORK, INC.,

June 6, 2016

**terminate (1)**
10:22
**terminated (1)**
47:14
**termination (3)**
47:21;48:3,6
**terms (12)**
3:14;6:6;10:1,12;
17:18;23:18;24:22;
29:16;31:17;34:9;48:6;
49:24
**theory (3)**
9:10;31:3;52:23
**therefore (2)**
9:18;30:25
**Third (1)**
5:17
**thoroughly (1)**
18:19
**though (8)**
6:19;16:16;17:2,19;
23:15;27:5;34:3;39:20
**thought (4)**
15:8;25:7;36:18;
50:19
**thousands (1)**
21:2
**threatened (2)**
9:10;10:6
**three (3)**
37:8;38:15,18
**three-cornered (1)**
50:20
**three-person (1)**
51:20
**throughout (1)**
18:15
**throwing (1)**
54:17
**thumb (1)**
28:25
**tied (1)**
24:11
**Till (1)**
2:21
**timely (1)**
48:24
**times (6)**
19:20;23:25;24:8;
37:8;51:9,14
**Title (7)**
18:17;25:21;28:1;
34:18,24;44:8;46:11
**today (8)**
7:16;13:21;14:10;
18:17;19:9;24:8;44:6;
54:8
**told (10)**
3:1;20:20;21:15,20;
24:1,25;37:7;38:12;
49:7;51:9
**took (6)**
4:25;9:7;13:9;26:15;

28:3;30:8
**total (1)**
25:1
**totally (2)**
19:12;39:25
**towards (1)**
36:5
**treat (1)**
40:9
**treated (1)**
41:3
**tremendous (4)**
14:11;19:4;26:4,7
**trial (3)**
6:24;13:7,9
**trick (2)**
23:13;25:17
**tried (5)**
6:17,18;30:5,6;43:22
**true (3)**
28:4;31:4;41:9
**try (5)**
5:3;12:8;13:17;35:9;
52:4
**trying (13)**
19:15,16;23:19;
29:14;32:17;33:5;
35:16;42:23;45:1,2,3;
52:3;53:19
**turn (1)**
37:14
**turns (1)**
34:4
**two (10)**
13:3;27:17;29:6,24;
39:7,9;45:25;54:5,7,8
**typically (1)**
52:25

## U

**ultimately (1)**
25:5
**unclear (1)**
43:12
**under (36)**
7:17;8:8;9:10,10,15,
16,25;13:2;15:20,20;
16:17,19;17:7,25;
18:19;26:24;27:3,4,5,
13;28:1,19;29:22;31:3;
33:12;34:18,19,24;
40:22;42:14;44:8,8;
45:18;53:25;54:22,25
**understood (1)**
3:7
**unfair (1)**
22:22
**unfortunately (1)**
23:2
**unique (1)**
20:6
**United (1)**

42:18
**universe (1)**
35:17
**unless (2)**
6:4;46:3
**unquestionably (1)**
24:3
**untrue (1)**
37:20
**untruth (1)**
39:16
**unusual (4)**
6:12,12;20:10;24:19
**up (13)**
22:12;23:11;24:25;
35:25;45:23;49:6,18,
20;50:16,25;51:4;55:3,
4
**used (1)**
35:24
**uses (1)**
47:3
**using (1)**
53:17
**usually (1)**
35:19
**utterly (2)**
40:7;55:10

## V

**VENETIS (111)**
2:18,19,22;3:10,13;
4:17,21;7:3;9:12;10:8,
9,20;11:10,13,16;12:3,
10,14,22;13:1,20,23;
14:7,16,20;15:11,19,
24;16:6,10,13,17,21;
17:4,6,11,17,24;18:4,
11;19:1,18,23,25;
20:11;21:9,15,18,20;
22:4,15;23:2;24:7;
25:25;26:2,11;27:1,4,
10,13;28:1,5,8,12,16,
20;31:20,22,25;32:2,
18,22;36:10,16,23;
37:5,11,13,20;38:3,5,9,
21;39:5,8;40:8,15,19,
25;41:9,16;43:1;44:17;
46:21,23,24;47:17,24;
48:19;50:15,21;51:7,
13;53:3,6,12;54:5,6,23;
55:9,14
**verdict (1)**
24:18
**verse (1)**
42:21
**versus (1)**
52:6
**veto (3)**
7:24;9:2;12:24
**victim (1)**
10:25

