UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SHARRON SELLICK,

                    Plaintiff,

   -v-

CONSOLIDATED EDISON COMPANY OF
NEW YORK, INC.,

                    Defendant.

No. 15-cv-9082 (RJS)
OPINION & ORDER

RICHARD J. SULLIVAN, District Judge:

The Court is in receipt of motions by: (1) non-party Legal Momentum ("LM") to assert a charging lien pursuant to N.Y. Judicial Law § 475 (Doc. No. 52) and to permanently redact exhibit seven of its supporting declaration (Doc. No. 55; *see also* Doc. No. 54-7), and (2) Plaintiff Sharon Sellick to permanently redact certain references in her opposition brief that detail the terms of her contemplated confidential settlement with Defendant (Doc. No. 65). For the reasons set forth below, LM's charging lien motion is granted as to a fifteen (15) percent pro rata share of the attorney's fees collected out of Plaintiff's settlement. The parties' motions to redact are also granted.

## I. BACKGROUND

Plaintiff began working for Defendant Consolidated Edison Company of New York, Inc. ("Con Ed" or "Defendant") in 2000. (Doc. No. 63 ("Sellick Decl.") ¶ 3.) On July 18, 2007, Plaintiff retained LM to serve as counsel in connection with her complaints of unlawful sex discrimination by Defendant. (Doc. No. 54-1.) Under the terms of Plaintiff's retainer agreement with LM, LM agreed to represent Plaintiff in proceedings before the Equal Employment Opportunity Commission ("EEOC"). (*Id.* ¶ 3.) Plaintiff also promised to assign a court award of

attorney's fees to LM and to not accept a settlement for her claims "unless it makes some provision for [LM's] costs and attorney's fees." (*Id.* ¶¶ 7–8.)

Plaintiff acknowledges that LM "spent considerable time interviewing witnesses and researching the possibility of pursuing a broader, systemic case against Con Ed." (Doc. No. 62 ("Pl. Opp'n") at 6.) In September 2007, LM filed Plaintiff's EEOC charge, which was amended in November 2007. (Sellick Decl. ¶ 19.) Although LM represented Sellick in connection with the EEOC proceedings that followed (Doc. Nos. 54 ¶ 5, 54-4), Plaintiff also retained the services of Mariann Wang ("Ms. Wang") to represent her in August 2009 (Sellick Decl. ¶ 22).[1] Since that time, "Ms. Wang has taken the lead in representing" Plaintiff, although "a revolving door" of various attorneys at LM remained involved in Plaintiff's representation for the next six years. (*Id.* ¶¶ 25–26; *see also* Doc. Nos. 54-3, 54-4.) In November 2011, the EEOC issued a probable cause finding concerning the discrimination claims brought by Plaintiff and eight other women. (Sellick Decl. ¶ 27.) Thereafter, Plaintiff engaged in a "years-long conciliation process before the EEOC," along with a private mediation, and Plaintiff cooperated with an investigation brought by the New York Attorney General's Office into employment discrimination by Defendant. (*Id.* ¶¶ 27–29.)

On August 21, 2015, the EEOC issued its "Notice of Right to Sue" letter. (*Id.* ¶ 32.) On November 18, 2015, LM's representation of Plaintiff was terminated. (Doc. No. 54-8.) That same day, Plaintiff filed suit in this Court alleging unlawful discrimination and retaliation by Defendant in violation of Title VII, 42 U.S.C. § 2000e, *et seq.* and the New York City Human Rights Law, N.Y.C. Admin. Code § 8–107, *et seq.* (Doc. No. 1.) Since that date, only two

---

[1] Although Ms. Wang was affiliated with the law firm of Emery Celli Brinckerhoff & Abady LLP when she began representing Plaintiff in August 2009, she has since joined the law firm of Cuti Heckler Wang LLP ("CHW"). (Doc. No. 64 ¶ 8.)

attorneys have entered notices of appearance on Plaintiff's behalf – Ms. Wang and her associate, Alice G. Reiter, of the law firm Cuti Heckler Wang LLP.  (*Id.* at 22; *see also* Doc. Nos. 2, 5.)

After several months of discovery, the Court granted the parties' May 11, 2016 request to stay all discovery deadlines in order to facilitate settlement negotiations.  (Doc. Nos. 32, 33.)  On May 23, 2016, the parties submitted a joint letter indicating that they were "close to a settlement" and requesting that the discovery stay continue.  (Doc. No. 34.)  However, Plaintiff and Defendant also indicated that "at least one important issue remains to be resolved involving" Plaintiff's "former counsel, [LM]."  (*Id.* at 1–2; *see also* Doc. No. 54-8.)  On May 26, 2016, LM appeared in this action as an interested party and submitted a letter regarding its contemplated motion to impose a charging lien upon any settlement in Plaintiff's favor.  (Doc. No. 36.)  On June 6, 2016, the Court held a pre-motion conference with the parties and LM concerning LM's contemplated motion for a charging lien.  (Doc. No. 50.)