**view (6)**
5:1;6:23;7:16;15:17;
17:8,8
**VII (7)**
18:17;25:21;28:1;
34:18,24;44:8;46:11

## W

**Wait (12)**
11:25,25;12:9;15:16;
29:4;45:9,9,9,9;46:22,
22;47:18
**waive (1)**
46:14
**waived (2)**
31:23,25
**waiving (3)**
15:5;34:13;35:3
**WANG (97)**
2:4,5,8;3:4,23;4:10;
6:11,16;7:1,5,7,18,21,
25;8:2,9,20;9:6,14;
10:17;11:20;12:3;
13:24;14:1,4;15:8,10;
17:13;19:8,12,15,16,
19,22;20:15;21:4,20;
22:8,20,25;23:1,10,16;
26:12;29:3,5,6;30:23;
31:3;32:7,19;33:4,6,
11;34:5;36:6;39:11;
43:4,5,10,15,21;44:1,7,
18,23;45:6,12,20,24;
46:4,24;47:6,11,15,16,
20;48:5;49:7,9,10,20;
50:19,22;51:1,2,3,14,
20;52:3,8;54:1,11,12,16,
19;55:11,13
**Wang's (3)**
39:23;50:17;55:1
**wants (6)**
13:15;22:16;40:22;
44:25;45:17,19
**Watson (6)**
13:4,4;18:12;20:1;
24:17,18
**way (6)**
4:22;21:22;35:12;
39:24;49:10;55:3
**week (1)**
30:8
**weeks (6)**
38:15,18;39:7;54:5,
7,8
**whacked (1)**
49:6
**what's (2)**
8:16;20:17
**whatsoever (1)**
52:14
**whole (2)**
33:5;50:18
**who's (1)**

43:20
**willing (13)**
11:21;14:3,8;19:13;
24:21;25:14,16;34:16;
35:1,6;51:20;52:11,19
**win (1)**
45:22
**wind (1)**
54:17
**wins (2)**
45:21,22
**wish (1)**
14:21
**wished (1)**
17:7
**wishes (2)**
16:12;17:2;21:24
**within (2)**
27:17;48:17
**without (5)**
3:24;18:25;33:1;
37:17;47:7
**women (2)**
10:16;24:7
**women's (1)**
44:20
**words (1)**
47:3
**work (15)**
3:19;10:16,18;14:11,
23;19:4,13;23:20;26:7;
36:11,25;43:23;50:13;
51:16;53:13
**working (2)**
24:2;36:20
**worth (4)**
4:4;12:18;21:2;
36:11
**written (1)**
41:23

## Y

**yard (2)**
20:8,12
**year (1)**
53:14
**years (13)**
3:11;10:11;26:5,5;
31:13;35:8;36:11;37:4;
38:17,19;39:3;41:16;
53:7
**York (3)**
9:11,21;24:6

## Z

**zero (2)**
14:2;19:13

## 1

**1:05:57 (1)**

| | |
|---|---|
| 52:16 | **95th (1)** |
| **100 (2)** | 20:12 |
| 36:11,12 | |
| **15 (2)** | |
| 2:22,23 | |
| **2** | |
| **2000 (1)** | |
| 2:21 | |
| **2006 (1)** | |
| 13:5 | |
| **2007 (3)** | |
| 2:20;5:10;31:16 | |
| **2009 (1)** | |
| 31:17 | |
| **2015 (9)** | |
| 2:20;10:11,21;11:12, | |
| 18;32:8;38:20;41:18; | |
| 48:3 | |
| **2016 (2)** | |
| 11:11;32:9 | |
| **20th (2)** | |
| 54:8;55:8 | |
| **23-paragraph (1)** | |
| 10:13 | |
| **3** | |
| **3 (2)** | |
| 29:9,10 | |
| **4** | |
| **4 (3)** | |
| 29:9,10;48:1 | |
| **400 (1)** | |
| 52:15 | |
| **431 (3)** | |
| 25:1,2;35:21 | |
| **475 (20)** | |
| 9:11;13:10;15:20; | |
| 27:3,4,5,11,23,24;28:7, | |
| 14,16,21,22,22;32:13, | |
| 23;33:2;45:18;54:22 | |
| **5** | |
| **50/50 (1)** | |
| 22:20 | |
| **7** | |
| **7 (2)** | |
| 29:13;48:2 | |
| **8** | |
| **8 (4)** | |
| 29:13;30:15,16;48:2 | |
| **9** | |