The Court ordered a deadline of June 20, 2016 for LM's charging lien motion.  (*Id.* at 54:6–8.)  Although LM initially filed its motion and accompanying submissions on June 20, 2016 (Doc. Nos. 44, 45, 46), LM submitted an amended charging lien motion, amended declaration, and amended motion to seal exhibit seven of its declaration on June 22, 2016 without seeking leave of the Court (Doc. Nos. 52, 53 ("Mem."), 54, 55, 56).  Thereafter, Plaintiff filed a brief opposing the charging lien motion (Doc. No. 62), along with an ancillary motion to permanently redact a handful of references in her opposition brief to the terms of her contemplated confidential settlement with Defendant (Doc. Nos. 65, 66, 67).  On July 22, 2016, Defendant filed a brief opposing the charging lien motion.  (Doc. No. 68 ("Def. Opp'n").)  Although the Court ordered LM to file a single reply brief by July 26, 2016 addressing "both Plaintiff's and Defendant's responses" (Doc. No. 61 at 2), LM filed a declaration and brief responding to Plaintiff's opposition on July 26, 2017 (Doc. Nos. 70, 71), a brief responding to

Defendant's opposition a day later, on July 27, 2017, and a declaration in further support of the motion on July 28, 2017 (Doc. Nos. 72, 73). Notwithstanding LM's repeated failures to comply with the Court's scheduling orders, the Court has considered LM's late submissions on this motion.

## II. CHARGING LIEN

The Court first turns to LM's motion to impose a charging lien on the proceeds of any settlement in this case. New York Judiciary Law Section 475 ("Section 475") "governs attorneys' charging liens in federal courts sitting in New York." *Itar-Tass Russ. News Agency v. Russ. Kurier, Inc.*, 140 F.3d 442, 448 (2d Cir. 1998).[2] "A charging lien is a security interest in the favorable result of litigation, giving the attorney [an] equitable ownership interest in the client's cause of action and ensuring that the attorney can collect his fee from the fund he has created for that purpose on behalf of the client." *Charnow v. Charnow*, 134 A.D.3d 875, 876 (2d Dep't 2015) (citation omitted). The charging lien exists "[f]rom the commencement of an action, special or other proceeding in any court or before any state, municipal or federal department, except a department of labor," N.Y. Judiciary Law § 475, but it "only attaches when proceeds from an identifiable fund are created by an attorney's own efforts in the action or proceeding," *In re Air Crash at Belle Harbor*, No. 02-cv-4758 (RWS), 2006 WL 3247675, at *2 (S.D.N.Y. Nov. 9, 2006).

As the Second Circuit and other courts applying New York law have made clear, a charging lien "is for the benefit of an 'attorney of record' only." *Itar–Tass*, 140 F.3d at 450 (collecting cases). Thus, "before an attorney can be granted a lien pursuant to [Section 475], he

---

[2] The parties do not dispute that this Court may exercise supplemental jurisdiction over LM's motion under Section 475. Indeed, the law is clear that "[f]ederal courts may exercise supplemental jurisdiction 'to hear fee disputes between litigants and their attorneys when the dispute relates to the main action,'" *Alderman v. Pan Am World Airways*, 169 F.3d 99, 101–02 (2d Cir. 1999) (citation omitted), and the Second Circuit has found that the exercise of supplemental jurisdiction over charging lien disputes is generally appropriate, *see Itar–Tass*, 140 F.3d at 448.

or she must have appeared for the client by 'participating in a legal proceeding on the client's behalf or by having his [or her] name affixed to the pleadings, motions, records, briefs, or other papers submitted in the matter.'" *Picciolo v. State*, 287 A.D.2d 721, 722 (2d Dep't 2001) (quoting *Cataldo v. Budget Rent A Car Corp.*, 226 A.D.2d 574, 574 (2d Dep't 1996)).   An attorney of record who has been discharged by her client "maintains . . . her right to enforce the statutory lien," so long as her "representation terminates upon mutual consent, and there has been no misconduct, no discharge for just cause, and no unjustified abandonment by the attorney." *CPMI, Inc. v. Kolaj*, 137 A.D.3d 953, 955–56 (2d Dep't 2016) (citation omitted); *accord Klein v. Eubank*, 87 N.Y.2d 459, 464 (1996).   Thus, "an attorney need not be counsel of record at the time the judgment or settlement fund is created in order to be entitled to the lien afforded by Judiciary Law § 475." *Klein*, 87 N.Y.2d at 462.

LM maintains that it is entitled to assert a charging lien in this action because of its work on Plaintiff's behalf before the EEOC and based on the retainer agreement Plaintiff entered in connection with that representation in 2007.   (Mem. 10–17.)   While the Court agrees that LM is entitled to a charging lien, it reaches that conclusion for reasons other than those raised by LM in its principal brief.

LM repeatedly asserts that it is entitled to fees because its former client, Ms. Sellick, is a "prevailing party" under Title VII.   (*See, e.g.*, Mem. 12; *id.* at 10 (citing *Watson v. E.S. Sutton, Inc.*, No. 02-cv-2739 (THK), 2006 WL 6570643, at *1 (S.D.N.Y. Aug. 11, 2006), *report and recommendation adopted as modified*, No. 02-cv-2739 (KMW), 2007 WL 2245432 (S.D.N.Y. Aug. 3, 2007)).)   This argument reflects a fundamental misapprehension of law.   Under Title VII, "the court, in its discretion, may allow *the prevailing party* . . . a reasonable attorney's fee (including expert fees) as part of the costs."   42 U.S.C. § 2000e-5(k).   However, as the plain language of the statute makes clear, "the person who is entitled to the award of [attorney's] fees

is the prevailing party rather than the lawyer." *Valley Disposal Inc. v. Cent. Vt. Solid Waste Mgmt. Dist.*, 113 F.3d 357, 361 (2d Cir. 1997) (internal quotation marks omitted); *see also Brown v. Gen. Motors Corp., Chevrolet Div.*, 722 F.2d 1009, 1011 (2d Cir. 1983) (attorney lacked standing to move for fees "in his own name as the real party in interest"); *cf. Watson*, 2006 WL 6570643, at *2 (plaintiff, at close of jury trial in which she prevailed, moved for fees under Title VII "*on behalf of* each of the three firms which represented her").[3]   Accordingly, LM's argument that it is entitled to fees based on Title VII must be rejected, since it is Ms. Sellick – and not her former lawyers – who has standing to move under that provision, and she has not done so.

More importantly, the law is clear that only a "prevailing party" is entitled to fees under Title VII. *See Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598 (2001).   Thus, "plaintiffs are only eligible for [attorney's] fees if they 'achieve some material alteration of the legal relationship' between them and their adversaries, *and* that change bears a 'judicial imprimatur.'"  *Perez v. Westchester Cty. Dep't of Corr.*, 587 F.3d 143, 149 (2d Cir. 2009) (emphasis in original) (quoting *Roberson v. Giuliani*, 346 F.3d 75, 79–80 (2d Cir. 2003)).   Here, there is absolutely no evidence that the parties intended this Court to "judicially sanction[]" their settlement. *See id.* at 151; *see also Sanchez ex rel. Sanchez v. Patterson*, 328 F. App'x 689, 691 (2d Cir. 2009) (plaintiff was not "prevailing party" where district judge "did not enter a judgment on the merits, a consent decree, or an order of dismissal in which it retained jurisdiction or incorporated the terms of a settlement agreement").   To the contrary, this Court

---

[3] Although *Valley Disposal* and *Brown* were decided under 42 U.S.C. § 1988, which is the fee-shifting provision for suits brought under 42 U.S.C. § 1983, the Second Circuit has instructed courts to construe Section 2000e-5(k) "in the same fashion" as Section 1988, since both provisions authorize fees for the "prevailing party."  *Reed v. A.W. Lawrence & Co.*, 95 F.3d 1170, 1183 n.16 (2d Cir. 1996) ("[O]pinions regarding fees in cases decided under sections 1983 and 1988 . . . are authoritative in the Title VII context."); *see also Baker v. Dorfman*, No. 99-cv-9385 (DLC), 2000 WL 1201467, at *5 (S.D.N.Y. Aug. 22, 2000) (noting that *Brown* stands for the general proposition that "an attorney may not claim attorney's fees in his own name as the real party in interest where, under the applicable substantive law, it is the *party* who is entitled to the fees").

has not had *any* involvement in Plaintiff's and Defendant's resolution of the Title VII discrimination claim. In fact, Defendant represents, and Plaintiff does not appear to dispute, that the parties "intend to enter into an ordinary private settlement without the Court's approval or involvement in the settlement's terms." (Def. Opp'n 16); *see also United States v. 115-98 Park Lane S.*, No. 10-cv-3748 (BMC), 2012 WL 3861221, at *5 (E.D.N.Y. Sept. 5, 2012) (plaintiff was not a prevailing party where court was not involved in parties' settlement discussions and did not "make any changes to the terms of their settlement"), *aff'd sub nom. United States v. Capital Stack Fund, LLC*, 543 F. App'x 17 (2d Cir. 2013); *cf. Perez*, 587 F.3d at 148–49 (private settlement bore judicial imprimatur where district judge "played an integral role in the resolution of the suit," oversaw settlement conferences, "advised the parties on how they should expect the law to come out," and "reviewed and revised the settlement agreement with the parties," among other things). Thus, even assuming that LM somehow had standing to move for fees under Title VII, the application would almost certainly fail because Plaintiff is not a "prevailing party."

LM also relies heavily on a retainer agreement executed in connection with its representation of Plaintiff before the EEOC. (Mem. 8–9, 12; Doc. No. 70 at 6–7.) It is true that Plaintiff signed a retainer agreement with LM in 2007 that includes a provision "assign[ing] any award of attorney['s] fees to [LM]" and an agreement by Plaintiff "not to accept a settlement" for her claims "unless it makes some provision for costs and [attorney's] fees." (Doc. No. 54-1 ¶¶ 7–8.) But the law is well settled that the existence of a retainer agreement between an attorney and client "is insufficient to create a charging lien." *Louima v. City of New York*, No. 98-cv-5083 (SJ), 2004 WL 2359943, at *58 (E.D.N.Y. Oct. 5, 2004), *aff'd sub nom. Roper-Simpson v. Scheck*, 163 F. App'x 70 (2d Cir. 2006) (quoting *Ebert v. N.Y. City Health & Hosps. Corp.*, 210 A.D.2d 292, 292 (2d Dep't 1994)); *see also Rodriguez v. City of New York*, 66 N.Y.2d 825, 827–28 (1985) (attorney who had retainer agreement with client was not entitled to charging lien,

since attorney's "name never appeared on any of the pleadings, motion papers, affidavits, briefs or record in plaintiff's action"). Accordingly, LM is not entitled to a charging lien on this basis either.

Notwithstanding the sloppiness of LM's submissions, the Court still concludes that LM is entitled to assert a charging lien on the proceeds of any settlement in this action. As set forth earlier, the plain language of Section 475 provides that "[f]rom the commencement of an action . . . the attorney who appears for a party has a lien upon his or her client's *cause of action, claim or counterclaim*, which attaches to a verdict, report, determination, decision, award, settlement, judgment or final order in his or her client's favor . . . ." Section 475 (emphasis added). The New York Court of Appeals's opinion in *Cohen v. Grainger, Tesoriero & Bell*, 81 N.Y.2d 655 (1993) – a case that was overlooked by LM in its opening brief and first reply brief on this issue – provides a particularly instructive interpretation of Section 475. In that case, Cohen's client, a personal injury plaintiff, discharged him while his state-court suit was pending. The client's successor attorney thereafter filed a separate action on the same claim in federal court, where the client obtained a recovery. The New York Court of Appeals granted Cohen's motion for a charging lien under Section 475, concluding that a charging lien "is imposed on the *cause of the action*" and that "the proceeds, wherever found, are subject to it . . . even if recovery is obtained in an action different from the one in which the services were rendered." *Cohen*, 81 N.Y.2d at 658. In reaching this determination, the Court of Appeals relied on an older Second Department decision, which concluded that "[t]he attorney's lien attaches to the client's cause of action, and any recovery thereon, albeit the recovery is effected in an action other than the action in which the services were rendered . . . especially . . . where the recovery is in an action which is a logical sequence of a prior action in connection with which the services were rendered." *Neimark v. Martin*, 7 A.D.2d 934, 934 (2d Dept. 1959). Following *Neimark*, Judge Castel

reached a similar conclusion last year. *See Mason v. City of New York*, No. 12-cv-5885 (PKC), 2016 WL 2766652, at *3 (S.D.N.Y. May 12, 2016) (concluding that attorney who appeared as counsel of record "on a different action" may enforce "a charging lien against the proceeds of the settlement in this case," since the other action involved the same claims and the cases were "in 'logical sequence'").

Here, there is no dispute that LM appeared on Plaintiff's behalf before the EEOC, where Plaintiff initially litigated her employment discrimination claim. In addition, the EEOC action was a "proceeding in . . . [a] federal department" to which a lien may attach under Section 475. *See Bonnaig v. Walton*, 115 A.D.3d 595, 595 (1st Dep't 2014) (attorney's filing of EEOC charge on client's behalf "constituted the 'commencement of a proceeding' before a 'federal department' within the meaning of former section 475"). There also is no allegation by any of the parties that LM was terminated because of "misconduct," "for just cause," or due to "unjustified abandonment." *See CPMI, Inc.*, 137 A.D.3d at 956. And although LM never appeared on Plaintiff's behalf in this Court, it must be acknowledged that Plaintiff's federal suit was of "a logical sequence" from the EEOC proceeding, *see Neimark*, 7 A.D.2d at 934, since a Title VII plaintiff "must first exhaust [her] administrative remedies by 'filing a timely charge with the EEOC or with a [s]tate or local agency with authority to grant or seek relief from such practice,'" *Roth v. Farmingdale Pub. Sch. Dist.*, No. 14-cv-6668 (JFB) (ARL), 2017 WL 395211, at *9 (E.D.N.Y. Jan. 30, 2017) (quoting *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 82–83 (2d Cir. 2001)). Accordingly, the Court concludes that LM's lien attached to Plaintiff's "cause of action" – her claim for employment discrimination – and that LM is entitled to assert a charging lien on Plaintiff's recovery in this proceeding.

Defendant, relying on different cases, argues that LM is not entitled to a charging lien, since it never appeared in this Court and "[s]imply representing a client in a matter *related* to a

proceeding where a settlement is procured . . . is not enough" to obtain a charging lien under

Section 475. (Def. Opp'n 10.)  Several decisions applying New York law ostensibly support

Defendant's position.  For instance, Judge Kaplan concluded that a court may "grant[] a charging

lien to an attorney only when there has been an appearance by that attorney in [the] action which

creates or is the source of the funds against which the lien is asserted." *Chevron Corp. v.

Donziger*, No. 11-cv-0691 (LAK), 2011 WL 2150450, at *3 (S.D.N.Y. May 31, 2011) (quoting

*Weg & Myers, P.C. v. Banesto Banking Corp.*, 175 A.D.2d 65, 66 (1st Dep't 1991)).  Magistrate

Judge Tomlinson, in a report and recommendation adopted by Judge Kuntz in the Eastern

District of New York, likewise concluded that "[a]n attorney's representation of a client in one

proceeding does not entitle the attorney to a charging lien over proceeds in a separate case or

proceeding where the attorney did not appear as counsel." *Galvez v. Aspen Corp.*, 967 F. Supp.

2d 615, 625 (E.D.N.Y. 2013); *see also Max E. Greenberg, Cantor & Reiss v. State*, 128 A.D.2d

939, 940 (3d Dep't 1987) (attorney who appeared on client's behalf in state proceeding but was

not counsel of record in related federal action "which produced the settlement" was not entitled

to charging lien over settlement proceeds from federal action), *leave to appeal denied*, 70 N.Y.2d

605 (1987).

Even so, the Third Department's decision in *Max E. Greenberg* and the First

Department's decision in *Weg & Myers* on which *Chevron* relied predated *Cohen*, and *Chevron*

omits any mention of *Cohen* in its analysis.  And while *Galvez* attempts to distinguish *Cohen*, the

Court finds *Galvez*'s gloss on *Cohen* to be unpersuasive.  Specifically, Judge Tomlinson read

*Cohen* to represent an "exception[] to the rule that the attorney must appear in the action which

creates the source of funds against which a lien is sought" that applies only to cases where the

"client and his or her new attorney could file a new action in order to destroy the first attorney's

rights." *Galvez*, 967 F. Supp. 2d at 625–26.  The Court respectfully disagrees with *Galvez*'s

10

suggestion that *Cohen* is limited to situations of collusion between a client and his new lawyer, rather than being a rule applicable to all charging lien motions under New York law.  According to *Cohen*, the "*rule*" in New York is that a lien under Section 475 "is imposed on the cause of the action[,] and . . . the proceeds, wherever found, are subject to it . . . even if recovery is obtained in an action different from the one in which the services were rendered." *Cohen*, 81 N.Y.2d at 658.  Thus, the New York Court of Appeals "[held] that Cohen's rights attached when he commenced the state action and he [was] entitled to a statutory lien against the proceeds of the Federal action." *Id.*  Here, LM's rights attached when it commenced the EEOC action on Plaintiff's behalf, and the proceeds of Plaintiff's settlement of her discrimination claim are "subject to" the lien, even though her recovery was "obtained in an action different from the one in which [LM's] services were rendered." *See id.*

Plaintiff also argues that LM is ineligible to attach its charging lien to a settlement obtained in this Court because, under the terms of LM's retainer agreement, LM's representation of Plaintiff expired at the close of EEOC proceedings. (Pl. Opp'n 21–25 (citing *Shaw v. Mfrs. Hanover Tr. Co.*, 68 N.Y.2d 172 (1986).)  Although, as discussed earlier, a retainer agreement between an attorney and client "is insufficient to *create* a charging lien," *Louima*, 2004 WL 2359943, at *58; *Rodriguez*, 66 N.Y.2d at 827–28, New York law suggests that an attorney may be *ineligible* for a fee award if a retainer agreement conditions her right to obtain fees on recovery in a specific proceeding, and the plaintiff does not recover in that specific proceeding.  Thus, in *Shaw*, the New York Court of Appeals denied a charging lien on the proceeds from a successful appeal and second trial to an attorney who had withdrawn after the unsuccessful verdict in the first trial, where the contingent fee retainer agreement limited the attorney's recovery to the damages obtained at that first trial. 68 N.Y.2d at 177.  Consequently, Plaintiff's attempt to analogize this case to *Shaw* is unpersuasive, since LM's retainer agreement

11

unambiguously provided for an award of attorney's fees to LM in the event that Plaintiff either settled or prevailed in her district court case after LM's withdrawal.  (Doc. No. 54-1 ¶¶ 3, 7–9); *see also Doviak v. Lowe's Home Ctrs., Inc.*, 134 A.D.3d 1324, 1327–28 (3d Dep't 2015) (similarly distinguishing *Shaw* and awarding charging lien where retainer "provided for a reasonable fee should there be an appeal").

Accordingly, LM is entitled to a statutory lien against the proceeds of the settlement of Plaintiff's employment discrimination claim in this case, and as a result, the Court must determine the value of LM's charging lien.  In that regard, the law is clear that "[a]s against the client, a discharged attorney may recover the 'fair and reasonable value' of the services rendered, determined at the time of discharge and computed on the basis of quantum meruit."  *Cohen*, 81 N.Y.2d at 658 (internal citations omitted).  Where a dispute is between a discharged attorney and a new attorney, however, the "discharged attorney may elect to receive compensation immediately based on quantum meruit or on a contingent percentage fee based on his or her proportionate share of the work performed on the whole case."  *Id.*  "[A] contingent percentage fee is properly determined at the end of litigation when the amount of the recovery and the relative contributions of the lawyers to it can be ascertained."  *Lai Ling Cheng v. Modansky Leasing Co.*, 73 N.Y.2d 454, 459 (1989).

Here, LM does not seek fees from Plaintiff on a quantum meruit theory.  (Mem. 16.)  Instead, it seeks to recover its "proportionate share" of any award of attorney's fees from Plaintiff's settlement with Defendant.  (*Id.* (quoting *Cohen*, 81 N.Y.2d at 658).)  The Court must therefore evaluate "the proportionate contributions" of Plaintiff's attorneys in this matter – LM and Ms. Wang – based "on the time and labor spent by each, the actual work performed, the difficulty of the questions involved, the skill required to handle the matter, the attorney's skills and experience, and the effectiveness of counsel in bringing the matter to resolution."  *Mason*,

2016 WL 2766652, at *5 (quoting *Buchta v. Union Endicott Cent. Sch. Dist.*, 296 A.D.2d 688, 689–90 (3d Dept. 2002)) (brackets omitted). The determination of a "proportionate share . . . is a matter within the sound discretion of the court." *Ficaro v. Alexander*, 142 A.D.3d 1043, 1043 (2d Dep't 2016) (internal citations omitted); *see also Foppiano v. City of New York*, No. 00-cv-7968 (FM), 2002 WL 31202716, at *5 (S.D.N.Y. Sept. 25, 2002) ("Scientific precision is, of course, impossible in determining how to allocate a contingency fee.").[4]

Upon review of the declarations submitted in connection with this motion and the record of this case, it is clear that Ms. Wang's contributions in "bringing [this] matter to resolution" were significantly more substantial than LM's. *See Mason*, 2016 WL 2766652, at *5. Indeed, while LM was instrumental in the early investigation of Plaintiff's claims and initiation of the EEOC action in 2007 (Sellick Decl. ¶¶ 4–18), Plaintiff explains that Ms. Wang has "taken the lead" in representing Plaintiff since 2009 and negotiated a successful settlement for Plaintiff that "far surpassed any offer obtained" through Plaintiff's pre-litigation efforts at the EEOC and in mediation (*id.* ¶¶ 26, 36); *see also Buchta*, 296 A.D.2d at 690 (awarding 65% of total counsel fee to attorney who negotiated the settlement, 10% to attorney who conducted initial, three-year-long investigation, and 25% to attorney who initiated suit and represented plaintiff during discovery). In fact, as LM acknowledges in its reply declaration, it was "nowhere close to settling" Plaintiff's case during the course of its representation of her. (Doc. No. 73 ¶ 23.)

Furthermore, while both LM and Ms. Wang claim to have spent hundreds of hours in connection with their representations of Plaintiff (Doc. Nos. 54-3, 54-4, 64 ¶¶ 21, 23), Ms. Wang has engaged in more challenging work on Plaintiff's behalf. Although both LM and Ms. Wang

---

[4] Although Ms. Wang and her associate did not submit contemporaneous time records in opposing LM's motion, the Court finds there to be "sufficient data" in the lengthy declarations filed by the parties to determine a "reasonable apportionment of the fees" between LM and Ms. Wang. *See Greenberg v. Cross Island Indus., Inc.*, 522 F. Supp. 2d 463, 469 (E.D.N.Y. 2007).

represented Plaintiff before the EEOC and in mediation, Ms. Wang has been the lead attorney since 2009 and has assumed total responsibility for Plaintiff's federal court suit. (Sellick Decl. ¶ 26.) In so doing, Ms. Wang drafted a complaint that complied with Rule 8 of the Federal Rules of Civil Procedure (Doc. No. 1); appeared on Plaintiff's behalf at court conferences; exchanged and reviewed "tens of thousands of pages of documents"; engaged in motion practice (Doc. Nos. 27, 30, 31); and secured a successful settlement in her client's favor. *See Greenberg*, 522 F. Supp. 2d at 469 (law firm that "did the proper and necessary preliminary work" in personal injury suit was entitled to five percent of net attorney's fees, while other firm that "responded to defendants' outstanding discovery demands; amended the complaint; added a party; conducted further discovery and depositions; retained a medical expert; and secured the settlement" was entitled to remaining fees).

As between Ms. Wang and the lawyers who have appeared on LM's behalf in this Court, there is also a striking disparity in terms of their skill and the quality of their performance in this litigation. Ms. Wang's submissions have been carefully reasoned and well drafted, and Ms. Wang and her associate have conducted themselves professionally and respectfully throughout the proceedings. (Doc. Nos. 1, 21, 31, 32, 62, 64, 66, 67.) The same cannot be said for LM's attorneys. Indeed, since their first appearance before this Court in May 2016 (Doc. Nos. 35, 41), LM's attorneys in this matter have frequently mischaracterized New York law and Title VII in their briefs and at the parties' pre-motion conference (*see* Mem. 12–14; *see also* Doc. No. 50 at 13:1–9, 18:11–18). LM also flouted this Court's orders and its Individual Rules and Practices on several occasions. For example, as described earlier, LM submitted an "amended motion" without leave of the Court, two days after the Court's deadline. (Doc. Nos. 52, 53, 54.) Furthermore, notwithstanding this Court's explicit directive to file a single reply by July 26, 2017 (Doc. No. 61), LM filed one reply brief on July 26, 2017 (Doc. Nos. 70, 71), and, without leave

14

of the Court, filed a second, separate reply brief a day after the deadline and a declaration accompanying that reply brief two days after the deadline (Doc. Nos. 72, 73). Furthermore, although Rule 3 of the Court's Individual Rules and Practices requires parties to submit a brief and declaration in connection with any sealing request, LM filed its first reply declaration entirely under seal and filed exhibits one and seven of its second reply declaration under seal without also filing a brief and declaration supporting their sealing request. (Doc. Nos. 71, 73-1, 73-7.) Taken together and considered as a whole, these facts also weigh in favor of Ms. Wang's recovering a greater share of fees. *See Gordon v. Site 16/17 Dev., LLC*, No. 11-cv-0427 (RMB) (AJP), 2011 WL 3251520, at *6 (S.D.N.Y. July 28, 2011) (finding that the "poor quality of counsel's work justifies an even greater reduction in the fee award").

Accordingly, having carefully reviewed the entire record and assessed in particular "the time and labor spent by" Ms. Wang and LM, "the actual work performed, the difficulty of the questions involved, the skill required to handle the matter, the attorney's skills and experience, and the effectiveness of counsel in bringing the matter to resolution," *see Mason*, 2016 WL 2766652, at *5 (brackets omitted), the Court has little difficulty concluding that LM is entitled to no more than a fifteen (15) percent pro rata share of attorney's fees collected out of the settlement of this matter, *see Borg v. 86th & 3rd Owner, LLC*, No. 08-cv-05913 (RJH), 2012 WL 234383, at *9–10 (S.D.N.Y. Jan. 24, 2012) (collecting cases where parties who participate in preliminary stages of case "recover[ed] between 10% and 25% of an eventual attorneys' fee").

### III. SEALING

Both Plaintiff and LM have moved to permanently redact certain portions of their submissions. The Second Circuit has articulated a three-step inquiry for determining whether documents submitted to the Court may be sealed in light of the presumption of open access to "judicial documents." *Lugosch v. Pyramid Co. of Co. of Onondaga*, 435 F.3d 110, 119 (2d Cir.

15

2006). First, in order for the presumption of open access to attach, the documents at issue must be "judicial documents," which are "item[s] filed [that are] relevant to the performance of the judicial function and useful in the judicial process." *Id.* at 119. Second, if the documents at issue are "judicial," the Court must then determine the weight of the presumption of access by considering the value of the information in the "exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts." *Id.* Finally, the Court "must balance competing considerations" against the presumption of access. *Id.* at 119–20 (citation and quotation marks omitted). "Such countervailing factors include but are not limited to the danger of impairing law enforcement or judicial efficiency and the privacy interests of those resisting disclosure." *Id.* at 120 (internal quotation marks omitted). "The burden of demonstrating that a document submitted to a court should be sealed rests on the party seeking such action . . . ." *DiRussa v. Dean Witter Reynolds Inc.*, 121 F.3d 818, 826 (2d Cir. 1997).

Here, Plaintiff has moved to permanently redact a handful of phrases and sentences in her opposition brief that detail the terms of her confidential settlement with Defendant, including the dollar amount of Plaintiff's recovery. (Doc. No. 66.) It is clear that Plaintiff's opposition brief is a "judicial document," since the Court has relied on it in deciding LM's charging lien motion and that the presumption of open records with respect to her submission is strong given its "resultant value" to "monitoring" this Court's determination of this motion. *Lugosch*, 435 F.3d at 119; *see also Worldwide Home Prod., Inc. v. Bed, Bath & Beyond, Inc.*, No. 11-cv-3633 (LTS) (MHD), 2015 WL 1573325, at *6 (S.D.N.Y. Apr. 9, 2015) (affording "the strong presumption of public access to court documents" filed in connection with attorney's fee dispute). Even so, the parties' interest in maintaining the confidentiality of their settlement is clearly a countervailing interest that may overcome the presumption in favor of open records where, as here, "the settlement itself was conditioned on confidentiality" and "the settlement documents were not filed with the court

16

and were not the basis for the court's adjudication." *Gambale v. Deutsche Bank AG*, 377 F.3d
133, 143–44 (2d Cir. 2004) (recognizing that "honoring the parties' express wish for
confidentiality may facilitate settlement, which courts are bound to encourage"). The Court finds
that Plaintiff's limited redaction requests of details related to her contemplated confidential
settlement are "narrowly tailored to serve" the parties' interest in maintaining the confidentiality
of their settlement. *Lugosch*, 435 F.3d at 120; *see also Perez v. Jupada Enterprises, Inc.*, No. 10-
cv-3118 (JMF), 2012 WL 3042928, at *4 (S.D.N.Y. July 25, 2012) (authorizing limited redaction
of statements in parties' letters that detail plaintiffs' proposed settlement of their "retaliation
claims," since they "are not subject to Court approval").

For similar reasons, LM's motion to permanently seal Exhibit 7 of its opening
declaration, which contains a handful of emails exchanged between Plaintiff's attorneys at the
law firm of Cuti Hecker Wang LLP and LM related to settlement negotiations (Doc. No. 54-7), is
also granted. However, with respect to LM's first reply declaration, dated July 26, 2016, and
Exhibits 1 and 7 to LM's second reply declaration, dated July 28, 2016, LM has failed to submit
a brief and affidavit in support of those sealing requests, as required by Rule 3 of the Court's
Individual Rules and Practices. Since LM has not even attempted to meet its burden concerning
these documents, *see DiRussa*, 121 F.3d at 826, the Court orders LM to file a letter brief and
declaration no later than March 29, 2017 explaining why its July 26, 2016 reply declaration and
Exhibits 1 and 7 of its July 28, 2016 reply declaration should remain under seal.

## IV. Conclusion

For the reasons set forth above, IT IS HEREBY ORDERED that LM's motion for a
charging lien pursuant to Section 475 (Doc. No. 52) is GRANTED, and that LM is entitled to
recover a 15% pro rata share of the attorney's fees collected out of any settlement. IT IS
FURTHER ORDERED that Plaintiff's motion to redact is GRANTED, and LM's motion to

17

redact exhibit 7 of its opening declaration is also GRANTED.  (Doc. Nos. 55, 65.)  IT IS FURTHER ORDERED that LM shall file a letter brief and declaration no later than March 29, 2017 explaining why its July 26, 2016 reply declaration and Exhibits 1 and 7 of its July 28, 2016 reply declaration should remain under seal.  (Doc. Nos. 71, 73-1, 73-7.)  The Clerk is respectfully directed to terminate the motions pending at docket numbers 52, 55, and 65.

In light of the parties' representation that they have reached a settlement in principle, IT IS FURTHER ORDERED that this case is dismissed with prejudice but without costs.  However, within thirty days of the date of this Order, any party may send a letter requesting to restore this action to the docket with an explanation for the request.  The Clerk is respectfully directed to close this case.

SO ORDERED.

Dated:        March 23, 2017
              New York, New York

RICHARD J. SULLIVAN
UNITED STATES DISTRICT JUDGE

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/23/17

18